UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

DANA MANZA, individually and on behalf of
all others similarly situated,

   Plaintiff,

v.

PESI, INC.,

   Defendant.

Case No.:  3:24-cv-000690-jdp

**DEMAND FOR JURY TRIAL**

---

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

---

Defendant PESI, Inc., ("PESI") by and through its attorneys, Hinshaw & Culbertson LLP, and for its Memorandum in Support of its Motion to Dismiss Plaintiff's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) states as follows:

### INTRODUCTION

On November 22, 2024, PESI filed a motion to dismiss Plaintiff's putative class action Complaint (ECF No. 1) for alleged violations of the Video Privacy Protection Act ("VPPA") because it failed to state a claim upon which relief could be granted. (ECF Nos. 11-12.) In response to PESI's motion to dismiss, Plaintiff Dana Manza ("Plaintiff") filed an Amended Complaint ("Amended Complaint"). However, the Amended Complaint does not correct the initial complaint's fatal defects, and thus, only confirms that Plaintiff cannot maintain a plausible VPPA claim because: (1) Plaintiff has not—and cannot—allege that PESI is a "video tape service provider" because it is a 501(c)(3) organization, (2) Plaintiff cannot allege that any information was disclosed to Meta, Google, or Pinterest (Counts II-IV) when she was using Mozilla Firefox, which has a default setting to block third-party data sharing, and (3) Plaintiff has not alleged that PESI disclosed "personally identifiable information" under the VPPA.

**FACTUAL ALLEGATIONS**

Named Plaintiff Dana Manza ("Plaintiff") initiated this putative class action against PESI by filing her complaint ("Complaint") on October 3, 2024. *See* ECF No. 1. On November 22, 2024, PESI filed its motion to dismiss the Complaint for failure to state a claim upon which relief could be granted. *See* ECF Nos. 11-12. On December 6, 2024, Plaintiff filed the Amended Complaint ("Amended Complaint") in response (ECF No. 13), wherein she (again) seeks to represent four different putative classes based on alleged violations of the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710(b) by PESI, a "non-stock corporation" that is a registered 501(c)(3) organization. Am. Compl. ¶¶ 27, 114; *see Internal Revenue Service ("IRS") Tax-Exempt Organization Search Results for "PESI Inc.,"* located at https://apps.irs.gov/app/eos/details/ (last visited November 18, 2024)[1]. PESI's mission as a non-profit is to educate adult learners through seminars, conferences, workshops, courses, and books primarily in the medical and mental health fields. Am. Compl. ¶ 27; *see PESI.com, About Us*, located at https://www.PESI.com/home/aboutus (last visited November 13, 2024)[2].

On January 3, 2023, Plaintiff purchased training material from PESI's website (the "Training"). Am. Compl. ¶¶ 15, 19. Plaintiff alleges that at the time she purchased the Training, she had Google, Pinterest, and Meta (also known as Facebook) accounts and profiles. *Id.* ¶¶ 16-17.

---

[1] Government agency websites and the information contained therein are appropriate for judicial notice, and can be considered in evaluating a motion to dismiss. *Johnson v. Toys R Us, Inc.,* No. 11-1431, 2012 U.S. Dist. LEXIS 83328, *8 (C.D. Ill. June 15, 2012) (taking judicial notice of the U.S. Postal Service's website content in evaluating a motion to dismiss); *Laborers' Pension Fund v. Blackmore Sewer Constr., Inc.,* 298 F.2d 600, 607 (7th Cir. 2002) (taking judicial notice of information from FDIC's website).

[2] Although the entirety of PESI's website is not included in the Amended Complaint, this Court can consider it in connection with this Motion to Dismiss because PESI's website is referred to in the Complaint and central to Plaintiff's claims. Am. Compl. ¶¶ 15-18, 27, 65, 86-88, 96-99, 108-110; *Venture Assocs. Corp. v. Zenith Data Sys. Corp.,* 987 F.2d 429, 431 (7th Cir. 1993). Additionally, the Court may take judicial notice of PESI's website. *See Cesca v. W. Ill. Univ. Bd. Of Trs.,* No. 4:23-cv04043-SLD-JEH, 2024 U.S. Dist. LEXIS 7265, n.1 (C.D. Ill. Jan. 15, 2024) ("A court may take judicial notice of information publicly announced on a party's web site, so long as the web site's authenticity is not in dispute and it is capable of accurate and ready determination.") (internal quotation marks omitted).

Plaintiff does not allege what information (if any) that she provided to Meta, Google, or Pinterest in creating each account or profile, or if any of those accounts or profiles were public. Plaintiff also fails to allege that she was logged into any of those accounts at the time that she purchased the Training. Plaintiff also does not allege that PESI disclosed her name or address to any third party. However, she alleges that when she purchased the Training, PESI disclosed other information to Meta, Google[3], and Pinterest via cookies or snippets of code. *Id.* ¶¶ 18-22. Specifically, she alleges that PESI (i) disclosed information about the Training and her Facebook ID ("FID")—a "unique sequence of numbers linked to her Meta profile"—to Meta via the Meta Pixel (*id.* ¶¶ 5, 18, 19); (ii) disclosed information about the Training, some digital "identifiers," and hashed email to Google via Google Analytics and Google cookies (*id.* ¶¶ 20-21); and (iii) disclosed information about the Training and an encrypted user ID to Pinterest via the "Pinterest Tag" and Pinterest's "s_a" cookie (*id.* ¶ 22). Plaintiff refers to "exemplar source codes" that were "obtained by" her attorney to "illustrate [PESI's] disclosure[s]" to Meta, Google, and Pinterest, but she does not explain how the exemplar source codes apply to the conduct at issue.[4] Am. Compl. ¶¶ 19-20, 22. Neither the exemplar codes nor the Amended Complaint allegations identify Plaintiff's specific FID, Google digital identifiers, or Pinterest user ID.

---

[3] Plaintiff alleges that "Google Analytics, Google AdSense, and Google Leads extension" were installed on PESI's website, (Am. Compl. ¶¶ 97) and alleges that PESI disclosed information to Google (i.e., Alphabet, Inc. f/k/a Google) (*id.* ¶ 4)—suggesting Google Analytics, AdSense, and Leads are simply the tracking technologies, but that "Google" was the third party that received the information from PESI. However, Plaintiff also alleges that PESI disclosed information *to* Google Analytics (*id.* ¶¶ 6, 18, 20, 97) and *to* Google AdSense and Google Leads (*id.* ¶¶ 21, 106), effectively using "Google" and its related tracking technologies interchangeably. For purposes of addressing PESI's alleged disclosures of information in Count III (i.e., the "Google Analytics Class"), Google, Google Analytics, Google AdSense, and Google Leads will be collectively referred to as "Google."

[4] The "exemplar" source codes are sheer speculation and unsupported by any factual allegations, and thus, need not be considered. *Lanahan v. Cnty. Of Cook,* 41 F.4g 854, 862 (7th Cir. 2022). Plaintiff does not allege critical details regarding when or under what circumstances these "exemplar" codes were obtained (*e.g.,* whether the same browser or cookie preferences were utilized in their creation, whether Plaintiff was logged into any of her respective accounts at the time of their creation, whether they show *Plaintiff's* alleged FID, Google "identifiers," or Pinterest user ID or someone else's, etc.). Merely indicating that Plaintiff's counsel "obtained" them has no bearing on whether they accurately illustrate any of the alleged disclosures, and thus, the exemplars are no more than bald assertions.

Plaintiff also alleges that PESI disclosed her personally identifiable information (PII[5]) to some unidentified third parties, which she refers to as "data aggregators," "data appenders," "data cooperatives," "direct-mail advertisers," "direct marketers," "data brokerages," "data miners," "marketing companies," and "other third parties."[6] *Id.* ¶¶ 24, 45, 49, 56, 114, 124-26. To corroborate this claim, Plaintiff relies solely on two screenshots that allegedly demonstrate that PESI disclosed some PESI customers' PII to a data brokerage known as NextMark, Inc. ("NextMark"). *Id.* ¶¶ 57-58, Exs. A, B. Plaintiff alleges that NextMark is a "trafficker" of consumers' prerecorded video-watching behaviors, but NextMark does not sell mailing lists or other media; it offers "media sales tools" to match media programs with buyers. *Id.*; *see NextMark FAQs*, located at https://www.nextmark.com/company/faq/ (last visited November 18, 2024); *NextMark Media Sales,* located at https://www.nextmark.com/media-sales/ (last visited November 18, 2024)[7]. The two screenshots describe mailing lists of PESI customers who attended a "HealthCare Nursing Seminar" or a "Mental Health Seminar" through December 31, 2023. Am. Compl. ¶¶ 57-58, Exs. A, B. The screenshots do not reference NextMark, do not indicate that either seminar was a prerecorded video or other prerecorded audiovisual material, do not identify Plaintiff or any other individual PESI customer, and do not reference the Training Plaintiff purchased. *Id.* Nothing in the screenshots

---

[5] Plaintiff's Complaint provides multiple definitions for the term "Personal Viewing Information." Plaintiff refers to "recordings containing the personal information (including names and addresses) of each of [PESI's] customers, along with detailed information revealing the titles and subject matter of the videos and other audiovisual materials purchased by each customer" as "Personal Viewing Information," (Am. Compl. ¶ 1), and also defines "Personal Viewing Information" as "information that reveals a particular person purchased prerecorded video to access prerecorded video content from Defendant's Website" (*id.* ¶ 5). For purposes of this Motion, "Personal Viewing Information" will be referred to as "personally identifiable information" or "PII."

[6] The alleged VPPA violations relating to these disclosures to unidentified third parties are encompassed in Count I of the Amended Complaint—the "Data Brokerage" Class. Am. Compl. ¶¶ 114, 120-28. With respect to Count I and for purposes of this motion, the unidentified third parties will hereinafter be collectively referred to as "data brokerages."

[7] The Court can consider NextMark's website in connection with this Motion to Dismiss because NextMark's website is referred to in the Complaint (i.e., Plaintiff attached two screenshots from NextMark's website), Am. Compl. ¶¶ 57-58, and is "central to [Plaintiffs'] claims." *Venture Assocs.,* 987 F.2d at 431.

indicates that Plaintiff or her purchase of the Training from PESI is included among the information in the mailing lists. *Id.* Based solely on these allegations, Plaintiff alleges that PESI violated the Video Privacy Protection Act, 18 § U.S.C. § 2710 *et seq.*

## ARGUMENT

To survive a motion to dismiss brought pursuant to Fed. R. Civ. P. 12 (b)(6), a complaint must "contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim should be dismissed where, accepting all well-pleaded factual allegations in the light most favorable to the plaintiff, the complaint nevertheless fails to "plausibly suggest that the plaintiff has a right to relief." *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678. Further, conclusions of fact and law "are . . . not entitled to the assumption of truth" and may be disregarded. *Iqbal*, 556 U.S. at 679. A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Court is "not obligated to accept 'sheer speculation, bald assertions, and unsupported conclusory statements' on a motion to dismiss." *Lanahan v. Cnty. Of Cook,* 41 F.4th 854, 862 (7th Cir. 2022) (citations omitted).

The VPPA was enacted in 1988 in response to the publication of a "profile of Judge Robert H. Bork based on the titles of 146 films his family had rented from a video store." Sen. Rep. 100-599, at 5 (1988). The purpose of the VPPA is to "preserve personal privacy with respect to the rental, purchase, or delivery of video tapes or similar audio visual  materials." *Id.* at 1. The VPPA provides a cause of action for individuals when "[a] video tape service provider who knowingly discloses, to any person, personally identifiable information concerning any consumer of such provider." 18 U.S.C. § 2710(b)(1).

To plead a claim under the VPPA, a plaintiff must plausibly allege that: "(1) a defendant is a 'video tape service provider,' (2) the defendant disclosed 'personally identifiable information concerning any [consumer]' to 'any person,' (3) the disclosure was made knowingly, and (4) the disclosure was not authorized by Section 2710(b)(2)." *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1066 (9th Cir. 2015) (citing 18 U.S.C. § 2710(b)).

The first two elements are the basis of this motion to dismiss. The VPPA defines a video tape service provider ("VTSP") as "any person, *engaged in the business*, in or affecting interstate or foreign commerce, *of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials.*" 18 U.S.C. § 2710(a)(4) (emphasis added). The VPPA defines personally identifiable information ("PII") as "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." *See* 18 U.S.C. § 2710(a)(3).

I.     **THE AMENDED COMPLAINT SHOULD BE DISMISSED BECAUSE PESI IS A 501(C)(3) NONPROFIT ORGANIZATION SO IT CANNOT QUALIFY AS A VIDEO TAPE SERVICE PROVIDER UNDER THE VPPA.**

Plaintiff's Amended Complaint confirms that all claims should be dismissed because she fails to plead how PESI, a registered 501(c)(3) non-profit entity, qualifies as a video tape service provider. *See IRS Tax-Exempt Organization Search Results for "PESI Inc.,"* located at https://apps.irs.gov/app/eos/details/ (last visited November 18, 2024). Only an entity which qualifies as a VTSP can be held liable under the VPPA. *See* 18 U.S.C. § 2710(b); *Daniel v. Cattrell,* 275 F.3d 377, 382 (6th Cir. 2003) ("under the plain language of the statute, only a 'video tape service provider' can be liable").

The VPPA does not expressly define the phrase "engaged in the business of," and Courts have not yet addressed whether a 501(c)(3) tax exempt entity qualifies as "engaged in the business . . . of rental, sale or delivery of prerecorded cassette tapes or audio visual materials." 18 U.S.C. §

2710(a)(4). Accordingly, the law requires us to "look to the plain meaning" of the phrase. *Sobitan v. Glud,* 589 F.3d 379, 387 (7th Cir. 2009).

The Seventh Circuit has defined the plain meaning of the phrase "engaged in the business of" in another context. In *United States v. Gross,* the defendant was convicted under 18 U.S.C. § 922 for "engag[ing] in the business of…dealing in firearms." 451 F.2d 1355, 1356 (7th Cir. 1971). The statute did not define what it meant to be "engaged in the business of," and Gross claimed that it was unconstitutionally vague. *Id.* at 1357. Specifically, the Seventh Circuit held that "[t]here appears to be little doubt that… 'business' is that which occupies time, attention, and labor for the purpose of livelihood or profit," and affirmed the conviction. *Id.* at 1357.

Other courts have limited the application of "engaged in the business of" to only for-profit enterprises. *See, e.g., SEC v. Long,* No. 23-CV-14260, 2024 U.S. Dist. LEXIS 111503, *4-5 (N.D. Ill. June 25, 2024) (in evaluating the term "business," an undefined term in the Exchange Act, the court noted that it encompasses for-profit enterprises or an occupation "habitually engaged in for livelihood or gain"); *Svithiod Sing Club v. McKibbin,* 44 N.E.2d 904, 910-11 (Ill. 1942) (non-profit social club's purpose was to promote cultural arts, so it was not engaged in the business of serving meals and drinks to its members).

The IRS's guidance affirms that PESI is not "engaged in the business of" because it is not a for-profit entity. "Courts may take judicial notice of matters of public record, including statutes, regulations and agency interpretations thereof." *M.K. v. Google LLC,* No. 21-cv-08465-VKD, 2023 U.S. Dist. LEXIS 133602, *7 (C.D. Cal. Aug. 1, 2023) (taking judicial notice of the FTC's published guidance on a motion to dismiss). The IRS has determined 501(c)(3) organizations are "organized and operated *exclusively* for religious, charitable, scientific, testing for public safety, literary, educational, or other specified purposes." *See Exempt organization types,* located at https://www.irs.gov/charities-non-profits/exempt-organization-types (last visited on October 31,

2024). In order to qualify for section 501(c)(3) and its tax exemptions, the entity "must be organized and operated exclusively for exempt purposes set forth in section 501(c)(3), and none of its earnings may inure to any private shareholder or individual." *See Exemption requirements – 501(c)(3) organizations,* located at https://www.irs.gov/charities-non-profits/charitable-organizations/exemption-requirements-501c3-organizations (last visited on October 31, 2024). Specifically:

> The exempt purposes set forth in section 501(c)(3) are charitable, religious, educational, scientific, literary, testing for public safety, fostering national or international amateur sports competition, and preventing cruelty to children or animals. The term charitable is used in its generally accepted legal sense and includes relief of the poor, the distressed, or the underprivileged; advancement of religion; advancement of education or science; erecting or maintaining public buildings, monuments, or works; lessening the burdens of government; lessening neighborhood tensions; eliminating prejudice and discrimination; defending human and civil rights secured by law; and combating community deterioration and juvenile delinquency.

*See Exempt purposes – Internal Revenue Code Section 501(c)(3),* located at https://www.irs.gov/charities-non-profits/charitable-organizations/exempt-purposes-internal-revenue-code-section-501c3 (last visited on October 31, 2024). PESI is registered under section 501(c)(3) and its tax-exempt purpose is charitable—i.e., the advancement of education or science. *See IRS Tax-Exempt Organization Search Results for "PESI Inc.,"* located at https://apps.irs.gov/app/eos/details/ (last visited November 18, 2024); *PESI.com, About Us*, located at https://www.PESI.com/home/aboutus (last visited November 13, 2024). Thus, according to the IRS, PESI is "not *in the business . . . of* rental, sale or delivery of prerecorded video cassette tapes or similar audio visual materials"; PESI is not "*in the business of"* anything because it is a tax-exempt charitable organization. Accordingly, the Amended Complaint should be dismissed with prejudice because PESI does not qualify as VTSP.

## II.   COUNTS II, III, AND IV MUST BE DISMISSED BECAUSE PLAINTIFF'S WEB BROWSER BLOCKED THE SHARING OF INFORMATION TO THIRD-PARTIES.

Plaintiff's Amended Complaint confirms that PESI did not disclose her PII to Meta, Google,

or Pinterest because Plaintiff alleges she used the internet browser Mozilla Firefox, which blocks all tracking technologies *by default*. Thus, Counts II, III, and IV of the Amended Complaint must be dismissed. 18 U.S.C. § 2710(b).

The Southern District of Florida recently analyzed the impact of a plaintiff's browser and blocking settings in the context of a VPPA class action claim based on an alleged disclosure to Meta via the Meta Pixel, and the court acknowledged that whether a subscriber's PII was actually transmitted depends on "(1) whether the subscriber accessed [the defendant's] website on a browser that, by default, blocks the Pixel transmission; or (2) if the subscriber accessed the website through a browser that didn't block the Pixel by default, whether some affirmative action was taken on the browser to prevent the Pixel from transmitting anyway (such as blocking cookies within the browser's settings, enabling the browser cache to self-destruct, clearing cookies, or deploying cookie blockers or anti-tracking software)." *Martinez v. D2c, LLC,* No. 1:23-cv-21394, 2024 U.S. Dist LEXIS 178570, *7 (S.D. Fla. Oct. 1, 2024) (internal citations omitted).

Here, Plaintiff alleges that cookies and three different strings of code installed on PESI's website—the Meta Pixel, Google Analytics, and the Pinterest Tag—disclosed her PII to Meta, Google, and Pinterest, respectively, when she purchased the Training from PESI. Am. Compl. ¶¶ 134, 143, 152. At the same time, Plaintiff alleges that the information disclosed by PESI to Google Analytics "would reveal that a 34-year old woman from Charlotte, North Carolina (North America – USA) at her home's IP address 69.217.130.96 using Mozilla Firefox on a MacOsX Sierra Studio computer requested or obtained a specific video product" from PESI. *Id.* ¶ 105. However, as of June 2019—over three years prior to Plaintiff's purchase of the Training—Mozilla Firefox implemented privacy protections that "block[ed] all trackers including Google Analytics" as a default setting. *See Google Analytics is Blocked by Firefox, Mozilla Explains Why,* located at https://www.searchenginejournal.com/google-analytics-is-blocked-by-firefox-mozilla-explains-

why/311471/ (last visited November 15, 2024)[8]. Plaintiff does not allege that she disabled any of the default blockers on Firefox, so Firefox's default setting (known as "Total Cookie Protection") would have "prevent[ed] tracking companies from using these cookies to track [Plaintiff's] browsing from site to site"—i.e., the alleged disclosures to Meta, Googe, and Pinterest could not have happened. *See Firefox gets a privacy boost as Total Cookie Protection becomes the default for all users,* located at https://techcrunch.com/2022/06/14/firefox-gets-a-privacy-boost-as-total-cookie-protection-becomes-the-default-for-all-users/ (last visited November 15, 2024); *Firefox Rolls Out Total Cookie Protection By Default*, located at https://blog.mozilla.org/en/mozilla/firefox-rolls-out-total-cookie-protection-by-default-to-all-users-worldwide/?_gl=1*zndy1f*_ga*MzcwMDcxMDQzLjE3MzAzOTQwNzA.*_ga_2VC139B3XV*M TczMDQ3NzI2Mi4zLjEuMTczMDQ3NzY3Ni4wLjAuMA (last visited November 13, 2024). Thus, Plaintiff did not—and cannot—allege that her PII was disclosed to Meta, Google, or Pinterest when she purchased the Training, and Counts II, III, and IV necessarily fail.

## III. ALL FOUR COUNTS OF THE AMENDED COMPLAINT CANNOT SURVIVE FOR ADDITIONAL REASONS.

Even after amending the Complaint in response to PESI's initial motion to dismiss, Plaintiff still has not alleged that PESI disclosed any of her PII to any third party, and thus, the Amended Complaint should be dismissed with prejudice. Specifically, Plaintiff has not alleged that any of the information disclosed to (i) unspecified "data brokerages" and NextMark (Count I), (ii) Meta (Count II), (iii) Google (Count III), or (iv) Pinterest (Count IV) would readily permit an ordinary person to identify Plaintiff's specific video-watching behavior, and accordingly, all four VPPA claims fail.

---

[8]   The Court can take judicial notice of news articles in connection with this Motion to Dismiss. *Sidney Hillman Health Ctr. V. Abbott Labs, Inc.,* 782 F.3d 922, 929 (7th Cir. 2015). Furthermore, Mozilla Firefox and its capabilities with respect to Google Analytics, other trackers, and cookies are referred to in the Complaint and central to Plaintiff's claims. *Venture Assocs.,* 987 F.2d at 431. *See* Am. Compl. ¶ 105.

PII "must, at the very least, identify a *particular* person—not just an anonymous individual— *and* connect this particular person with his or her viewing history." *Robinson v. Disney Online,* 152 F. Supp. 3d 176, 179 (S.D.N.Y. 2015). If the information would not "readily permit an ordinary person to identify a specific individual's video-watching behavior," it is not PII. *In re Nickelodeon Consumer Privacy Litig.,* 827 F.3d 262, 290 (3d Cir. 2016). To qualify as PII, the information "must itself do the identifying"—and is not merely "information disclosed by a [VTSP], plus other pieces of information collected elsewhere by non-defendant third parties." *Robinson,* 152 F. Supp. 3d at 182. Under the ordinary person standard, "static digital identifiers" such as an IP address, a digital code in a cookie, or a device's unique device identifier do not, without more, constitute PII. *In re Nickelodeon,* 827 F.3d at 286 (dismissing VPPA claim because an IP address, unique device identifier, username, browser settings, and persistent cookie identifiers did not constitute PII); *see also White v. Samsung Elecs. Am., Inc.,* No. 17-1775, 2019 U.S. Dist. LEXIS 254148, *11-12 (D.N.J. Aug. 20, 2019) (static identifiers such as IP addresses, MAC addresses, and zip codes are not PII for purposes of VPPA claims).

### A.   Plaintiff has not alleged PESI disclosed PII to any third party data brokerage (Count I).

Count I of Plaintiff's Amended Complaint fails to allege a VPPA claim because Plaintiff did not and cannot allege that PESI disclosed PII to any third party "data brokerage"—known or unknown. Plaintiff's claim that PESI disclosed Plaintiff's PII to *unknown* third party data brokerages necessarily fails, because the Complaint is devoid of even the most basic factual allegations supporting this alleged disclosure. Am. Compl. ¶ 125; *see M.K. v. Google LLC,* No. 21-cv-08465-VKD, 2023 U.S. Dist. LEXIS 51895, *8 (C.D. Cal. Mar. 27, 2023) (dismissing VPPA claim because there were "no facts linking these allegations to [the plaintiff], much less identifying what 'personally identifiable information' Google allegedly disclosed, or *to whom* such information was disclosed.") (emphasis added). Similarly, to the extent that Plaintiff alleges that PESI disclosed her PII to

NextMark—the only "data brokerage" that Plaintiff can identify by name—Count I fails to state a claim upon which relief can be granted because Plaintiff cannot allege that PESI disclosed *any* PII to NextMark. Therefore, Plaintiff has not alleged sufficient facts to state a VPPA claim upon which relief can be granted and Count I should be dismissed with prejudice. *See, e.g., Robinson,* 152 F. Supp. 3d at 183-84 (dismissing VPPA claim based on failure to allege disclosure of PII).

>    1.    **Plaintiff has not plausibly alleged that PESI disclosed her PII to some unknown third-parties she baldly refers to as data brokerages.**

In support of Count I (the "Data Brokerage Class"), Plaintiff baldly claims that PESI generally disclosed PII to numerous unnamed third parties which she does not and cannot identify—including "data aggregators," (Am. Compl. ¶¶ 24, 45, 49, 56, 124-26); "data cooperatives," (*id.* ¶ 25, 49); "direct-mail advertisers," (*id.* ¶ 45); "direct marketers" (*id.* ¶ 49); "data brokers" (*id.* ¶¶ 56, 65, 96, 124-26); "data appenders" (*id.* ¶¶ 24, 49, 56, 65, 96, 124-26); "data miners" (*id.* ¶¶ 24, 56, 125); "the data-aggregation and brokerage marketplace" (*id.* ¶ 12); "marketing companies" (*id.* ¶¶ 24, 61); and other unidentified "third parties" (*id.* ¶¶ 24, 49, 56, 125-26). The Amended Complaint is silent as to who these third parties are, what information was disclosed (or when), how the information qualified as PII, or how PESI disclosed it. Plaintiff cannot maintain a VPPA claim based on bald assertions. *M.K.,* 2023 U.S. Dist. LEXIS 51895 at *8 (dismissing VPPA claim when the plaintiff only alleged that the defendant disclosed PII to unidentified third parties); *see also Rodriguez v. Sony Computer Entm't Am. LLC,* No. C 11-4084-PJH, 2012 U.S. Dist. LEXIS 55959, *3-4 (N.D. Cal. Apr. 20, 2012) (dismissing VPPA claim when the allegations "fail[ed] to state that a disclosure had affirmatively taken place, [or] identify with particularity the person(s) or entity to whom such disclosure was made"); *Pett v. Publishers Clearing House, Inc.,* No. 22-11389, 2023 U.S. Dist. LEXIS 89920, *22 (E.D. Mich. May 23, 2023) (dismissing Michigan privacy law claim filed by Plaintiff's counsel against unnamed "data aggregators, data appenders, and/or data cooperatives"). Accordingly, Count I fails with respect to any disclosure to an unnamed third party.

      **2.**    **Plaintiff has not plausibly alleged that PESI disclosed her PII to NextMark, Inc.**

Count I of the Amended Complaint also fails to state a claim upon which relief can be granted even with respect to the only third-party identified by name—NextMark—because Plaintiff does not plausibly allege that PESI disclosed Plaintiff's PII to NextMark.

Plaintiff claims that screenshots from NextMark's website advertise mailing lists which contain PII of "American consumers who purchased Defendant's video products" and are "offered for sale" by NextMark. Compl. ¶¶ 24, 57-58; Exs. A, B. However, the mailing lists do not purport to identify Plaintiff or *"the prerecorded particular audio-visual product(s) [she] purchased"* from PESI, and Plaintiff has not alleged any facts that indicate the mailing lists contain her PII. *Id.* Thus, Count I fails to state a claim. *See* 18 U.S.C. §§ 2710(a)(3)-(4). Plaintiff cannot allege that she attended either seminar or that she located any of her information on either of these mailing lists. The mailings lists, if purchased, merely purport to include information of PESI customers who attended a "HealthCare Nursing Seminar" or "Mental Health Seminar" through December 31, 2023. Am. Compl. ¶¶ 57-58, Exs. A, B. Plaintiff's conclusory allegation that the mailing lists "contain" PII including "the titles of the prerecorded videos purchased" are contradicted by the screenshots themselves; the screenshots do not indicate that the mailing lists contain any purchase history at all other than attendance at the two seminars. *Id.* Furthermore, the screenshots do not indicate that the seminars were prerecorded, and PESI offers live seminars which would not implicate the VPPA. *See PESI.com*, located at www.PESI.com, last accessed November 19, 2024; *Walker v. Meta Platforms, Inc.,* No. 22-cv-02442-JST, 2023 U.S. Dist. LEXIS 93111, *13 (N.D. Cal. Mar. 23, 2023) (dismissing VPPA claim based on a Facebook Live broadcast, noting that courts have "uniformly declined to interpret" live content as being subject to the VPPA) (collecting cases). Neither the screenshots nor the allegations raise Plaintiff's right to relief above the speculative level, and Plaintiff's VPPA claim under Count I necessarily fails because she cannot plausibly allege that the mailing lists contain her PII. *See M.K.,*

2023 U.S. Dist. LEXIS 51895 at *8 (dismissing VPPA claim when the plaintiff only alleged that Google disclosed information about its consumers generally, and "no facts link[ed] these allegations to [the plaintiff]").

Regardless, even if Plaintiff adequately alleged that the mailing lists contain her PII, Plaintiff has not alleged any facts that support that PESI disclosed her PII to NextMark in any case. Am. Compl. ¶¶ 57-59; 18 U.S.C. § 2710(b)(1). NextMark's website confirms that NextMark does not possess the information within the mailing lists; it unequivocally states that NextMark does not "sell mailing lists or other media," [*see NextMark.com, Frequently Asked Questions*, located at: https://www.nextmark.com/company/faq/ (last visited: November 4, 2024)], and if a potential buyer were to select the "Get More Information" button on NextMark's page (as seen in Exhibits A and B to the Amended Complaint), they would be taken to another page, which states: "Your request will be instantly routed to the list supplier. More than 1,400 suppliers are represented here on this website. It's important to fill out the form as completely as possible to ensure your request is handled properly. After submission, you will get a confirmation via email that provides you with your tracking code and list supplier contact information," [*see NextMark.com, "Mailing List Finder Request for Information" Page*, located at: https://lists.nextmark.com/market?page=research/request_info&id=330456 (last visited: November 4, 2024) (emphasis added)]. The screenshots merely indicate that NextMark is purporting to broker a sale of mailing lists containing information about PESI seminar attendees. Compl. ¶¶ 57-58; Exs. A, B. The Complaint is devoid of any factual allegations that support that PESI actually disclosed Plaintiff's PII to NextMark, and thus, Count I fails. *Id.*; *see Nashel v. N.Y. Times Co.,* No. 22-cv-10633, 2022 U.S. Dist. LEXIS 185552, *14 (E.D. Mich. Oct. 11, 2022) (dismissing Michigan privacy law claim filed by Plaintiff's counsel, finding NextMark screenshots of mailing lists were insufficient to support that the defendant disclosed personally identifying information of the plaintiff).

As a result, Count I of Plaintiff's Amended Complaint fails to state a VPPA claim upon which relief can be granted with respect to the unnamed third parties or NextMark, and should be dismissed with prejudice accordingly.

**B.    Plaintiff has not alleged that PESI disclosed PII to Meta as defined under the VPPA (Count II).**

Count II of the Amended Complaint must be dismissed because Plaintiff fails to allege: (a) what information about her, if any, is available on her Facebook account; (b) that her Facebook account is public and not private; and (c) that she was logged into her Facebook account at the time she purchased the Training—each of which would be necessary in order to plausibly allege that PESI disclosed her PII. Relatedly, Plaintiff also does not allege her Facebook account or Facebook ID ("FID") which she believes are at issue.[9]

A Facebook ID is not, on its own, PII, but rather Plaintiff must allege: 1) her Facebook account is public; and 2) the information on her public Facebook account is sufficient to identify her. 18 U.S.C. § 2710(a)(3); *Heerde v. Learfield Commc'ns, LLC,* No. 2:23-CV-04493-FLA, 2024 U.S. Dist. LEXIS 137781, *7-8 (C.D. Cal. July 19, 2024) (dismissing VPPA claim because plaintiffs failed to allege that their PII was disclosed and alleging disclosure of plaintiffs' FIDs, on its own, was insufficient); *see also Ghanaat v. Numerade Labs, Inc.,* 689 F. Supp. 3d 714, 720 (N.D. Cal. Aug. 28, 2023) (dismissing VPPA claim because plaintiffs did "not allege their Facebook pages contain any personal information, such as their names or email addresses," and "[a]ccordingly, the complaint d[id] not adequately allege that their FIDs result[ed] in the sharing of any personal information"). The "mere fact that Plaintiff's FID was disclosed along with the video titles she accessed is, standing

---

[9] As set forth in PESI's motion to dismiss, there is currently no publicly available personal Facebook account for Plaintiff based on a Facebook search. The only public Facebook account that relating to Plaintiff is a Facebook page associated with her business and psychotherapy practice, "Dana Manza, LCSW," located at https://www.facebook.com/danamanzapsychotherapy/ (last visited December 10, 2024). This is not PII as it relates to a business Facebook account. Plaintiff's Amended Complaint does not offer any allegations with respect to whether Plaintiff has any other Facebook page other than the business page.

alone, insufficient." *Solomon v. Flipps Media, Inc.,* No 22-CV-5508, 2023 U.S. Dist. LEXIS 176480, *6 (E.D.N.Y. Sept. 30, 2023) (dismissing VPPA claim because the plaintiff did not identify any personal information that could be seen on her public Facebook profile).

In *Heerde,* the plaintiffs alleged that the defendant violated the VPPA because it implemented the Meta Pixel which "caused their web browsers to transfer their Facebook IDs and information about the video they requested" to Meta. *Heerde,* 2024 U.S. Dist. LEXIS 137781 at *2. The court rejected the VPPA claim because an FID does not, on its own, constitute PII for purposes of the VPPA; FIDs *can* qualify as PII "if the person's Facebook profile is publicly accessible and includes sufficient identifying information." *Id.* at *10. The plaintiffs in *Heerde* failed to "identify what information on their Facebook pages, if any, was viewable and could be used to identify them," so the defendant's disclosure of their FIDs and video viewing information did not constitute to the disclosure of PII, and the VPPA claim was dismissed. *Id.* at *10-11.

Plaintiff's VPPA claim fails because, just like in *Heerde,* she has not alleged the FID would "readily permit an ordinary person to identify [her] video-watching behavior." *Id.* at *7. Plaintiff does not allege that *her* FID *on its own* could enable an ordinary person to identify *her*, because she does not allege (i) whether her Meta profile was public, (ii) what information Plaintiff provided to Meta in connection with her Meta profile, (iii) whether any of that public information, if any, could be used to identify her, or (iv) that inserting *her* FID after www.facebook.com/ would lead to an ordinary person learning *her* identity. *Id.* at *10 (PII must be "sufficient identifying information" such as "name, gender, birthday, place of residence, career, education history, photographs, and content of posts"). In fact, Plaintiff fails to even allege the Facebook account or FID at issue, and there is no publicly available personal Facebook account under her name. Thus, Plaintiff cannot allege that PESI disclosed PII to Meta, and Count II must be dismissed.

Similarly, Count II of the Amended Complaint fails to state claim because Plaintiff fails to

allege that she was logged into her public Facebook account at the time she purchased the Training or even identify her FID anywhere in the Amended Complaint. PESI's motion to dismiss (ECF Nos. 11-12) pointed out these defects that could have been corrected with a simple clarifying allegation. However, Plaintiff's Amended Complaint does not acknowledge or even attempt to address these issues. Indeed, Plaintiff claims that *her* FID is contained in the "exemplar source code" obtained by Plaintiff's counsel and copied in the Amended Complaint, but the FID is nowhere to be seen within the code (or anywhere else). *See* Am. Compl. ¶ 19. Moreover, Plaintiff does not allege that she was logged in to her Facebook account at the time that she purchased the Training, and if she was not logged in to Facebook, she cannot allege that PESI shared her FID with Meta. *See Martinez,* 2024 U.S. Dist. 178570 at *18-19 (even plaintiffs acknowledged that a user must be logged into their Facebook account for the Pixel to disclose information). Thus, Plaintiff's Amended Complaint confirms that her VPPA claim regarding the alleged disclosure to Meta cannot survive Rule 12(b)(6), and Count II should be dismissed.

### C.   Plaintiff has not alleged PESI disclosed PII to Google as defined under the VPPA (Count III).

The Amended Complaint similarly confirms that Count III fails because Plaintiff has not alleged her Google "identifiers" which she believes are at issue[10] and she does not allege that she was logged into her Google account when she purchased the Training. Separately, Count III cannot survive Rule 12(b)(6) because Plaintiff cannot plausibly allege that PESI shared her PII with Google. 18 U.S.C. § 2710(a)(3). Courts have held that the exact type of information PESI allegedly disclosed to Google—an IP address, a digital code in a cookie, hashed identifiers, or a device's unique device identifier—do not, without more, constitute PII. *See In re Nickelodeon,* 827 F.3d at 286 (dismissing

---

[10]   Plaintiff does not allege what email is associated with her Google account. However, the email Plaintiff provided in connection with her PESI account (Am. Compl. ¶ 15) is for a business account.

VPPA claim because the disclosed information did not constitute PII); *Robinson,* 152 F. Supp. at 184 (a hashed serial number was not PII when the defendant did not disclose a "correlated look-up table" that would enable the recipient to link the hashed information to the plaintiff's identity).

In *In re Nickelodeon,* the Third Circuit affirmed the dismissal of a class-action VPPA claim against Viacom for allegedly disclosing 11 data points to Google regarding children who had visited Viacom's websites, including the child's username, gender, birthdate, IP address, browser setting, unique device identifier, operating system, screen resolution, browser version, video materials requested and obtained from Viacom's websites, and cookie identifiers. 827 F.3d at 269. After examining the definition of "personally identifiable information," the court determined that the disclosed information did not amount to PII under the VPPA because it would not "readily permit an ordinary person to identify a specific individual's video-watching behavior." *Id.* at 290.

Plaintiff alleges that PESI disclosed information about the Training, her IP address, her hashed email address, and device identifiers that include a "cid" cookie, "uid," and "NID" cookie, ("digital identifiers") to Google in a "source code" that was obtained by her attorney. Am. Compl. ¶¶ 20, 143. According to Plaintiff, the "exemplar source code" in the Complaint "illustrate[s] Defendant's disclosure" of her her "cid," "uid," and "NID," but she does not identify her "cid" or "uid" within the exemplar code or anywhere else in the Amended Complaint (undoubtedly because her attorney was not logged into Plaintiff's Google account when he obtained the "exemplar source code"). *See* Am. Compl. ¶ 20. A portion of code beginning with "NID" can be found within the exemplar source code—which Plaintiff admits is only applicable for "signed-out users"—but she does not allege what *her* "NID" is or any facts to support that *her* "NID" was active on her browser at the time she purchased the Training. *Id.* Plaintiff's failure to allege her own identifiers that she puts at issue and are the basis for her VPPA claim is fatal to Count III. Plaintiff also does not allege what her email address (hashed or otherwise) is, what her IP address was at the time she purchased the Training, or

what her "digital identifiers" are. Additionally, despite PESI highlighting Plaintiff's failure to allege whether Plaintiff was logged into her Google account at the time she purchased the Training in its motion to dismiss, Plaintiff elected not to clarify that point in her Amended Complaint—even though Google Analytics, Google AdSense, and Google Leads "operate[] in a similar fashion to the Meta Pixel," and thus, whether Plaintiff was logged in is crucial to her claim. Am. Compl. ¶ 97; *see, e.g., Martinez,* 2024 U.S. Dist. 178570 at *18-19 (in denying class certification on a VPPA claim, the court and plaintiffs acknowledged that a user must be logged into their Facebook account for the Pixel to disclose information). In other words, if Plaintiff was not logged in to her Google account, the alleged disclosure did not and could not happen. Plaintiff has failed to allege a VPPA claim upon which relief can be granted regarding the alleged disclosure to Google, and Count III should be dismissed.

Regardless, Count III fails under *Nickelodeon*; none of the information allegedly disclosed to Google qualifies as PII because none of it meets the ordinary person standard for PII. *Eichenberger v. ESPN, Inc.,* 876 F.3d 979, 986 (9th Cir. 2017) (only the information would "readily permit an ordinary person to identify a specific individual's video-watching behavior" is PII). Courts have agreed that the information that was allegedly disclosed to Google (an IP address, a digital code in a cookie, hashed identifiers, or a device's unique device identifier) is not sufficiently identifying to qualify as PII. *See In re Nickelodeon,* 827 F.3d at 283 ("To an average person, an IP address or a digital code in a cookie file would likely be of little help in trying to identify an actual person."); *see also Robinson,* 152 F. Supp. 3d at 184 (hashed serial number of a Roku device was not sufficiently identifying to be PII without the "correlated look-up table" to decipher the hash). Plaintiff refers to FTC blog articles that indicate that "hashing" information does not make it "anonymous" (Am. Compl. ¶ 103), but the standard for PII under the VPPA is not whether the information is "anonymous"; it is whether the information could readily permit an ordinary person to identify the individual and their video-watching behavior. *Eichenberger,* 876 F.3d at 986. Indeed, "hashing" is a

cybersecurity tool regularly utilized by entities to add a layer of data privacy protection, and Plaintiff has not plausibly alleged that a hashed email qualifies as PII. *See What Is Hashing, and How Does It Work?*, available at https://www.codecademy.com/resources/blog/what-is-hashing/, last accessed December 10, 2024. Plaintiff's bald conclusion that "[t]his information can be used by an ordinary person to identify a specific subscriber"—particularly when Plaintiff herself apparently cannot even identify her own digital identifiers, hashed email address, or IP address—need not be considered on a motion to dismiss, and Count III should be dismissed with prejudice. Am. Compl. ¶ 98; *Lanahan v. Cnty. Of Cook,* 41 F.4g 854, 862 (7th Cir. 2022).

Relatedly, Plaintiff's allegations regarding the alleged disclosures to Google AdSense and Google Leads similarly do not survive Rule 12(b)(6). Even if Google AdSense and Google Leads are "automatically able to amalgamate the information disclosed [to Google] with data already existing within Google's servers to specific identify a user back to their corresponding Gmail account," the inquiry is not whether *Google AdSense* or *Google Leads* could identify Plaintiff from the information disclosed; it is whether an *ordinary person* could. Am. Compl. ¶ 106; *see Eichenberger,* 876 F.3d at 985. Since the disclosed information is not sufficiently identifying on its own such that it could readily permit an ordinary person to identify Plaintiff and her video-watching activity, Count III fails. *See In re Nickelodeon,* 827 F.3d at 283.

Furthermore, Plaintiff cannot allege that the disclosed information is PII, because even if the disclosed information could link Plaintiff to a Google account, Plaintiff does not allege that she provided Google with her name, address, or any other identifying information that could enable an ordinary person to identify *her. Ghanaat,* 689 F. Supp. 3d at 720 (dismissing VPPA claim because plaintiffs did "not allege their Facebook pages contain any personal information, such as their names or email addresses," and "[a]ccordingly, the complaint d[id] not adequately allege that their FIDs result in the sharing of any personal information"); *Robinson,* 152 F. Supp. 3d at 181 ("If nearly any

piece of information can, with enough effort on behalf of the recipient, be combined with other information so as to identify a person, then the scope of PII would be limitless.").

Thus, Plaintiff has not plausibly alleged that PESI disclosed information to Google that qualifies as PII and Count III should be dismissed.

> **D.      Plaintiff has not alleged that PESI disclosed PII to Pinterest as defined under the VPPA (Count IV).**

True to form, Count IV of Plaintiff's Amended Complaint fails because Plaintiff does not allege her Pinterest user ID that she believes is at issue and does not allege that she was logged into her Pinterest account at the time she purchased the Training. Nevertheless, Count IV fails because the information allegedly disclosed to Pinterest was not PII; it could not readily permit an ordinary person to identify Plaintiff and her video-watching behavior. *See Wilson v. Triller,* 598 F. Supp. 3d 82 (S.D.N.Y. Apr. 18, 2022) (dismissing VPPA claim for failure to allege disclosure of PII because there was no alleged connection between the information disclosed and the plaintiff's identity).

In *Triller,* the plaintiff alleged that Triller disclosed her unique identification number ("UID") plus "her country, time zone, the videos she watched or otherwise engaged with, other profile's [sic] she viewed, as well as certain other information about her device" to Facebook and Appsflyer. *Triller,* 598 F. Supp. 3d at 90, 92. The disclosed information was anonymized and did not, on its own, reveal the plaintiff's identity; to identify the plaintiff, it would have to be combined with the information on the plaintiff's Triller profile. *Id.* at 92. In order to associate the UID with an individual, the third party "must 'pair' the UID with information from a user's Triller profile page." *Id.* The complaint did not allege what information was included on the plaintiff's Triller profile page, so the court dismissed the VPPA claim because the disclosed information—i.e., anonymized identifiers—did not amount to PII. *Id.* at 91-92.

Count IV of the Amended Complaint must be dismissed because (just like the initial Complaint) it fails to allege (i) Plaintiff's Pinterest user ID or (ii) that Plaintiff was logged into her

Pinterest account at the time she purchased the Training, and accordingly, Plaintiff cannot plausibly allege that PESI shared her Pinterest user ID with Pinterest. Plaintiff alleges that a Pinterest user ID ("uid") can be found in the encrypted "'s_a' cookie," but she does not allege what *her* specific user ID is. Am. Compl. ¶¶ 18, 22, 108. Indeed, Plaintiff's Pinterest user ID is not identified anywhere in the Amended Complaint. *Id.* ¶¶ 22, 108. Moreover, Plaintiff's Amended Complaint again acknowledges that the Pinterest Tag "operates in a similar fashion to the Meta Pixel," yet Plaintiff again does not allege that she was logged in to her Pinterest account at the time that she purchased the Training; if she was not logged in to Pinterest, she cannot allege that PESI shared her user ID with Pinterest. *Id.* ¶ 108; *see, e.g., Martinez,* 2024 U.S. Dist. 178570 at *18-19 (in denying class certification on a VPPA claim, the court and plaintiffs acknowledged that a user must be logged into their Facebook account for the Pixel to disclose information). Thus, Plaintiff's Amended Complaint fails to state a claim upon which relief can be granted, and Count IV should be dismissed with prejudice.

Regardless, Count IV of the Complaint separately fails for the same reason as *Triller*—i.e., Plaintiff has not alleged how her Pinterest "uid" could be used by an ordinary person to identify her. Plaintiff alleges that when she purchased the Training, PESI disclosed the following information to Pinterest via the Pinterest ID: the title and other information about the Training, the "add to cart event," and the s_a cookie—i.e., an "encrypted string of letters, numbers, and characters" which contains the Pinterest accountholder's "uid". Am. Compl. ¶¶ 7, 18, 22, 108. Plaintiff acknowledges that the s_a cookie does not identify her on its own; it is encrypted, and it must be combined with data on Plaintiff's Pinterest account—data that PESI did not disclose or even possess. *See* Am. Compl. ¶¶ 22, 108.

Plaintiff baselessly claims that an "ordinary person can identify [a person] by uid in the s_a cookie…by simply going to a person's Pinterest profile and right-clicking 'Inspect Source' and cross

referencing the information disclosed against the information in the source." *Id.* ¶ 110. This conclusion is belied by Plaintiff's own allegations. Indeed, Plaintiff's groundless conclusion that an ordinary person could identify her based on a Pinterest "uid" would require this Court to make an overwhelming amount of assumptions that are unsupported by any legal or factual allegations: (i) that Plaintiff's Pinterest profile is public; (ii) that an ordinary person is able to readily identify the "uid" among a string of code within a larger encrypted value (the "s_a cookie") when Plaintiff herself cannot even identify it; (iii) that an ordinary person is aware of the "inspect" option on a web page and its functions; (iv) that an ordinary person can readily comprehend and decipher the web-based coding after "inspecting" Plaintiff's Pinterest page; (v) that an ordinary person can readily cross-reference an encrypted "uid" among the significant amounts of other code available in the "inspection"; and (vi) that an ordinary person could readily locate the correct Pinterest page to even attempt to cross-reference the "uid" among Pinterest's 537 million monthly active users. *See, e.g., How to use Inspect Element in Chrome, Safari, and Firefox,* available at https://zapier.com/blog/inspect-element-tutorial/, last accessed December 9, 2024 ("Right click on any webpage, click **Inspect,** and you'll see the innards of that site: its source code, the images and CSS that form its design, the fonts and icons it uses, the Java Script code that powers animations, and more."); *Your audience is here. And they're ready to shop,* available at https://business.pinterest.com/audience/#:~:text=The%20consumers%20you%20care%20about,new %20leads%20into%20loyal%20customers., last accessed December 9, 2024 (Pinterest has 537 million monthly active users as of Q3 2024).

Moreover, even taking Plaintiff's unfounded supposition that an ordinary person could link a Pinterest profile to a "uid," Plaintiff has not alleged that she provided information to Pinterest in creating her account (*e.g.,* name, address, etc.) that would enable an ordinary person to identify *her*. *See Solomon,* 2023 U.S. Dist. LEXIS 176480 at *6 (dismissing VPPA claim because the plaintiff did

not identify any personal information that could be seen on her public Facebook profile). Thus, Plaintiff cannot claim that the "uid" or s_a cookie is PII, and her VPPA claim (Count IV) fails. *Ghanaat,* 689 F. Supp. 3d at 720 (dismissing VPPA claim because plaintiffs did "not allege their Facebook pages contain any personal information, such as their names or email addresses," and thus did not allege that their PII was shared).

Plaintiff's bald assertion that the information disclosed to Pinterest qualifies as PII is insufficient to support a VPPA claim and Count IV of the Amended Complaint should be dismissed with prejudice.

**CONCLUSION**

As set forth in the foregoing Motion to Dismiss Plaintiff's First Amended Class Action Complaint, Defendant PESI, Inc. respectfully requests that this Honorable Court grant its Motion and Dismiss Plaintiffs' Class Action Complaint in its entirety.

Dated this 16th day of December, 2024.

*Electronically signed by Brett B. Larsen*
Brett B. Larsen
State Bar No.: 1064355
Daniel J. Hollis
State Bar No.: 1128071
Attorneys for Defendant PESI, Inc.
HINSHAW & CULBERTSON LLP
100 E. Wisconsin Avenue, Suite 2600
Milwaukee, WI 53202
414-276-6464
blarsen@hinshawlaw.com
dhollis@hinshawlaw.com

David M. Schultz
IL Bar No.: 6197596
HINSHAW & CULBERTSON LLP
151 N. Franklin Street, Suite 2500
Chicago, IL 60606
312-704-3000
dschultz@hinshawlaw.com