UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| DANA MANZA, individually and on behalf of all others similarly situated, | Case No.:  3:24-cv-000690-amb |
| | **DEMAND FOR JURY TRIAL** |
| Plaintiff, | |
| v. | |
| PESI, INC., | |
| Defendant. | |

## REPLY IN FURTHER SUPPORT OF DEFENDANT PESI, INC.'S MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6)

Defendant PESI, Inc., ("Defendant" or "PESI") by and through its attorneys, Hinshaw & Culbertson LLP,  submits the following Reply in further support of its Motion to Dismiss.

## INTRODUCTION

Plaintiff's Amended Complaint ("Complaint") should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) because: (1) Plaintiff incorrectly believes the Video Privacy Protection Act ("VPPA") should be expanded to apply to 501(c)(3) charitable organizations; (2) Plaintiff asks the Court to ignore large swaths of the Amended Complaint as simply illustrations, which leaves only general allegations regarding internet technology and conclusory statements concerning PESI; and (3) Plaintiff has not alleged that PESI disclosed or how it disclosed any of Plaintiff's PII to any third party. Accordingly, the Amended Complaint must be dismissed.

Plaintiff's Response raises more questions than answers. Plaintiff's 155-paragraph complaint is littered with a litany of "illustrations" about what could happen in certain instances and on certain occasions, but none of these illustrations pertain to Plaintiff. In fact, Plaintiff effectively asks this Court to disregard the numerous "illustration" allegations in analyzing PESI's

Motion to Dismiss ("Motion"). What is left of the Amended Complaint consists of only labels, conclusions, and recitations of a cause of action. *Twombly,* 550 U.S. at 548. The complaint fails to offer vital allegations regarding Plaintiff and her alleged interaction with PESI's website that she believes form the basis of her claim. Thus, Plaintiff has not "nudged [her] claims across the line from conceivable to plausible." *Id.* at 570.

<div align="center">

**ARGUMENT**

</div>

## I.   PESI, A 501(C)(3) ORGANIZATION, IS NOT A "VIDEO TAPE SERVICE PROVIDER" ENGAGED IN "BUSINESS" SUBJECT TO THE VPPA.

Plaintiff admits that the plain meaning of "engaged in the business of" encompasses entities with a *for-profit* objective. PESI cannot and does not have a for-profit objective, and thus, does not meet the definition of a "video tape service provider" ("VTSP") subject to the VPPA. 18 U.S.C. § 2710(b)(1). Regardless, even if this Court determines that the VPPA applies to nonprofit entities, Plaintiff has not alleged that PESI's "livelihood" is dependent on selling prerecorded videos. Moreover, the Internal Revenue Code expressly limits the purpose of 501(c)(3) entities to be *exclusively* charitable. Accordingly, PESI is not and cannot be "engaged in the business of" anything, is not a VTSP, and each of Plaintiff's VPPA claims necessarily fails.

Plaintiff attempts to broaden the definition for the phrase "engaged in the business of" by relying on *Camps Newfound/Owatonna, Inc. v. Town of Harrison, Me.,* 520 U.S. 564, 584 (1997), to argue Congress can regulate nonprofit entities. (Doc. No. 26 at 8-10.) *Camps* merely confirms that Congress *can* regulate non-profits based on the Commerce Clause—not that it *does* regulate non-profits every time it enacts a statute by virtue of the Commerce Clause. *Camps Newfound,* 520 U.S. at 584. Indeed, the Internal Revenue Code and courts' interpretations of the phrase "engaged in the business of" confirms that the phrase applies to for-profit entities. Plaintiff acknowledges that "engaged in the business of" is undefined by the VPPA, and in many contexts,

Courts have determined that "business" or "doing business" means a for-profit motive, *e.g.*: "[a] commercial enterprise carried on for profit"; "the carrying out of a series of similar acts for the purpose of realizing a pecuniary benefit"; occupying time, attention, and labor for the purpose of livelihood or profit; etc. (Doc. No. 26 at 11-15.) Moreover, Plaintiff agrees that in assessing whether an entity is "engaged in the business of" something, the Court should look to the purpose of that entity. (*Id.* at 13-14.) Plaintiff also does not dispute that PESI, as a 501(c)(3) entity, does not have a motive or purpose to profit. (*See generally id.*) Thus, PESI does not meet the definition of a video tape service provider subject to the VPPA the Complaint should be dismissed.

Plaintiff focuses on the term "livelihood" in to attempt to argue that PESI is "engaged in the business of." Plaintiff argues that PESI's "livelihood" depends on selling prerecorded videos. Plaintiff's argument rests on a flawed meaning of "livelihood." Resp. pp. 13-14; Motion, p. 8. Merriam-Webster defines "livelihood" as "means of support or subsistence," and defines "subsistence" as "the condition of remaining in existence," and "the minimum (as food and shelter) necessary to support life." *See Livelihood,* Merriam-Webster Dictionary, available at https://www.merriam-webster.com/dictionary/livelihood (last visited February 12, 2025); *Subsistence,* Merriam-Webster Dictionary, available at https://www.merriam-webster.com/dictionary/subsistence (last visited February 12, 2025). In other words, Plaintiff would have to allege that PESI's survival on the most basic level is dependent on its sale of prerecorded videos; but Plaintiff has not and cannot offer such allegations. PESI exists as a charitable organization that provides continuing education to professionals—including numerous types of educational materials that are not subject to the VPPA (*e.g.,* books, live video webinars, in-person retreats, etc.). *See PESI, A Non-Profit Organization*, available at www.pesi.com. Accordingly, even if the Court accepts that a non-profit entity whose livelihood depends on the

sale of prerecorded video materials can qualify as a VTSP, Plaintiff has not plausibly alleged that PESI qualifies, and the Amended Complaint should be dismissed.

Plaintiff's remaining arguments and authority all fail to show that PESI is subject to the VPPA for another fundamental reason: none of them consider or take into account how the federal government, through the Internal Revenue Service ("IRS"), views 501(c)(3) entities. Plaintiff does not dispute that the Court should consider the IRS's interpretation. (*See* Doc. No. 26 at 15.) The Internal Revenue Code expressly dictates that PESI is operating and organized with one *exclusive* purpose in mind—charity. (*See* Doc. No. 16 at 8.)

This—among other reasons—is why Plaintiff's reliance on *Krassick* is misplaced. *Krassick* is a Michigan federal district court opinion interpreting Michigan state law wherein the court engaged in statutory interpretation of the phrase "engaged in the business." *Krassick v. Archeological Inst. of Am.,* 2022 U.S. Dist. LEXIS 103417 (W.D. Mich. June 9, 2022). The defendant in *Krassick* was not a 501(c)(3) nonprofit like PESI, nor did it allege that it operated for an *exclusive* purpose that was not "business." (*See generally* Def.'s Mot. to Dismiss in *Krassick,* W.D. Mich. Case No. 21-cv-00180, Doc. No. 12.) Additionally, in reaching its conclusion that the nonprofit defendant "engaged in the business of" selling magazines under the Michigan Preservation of Personal Privacy Act, the court relied in part on Michigan courts' interpretations of the phrase "in the business of"—i.e., without regard to the word "engaged." *Krassick*, 2022 U.S. Dist. LEXIS 103417 at *20-22. Furthermore, the *Krassick* court did not discuss or even acknowledge the Internal Revenue Code or that 501(c)(3)'s are enacted for an *exclusive* purpose— a purpose that is *not* "business." *Krassick* therefore could not and did not reach the conclusion that 501(c)(3) organizations—which per the IRS exclusively exist for charitable purposes—meet the definition for "engaged in the business of." Accordingly, *Krassick* is inapposite to Plaintiff's

claims against PESI.[1]

As a 501(c)(3) nonprofit entity, PESI is not "engaged in the business" of anything, nor has Plaintiff alleged that its "livelihood" depends on the sale or delivery of prerecorded video materials. Thus, PESI is not subject to the VPPA, and the Amended Complaint should be dismissed with prejudice.

## II.  PLAINTIFF'S RESPONSE ABANDONS THE "ILLUSTRATIVE" ALLEGATIONS, LEAVING ONLY CONCLUSORY OR GENERAL ALLEGATIONS THAT ARE INSUFFICIENT TO SUPPORT A CLAIM.

Plaintiff creatively drafted her Amended Complaint so that anyone reading it would conclude that the "illustrative" allegations relate to the named Plaintiff. (*See, e.g.,* Doc. No. 13 at ¶¶ 1, 3-8, 19-22, 38-59, 62-63, 65-90, 93-94, 96-103, 105, 107-112.) PESI's initial brief explained how Plaintiff's illustrative allegations fail to state a claim under Counts II-IV. (Doc. No. 16 at 3, 8-10, 17, 18, 22.) Not surprisingly, Plaintiff now concedes for the first time that some of the illustrative allegations do not relate to her and that the Court can disregard them. But Plaintiff cannot cherry-pick which illustrative allegations should and should not be considered. (*See generally* Doc. No. 26; Doc. No. 13 at ¶¶ 19-22, 105.) Moreover, disregarding the illustrative allegations does not rescue Plaintiff's Amended Complaint from dismissal because none of the remaining allegations discuss (i) any specific interaction between *Plaintiff* and PESI's website (including what device or browser she used), (ii) when *Plaintiff* interacted with PESI's website, (iii) what prerecorded video *Plaintiff* requested or obtained, or (iv) what the result of *Plaintiff*'s

---

[1] Plaintiff refers to other cases in her Response: *SEC v. Carebourn Cap., L.P.,* 21-CV-2114, 2023 U.S. Dist. LEXIS 172244 (D. Minn. Sept. 27, 2023); *SEC v. Ridenour,* 913 F.2d 515, 517 (8th Cir. 1990); *SEC v. Keener,* 580 F. Supp. 3d 1272, 1282 (S.D. Fla. 2022); *SEC v. Fierro,* 20-CV-02104, 2023 U.S. Dist. LEXIS 112797 (D.N.J. June 29, 2023). (Doc. No. 26 at 14-15.) Like *Krassick,* none of these cases considered the Internal Revenue Code's directives regarding 501(c)(3) organizations when determining whether an entity was "engaged in the business" of something.

interaction with PESI's website was. In other words, the Amended Complaint[2] is devoid of the what, how, and when PESI allegedly violated the VPPA with respect to Plaintiff.

     **a.**   **The VPPA claims based on alleged disclosures to Meta, Google, and Pinterest via tracking technologies (Counts II-IV) necessarily fail.**

If the Court disregards the illustrative allegations, Counts II-IV must be dismissed because Plaintiff fails to allege facts to establish that PESI disclosed her PII via tracking technologies (the Meta Pixel, Google Analytics, or the Pinterest Tag).

Plaintiff does not respond to PESI's argument that the Amended Complaint's "exemplar source codes" (Doc. No. 26 at ¶¶ 19-22) were sheer speculation or that the codes do not contain *Plaintiff's* information anywhere within them. Instead, she now appears to request that these illustrative allegations—the only allegations that indicate what may have happened when *Plaintiff* purportedly visited PESI's website—should be ignored. Without the illustrative "exemplar source code" allegations, Plaintiff has not alleged the what, how, and when PESI allegedly shared *Plaintiff's* PII with Meta, Google, and Pinterest.

Plaintiff also disclaims another illustrative allegation, Paragraph 105[3], claiming that PESI "relie[d] on a misreading" of it, because it was just a "general example of the information disclosed and does not purport to represent the named plaintiff's experience." (Doc. No. 26 at 16; Doc. No. 13 at ¶ 105.) For the first time, Plaintiff claims that she "did not use Mozilla Firefox[4] as the browser

---

[2] The non-illustrative portions of the Amended Complaint almost entirely consist of bare legal conclusions (*see, e.g.,* Doc. No. 13 at ¶¶ 9, 12, 24, 26, 31-37, 60-61, 92, 95, 106, 113), class allegations (¶¶ 114-119), and the causes of action (¶¶ 120-155).

[3] Given that Plaintiff provided these illustrative allegations, it would seem rather simple for Plaintiff to allege the same data points (i.e., her browser, her device, when she visited PESI's website, what she did there, etc.) with respect to her own claim. These facts affect how the technology operates and thereby affects whether Plaintiff can state a claim.

[4] Plaintiff's denial of using Mozilla Firefox implicitly acknowledges that the tracking technologies (Meta Pixel, Google Analytics, Pinterest Tag) work differently depending on the browser. Tracking technologies'

on her computer or mobile device." (Doc. No. 26 at 17.) But Plaintiff "cannot use a response brief to 'state new claims' not alleged in the complaint," and Counts II, III, and IV—*as alleged*—do not plausibly state a VPPA claim. *Deal Genius, LLC v. O2COOL, LLC*, 2022 U.S. Dist. LEXIS 56389, * 5 (N.D. Ill. Mar. 10, 2022) (citing *Smith v. Dart,* 803 F.3d 304, 311 (7th Cir. 2015)). Moreover, while Plaintiff disputes *Martinez's* application to a motion to dismiss*,* she does not dispute what *Martinez* contemplated: that certain conditions must be met for the alleged disclosures via tracking technologies to even occur—i.e., that the disclosures were not blocked by her web browser by default or through some affirmative action such as cookie blocking or privacy settings. (Doc. No. 26 at 17); *Martinez v. D2C, LLC,*, 2024 U.S. Dist. LEXIS 178570, *7 (S. D. Fla. Oct. 1, 2024).

In other words, Plaintiff effectively admits that her browser and its privacy settings could preclude the entire basis for her claims in Counts II-IV.  However, assuming Paragraph 105 does not apply to Plaintiff, the Amended Complaint contains no allegations regarding the browser she used or the setting for the browser she used, and PESI is left to guess what data Plaintiff believes was disclosed about her—i.e., the basis of her alleged claims.

Furthermore, Plaintiff's argument that PESI "relie[d] on a misreading" of Paragraph 105 is belied by procedural history of this matter. PESI previously moved to dismiss Counts II-IV based on almost-identical version of this allegation in the initial complaint,—i.e., that PESI's alleged disclosure to Google Analytics would reveal, in relevant part, that a woman used Mozilla Firefox on her Mac computer when obtaining a video product from www.pesi.com. (*See* Doc. No. 1 at ¶ 84, Doc. No. 12, at 8-9.) Instead of responding to that motion, Plaintiff filed the Amended

---

efficacy and functionality can also be impacted based on the device used (*e.g.,* computer, tablet, smart phone)—another fact that Plaintiff has not alleged.

Complaint alleging the same thing.[5] (Doc. No. 13 at ¶ 105.) Both the initial and amended complaints do not name any female individuals *other than Plaintiff*. Only now—after PESI demonstrated why using Mozilla Firefox precludes any recovery under Counts II-IV—does Plaintiff contend that the woman referenced in paragraph ¶ 105 is *not* her.

Plaintiff's argument that her browser and privacy settings are "factual question[s]" that should be addressed at a later stage does not save her Amended Complaint either. (Doc. No. 26 at 17.) Plaintiff relies on *Ambrose v. Boston Globe Media Partners LLC,* 2022 U.S. Dist. LEXIS 168403 (D. Mass. Sept. 19, 2022), but there is no discussion in *Ambrose* regarding web browsers or browser settings, and the only mention of "cookies" is in the opinion's summation of the factual allegations from the complaint. *Ambrose,* 2022 U.S. Dist. LEXIS 168403 at *3.

Furthermore, *Ambrose* did not discuss what arguments the defendant asserted for dismissal, let alone their merits; the court only stated generally that "[t]he [defendant]'s arguments in favor of dismissal rely on factual disputes that are not appropriate for disposition at this stage." *Id.* at *6. The defendant set forth four separate arguments in its motion to dismiss Ambrose's complaint— none of which involved the argument presented here, that Plaintiff's web browser default settings precluded the alleged disclosures in the first place. (*See Ambrose* Def.'s Mot. to Dismiss, D. Mass Case No. 22-CV-10195, Doc. No. 25.) Thus, even if Plaintiff's only pleading deficiencies were failing to allege her browser and its privacy settings, she has not established that those facts need not be addressed until a later stage.

In sum, Plaintiff's attempt to avoid allegations in her Amended Complaint by asserting

---

[5] Plaintiff was able to allege specific information—demographic information, city, state, IP address, browser, and device—as an "example" of the alleged disclosure of information that forms the basis of her claims, but is unwilling (or unable) to allege the same kinds of information when it comes to her own interaction with PESI's website.

they are illustrative and do not apply to her exemplifies why the complaint should be dismissed. (*See, e.g.,* Doc. No. 13 at ¶¶ 19-22, 105.) Thus, according to the Plaintiff, this Court should disregard the dozens of other illustrative allegations in the Amended Complaint. (*See, e.g., id.* ¶¶ 1, 3-8, 38-59, 62-63, 65-90, 93-94, 96-103, 107-112.) The remaining allegations in the Amended Complaint do not "nudge[] [her] claims across the line from conceivable to plausible." *Twombly,* 550 U.S. at 570. Accordingly, Plaintiff has not plausibly alleged a VPPA claim based on any disclosure via the tracking technologies, and Counts II-IV should be dismissed.

### b. The VPPA claim based on alleged disclosures to data brokerages (Count I) necessarily fails.

Disregarding the illustrative allegations also negates any possibility of relief under Count I, the alleged disclosures to NextMark and unnamed data brokerages. Count I rests entirely on two NextMark screenshots which Plaintiff contends advertise mailing lists of PESI's "American consumers who purchased Defendant's video products." (Doc. No. 13 at ¶¶ 57-58.) But the only time Plaintiff identifies a video product that was purchased from PESI in the Amended Complaint is within one of the illustrative allegations she disavowed in her Response—the allegation regarding the exemplar source code's depiction of the Meta Pixel sharing Plaintiff's (nonexistent) Facebook ID. (*Id.* ¶ 19.) Indeed, the only other allegations discussing her history with PESI are general—i.e. she purchased unidentified "prerecorded video material." (*Id.* ¶ 15.) Thus, Plaintiff has not plausibly alleged any activity that would have resulted in her inclusion on the lists referenced in the NextMark screenshots, thereby precluding the entire basis for Count I of her Amended Complaint. Count I should be dismissed accordingly.

Plaintiff concedes that several of her illustrative allegations are completely unrelated to her claims, and so the Court should not consider them or any of the other illustrations. The remainder of the Complaint does not assert how *Plaintiff* interacted with PESI's website, what she did on the

website and when she did it, and what occurred as a result. Because Plaintiff fails to assert any facts to answer these questions, she has failed to plausibly state a VPPA claim, and her Amended Complaint should be dismissed with prejudice.

### III.   ALL FOUR COUNTS OF THE AMENDED COMPLAINT FAIL FOR ADDITIONAL REASONS.

#### A. *Plaintiff confirms that she cannot allege a plausible VPPA claim against any data brokerage—named or unnamed—and Count I should be dismissed with prejudice.*

Plaintiff confirms that she has not and cannot maintain a plausible VPPA claim under Count I with respect to either the named or unnamed third parties because: (i) *M.K., Pett,* and *Rodriguez* mandate dismissal regarding any unnamed parties, and Plaintiff's Response is devoid of any factual or legal support dictating otherwise, and (ii) Plaintiff concedes that PESI did not "disclose" anything to NextMark—the only named third party.

##### a.   Plaintiff's bald assertions that PESI disclosed unspecific information to unspecified data brokerages cannot support a VPPA claim, so Count I fails with respect to unnamed third parties.

Plaintiff argues that her bald assertions that PESI disclosed unspecified information to ten different categories of unnamed third parties satisfy Rule 8, but she does not offer any authority to that effect. She does not even attempt to address *M.K. v. Google,* 2023 U.S. Dist. LEXIS 51895, *8 (C.D. Cal. Mar. 27, 2023), despite the similarity of the allegations in that case. Like Plaintiff here, the *M.K.* plaintiff alleged that the defendant disclosed unspecified information to unidentified third parties including "data brokers." *M.K.,* 2023 U.S. Dist. LEXIS 51895 at *8. The court dismissed the plaintiff's claims because there were "no facts linking these allegations to [the plaintiff], much less identifying what 'personally identifiable information' [the defendant] allegedly disclosed, or to whom such information was disclosed." *Id.* The *M.K.* court might as well have described this case, and the result therefore should be the same here. By ignoring *M.K.* altogether, Plaintiff effectively concedes as much, and Count I should be dismissed. *See Scott v.*

*State Dep't of Workforce Development,* No. 06-C-308-C, 2006 U.S. Dist. LEXIS 93240, at *3-4 (W.D. Wis. Dec. 22, 2006).

Plaintiff's attempt to distinguish *Pett* because the court did not dismiss the privacy claims against *named* third parties is also futile. (Doc. No. 26 at 20.) In *Pett v. Publishers Clearing House, Inc.,* another action filed by the same lawyers, the court dismissed a privacy claim asserted against unnamed "data aggregators, data appenders, and/or data operatives." 2023 U.S. Dist. LEXIS 89920, *22 (E.D. Mich. May 23, 2023). As such, *Pett* only further supports a conclusion that Count I with respect to *unnamed* third parties is deficient and must be dismissed. *Id.* *7 (stating: "The Court agrees with Defendant that Plaintiffs had the burden of *alleging the entities* to which Defendant was disclosing the lists/personal information.").

Plaintiff's attempt to distinguish *Rodriguez* is similarly flawed. (Doc. No. 26 at 18-20.) Plaintiff argues that her allegations regarding unnamed third parties are distinct from *Rodriguez* because she: (i) "affirmatively" alleged that disclosures "actually occurred" in referencing the NextMark screenshots, (Doc. No. 13 at ¶¶ 57-58); and (ii) that the alleged disclosures "resulted in a large barrage of unwanted junk mail." (Doc. No. 26 at 20.) Both of these arguments are sheer speculation. The NextMark screenshots (as explained further below) do not even corroborate Plaintiff's claim that PESI disclosed any PII to *NextMark*—let alone any other unnamed third party. And, notwithstanding that the Amended Complaint is devoid of any details to suggest that the unspecified "junk mail" was a result of *any* of PESI's conduct, the complaint not even specify which of the numerous kinds of alleged disclosures of PII caused the purported "large barrage" of junk mail—i.e., per the limited allegations in the Amended Complaint, the junk mail could have been just as likely a result of the alleged disclosures to Meta, Pinterest, or Google, or even an entirely unrated third party, and not related to the unnamed third parties. (Doc. No. 13 at ¶ 11.)

Finally, Plaintiff's arguments do not resolve the fundamental issue with her allegations—that she "did not identify with particularity the person(s) or entity to whom such disclosure was made." *Rodriguez v. Sony Computer Entm't Am. LLC*, 2012 U.S. Dist. LEXIS 55959, *3-4 (N.D. Cal. Apr. 20, 2012). Accordingly, Count I should be dismissed with prejudice as to all unnamed third parties.

### b. Plaintiff does not dispute that PESI did not disclose any information to NextMark, so Count I fails with respect to the single named third party.

The only "data brokerage" that Plaintiff alleged PESI disclosed her PII to that is identified by name is NextMark. As described in PESI's initial brief, (i) this claim is based entirely on two NextMark screenshots (Doc. No. 13 at ¶¶ 57-58), which confirm that none of Plaintiff's PII was included in the purported PESI customer list, and (ii) NextMark's own website confirms that it does not possess the information it purports to advertise, so PESI could not have "disclosed" it to NextMark. (Doc. No. 16 at 13-14.) Plaintiff's arguments to the contrary are unavailing, as she does not offer any authority to show that Plaintiff's PII is within the advertised lists or that PESI disclosed any individual's PII to NextMark in any case. (Doc. No. 26 at 20-23.) This confirms that Plaintiff has not and cannot plausibly allege her claim under Count I.

Plaintiff first argues—in a footnote—that because "the exact course Plaintiff purchased" falls under the "Healthcare" tab of PESI's website, her information is was "within the *Healthcare Seminar* Attendees" list. (*Id.* at 23 (emphasis added).) Raising an argument only in a footnote and failing to substantively develop it constitutes waiver of the argument. *See Ouyenic Ltd. V. 1 Baaaai,* 2021 U.S. Dist. LEXIS 173174, *5-6 (N.D. Ill. Sept. 13, 2021) (citing *Cross v. United States,* 892 F.3d 288, 294 (7th Cir. 2018). But even if the argument was properly raised, Plaintiff does not allege that she purchased[6] any prerecorded video concerning nursing or healthcare, or

---

[6] The only time a particular PESI product is even referred to in the Amended Complaint was within the Meta Pixel exemplar source code allegation, which referenced a "course" for "Integrative Sex and Couples

even allege that she purchased a *seminar* at all. (*See generally* Doc. No. 13.) None of Plaintiff's information is referenced within the screenshots. (*Id.* at ¶¶ 57-58.) Plaintiff also does not respond to PESI's argument that PESI offers *live seminars*[7]—products which are *not* subject to the VPPA. Thus, Plaintiff cannot plausibly allege her PII was included in the NextMark lists.

As purported evidence showing that PESI disclosed her PII to NextMark, Plaintiff asserts that she received "a barrage of unwanted junk mail." (Doc. No. 26 at 21-22.) Even if she received junk mail, she has not alleged a single factual allegation linking the junk mail to PESI's alleged disclosure to NextMark, and thus, this allegation is sheer speculation and need not be considered. *Lanahan v. Cnty. Of Cook,* 41 F.4g 854, 862 (7th Cir. 2022). Indeed, the Amended Complaint lacks any factual allegations regarding the junk mail—*e.g.,* when the junk mail was received, from whom it came from, how it was traceable to PESI and/or NextMark, whether Plaintiff was already receiving junk mail before PESI allegedly disclosed her information to NextMark, etc. (Doc. No. 13 at ¶ 11.) Furthermore, Plaintiff alleges that she received the junk mail at her "home address[] and email inbox," but neither of the NextMark screenshots purport to include home addresses or email addresses—at most, one screenshot references *business* addresses. (*See* Doc. No. 13 at ¶¶ 57-58.) Accordingly, Plaintiff's own allegations directly contradict her Response arguments, and Count I should be dismissed.

Nevertheless, Plaintiff separately confirms that Count I fails because NextMark does not

---

Certification Training." (Doc. No. 13 at ¶ 19.) As explained above, Plaintiff abandoned this illustrative allegation. However, even if Plaintiff plausibly alleged that, in fact, she purchased this "course," that *still* would not result in her information appearing on a mailing list of "HealthCare **Nursing Seminar** Attendees."

[7] The lists that NextMark purportedly advertised are not limited to customers who obtained or requested prerecorded video products; attending a live seminar can be the basis for an individual to appear on a mailing list.

possess the information it purports to advertise, so PESI did not disclose *anything* to NextMark. Plaintiff ignores the fact that NextMark does not *sell* mailing lists and does not possess the information contained within the lists it advertises. (*See* Doc. No. 16 at 5, 14.) Instead, she deviates from the Amended Complaint's allegations to argue that *PESI* "was selling" the lists advertised by NextMark and *PESI* "used" the NextMark screenshots to "publicly advertise" its customers' PII. (Doc. No. 26 at 21, 23.) This is refuted by the Amended Complaint itself—i.e., NextMark, at most, is alleged to be an entity that attempts to broker a transaction regarding a list of information that it *does not possess*. (Doc. No. 13 at ¶ 59 (alleged that the lists were "offered for sale *by NextMark*") (emphasis added)); (*see also* Doc. No. 16 at 14.)

Plaintiff's references to nonbinding authority discussing state law privacy claims also do not save Count I, and she fails to distinguish or even acknowledge *Nashel v. N.Y. Times Co.*. In *Nashel*, the court dismissed the complaint filed by Plaintiff's counsel after it determined that NextMark screenshots contained within the complaint were insufficient to show that the defendant disclosed any personal information. 2022 U.S. Dist. LEXIS 185552, *14 (E.D. Mich. Oct. 11, 2022). By ignoring *Nashel*, Plaintiff concedes that Count I in this case—which similarly hinges on NextMark screenshots—likewise fails and must be dismissed. *Scott*, 2006 U.S. Dist. LEXIS 93240 at *3-4.

### B. Plaintiff has not plausibly alleged that PESI disclosed her PII to Meta (Count II), Google (Count III), or Pinterest (Count IV).

Each of the remaining claims fails because Plaintiff's allegations are insufficient to maintain a VPPA claim. Counts II-IV can be dismissed solely because she has not alleged that she was logged into her Facebook, Google, or Pinterest accounts—a crucial, fundamental fact that necessarily dictates whether the alleged disclosures could even occur. Even if Plaintiff had plausibly alleged that she was logged into her accounts at the time she visited PESI's website, she

has not alleged that any of the information PESI allegedly shared qualifies as PII. In other words, the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," and Counts II-IV should be dismissed. *See Twombly,* 550 U.S. at 679.

> **a. The "ordinary person" standard for evaluating what qualifies as PII applies.**

Plaintiff asks this Court to adopt a minority interpretation of "personally identifiable information," 18 U.S.C. § 2710(b)(1), set forth by the First Circuit in *Yershov v. Gannett Satellite Info. Network, Inc.,* 820 F.3d 482 (1st Cir. 2016), and to reject[8] the "ordinary person" standard adopted by the Third and Ninth Circuits. (Doc. No. 26 at 28-30.) However, Plaintiff fails to acknowledge the issues with the *Yershov* standard or why the ordinary person standard—the standard adopted by the majority of courts—more accurately adheres to the text of the VPPA. *See, e.g., Robinson v. Disney Online,* 152 F. Supp. 3d 176, 180 (S.D.N.Y. 2015) (citing cases). The Ninth Circuit specifically rejected the *Yershov* standard in *Eichenberger,* noting that:

> The "ordinary person" test better informs video service providers of their obligations under the VPPA. The VPPA protects consumer privacy by directing video service providers not to do certain things with consumer information. To that end, 18 U.S.C. § 2710(b)(1) focuses on what information a video service provider "knowingly discloses." In other words, the statute views disclosure from the perspective of the disclosing party. It looks to what information a video service provider discloses, not to what the recipient of that information decides to do with it. As a result, "personally identifiable information" must have the same meaning without regard to its recipient's capabilities. Holding otherwise would make "[t]he lawfulness of [a] disclosure . . . depend on circumstances outside of [a video service provider's] control." *Mollett*, 795 F.3d at 1066. The Third Circuit's "ordinary person" test, by contrast, provides video service providers with enough guidance to comply with the VPPA's requirements.

*Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 985 (9th Cir. 2017). Indeed, the *Yershov* interpretation

---

[8] Plaintiff's own Amended Complaint relies on and expressly refers to the "ordinary person" standard several times with respect to the alleged disclosures to Meta, Google, and Pinterest. (*See, e.g.*, Doc. No. 13 at ¶ 107 (alleging that "any ordinary person can identify" a user by the information allegedly disclosed via Google Analytics); (*see also id.* at ¶¶ 90, 98, 102, 110.)

would create VPPA liability so long as massive and highly sophisticated data collection entities like Facebook and Google are able to take a string of otherwise meaningless letters and numbers and use it to identify someone. Such an interpretation effectively renders the "knowingly" portion of the PII definition meaningless, which violates the statutory interpretation canon against surplusage. *See, e.g., United States v. Feeney,* 100 F.4th 841 (7th Cir. 2024). The only other case cited by Plaintiff that attempts to dissuade this Court from adhering to the "ordinary person" standard is *In re Vizio, Inc.,* 238 F. Supp. 3d 1204 (C.D. Cal. 2017), a Central District of California case that was decided before *Eichenberger,* and thus, is inapposite. (Doc. No. 26 at 30.)

Accordingly, the Response's request not to apply the "ordinary person" standard is misguided. Counts II-IV should be dismissed because they fail under that standard.

### b.  Plaintiff has not plausibly alleged that PESI disclosed *her* PII to Meta.

Plaintiff's Amended Complaint lacks fundamental allegations to plausibly allege PESI disclosed her PII to Meta in connection with Count II.

First, Plaintiff does not allege she was logged into her Facebook account at the time she visited PESI's website. Without this critical detail, no information—let alone her "PII"—could have been shared with Facebook. Plaintiff offers no rebuttal on this point, effectively conceding that her information was not shared with Meta, and Count II can be dismissed on this basis alone. *See, e.g., O.B. v. Norwood,* 170 F. Supp. 3d 1186, 1194 (N.D. Ill. 2016) (failure to reply to an argument in a response brief concedes the issue) (citing *In re LaMont*, 740 F.3d 397, 410 (7th Cir. 2014); *Scott*, 2006 U.S. Dist. LEXIS 93240 at *3-4.

Even if Plaintiff was logged into her Facebook account at the time she visited PESI's website, Count II should be dismissed because Plaintiff has not plausibly alleged that her Facebook ID ("FID") is PII. She admits that the VPPA claims were dismissed in *Heerde, Ghanaat,* and *Solomon* because those plaintiffs did not identify what (if any) personal information on *their*

respective Facebook profile pages was viewable and could identify *them*. (Doc. No. 26 at 26-27.) Plaintiff claims that her allegations are distinguishable because she "ties allegations concerning what appears on *a* Facebook profile." (*Id.* at 27 (emphasis added)); (Doc. No. 13 at ¶ 66.) The allegations Plaintiff cites are Paragraphs 16, 18, 66, and 88 of the Amended Complaint—none of which allege what information on [*her*] Facebook page[s], if any, was viewable and could be used to identify *her." Heerde v. Learfield Commc'ns, LLC*, 2024 U.S. Dist. LEXIS 137781, *10-11 (C.D. Cal. July 19, 2024) (emphasis added). Thus, Count II is deficient under *Heerde, Ghanaat,* and *Solomon* and should be dismissed.

The other authority cited by Plaintiff related to Count II is also distinguishable. Plaintiff agrees that FIDs can be "personally identifying…because they are indexed to an individual's Meta account, which…includes the individual's *first and last name* and 'other personally identifying information about the person.'" (Doc. No. 26 at 24.) Put another way, if a Facebook *profile* does not identify an individual (*e.g.*, if the profile is under a different name), the *FID* cannot identify the individual. But Plaintiff does not allege whether *her* first or last name was viewable on *her* Facebook page*, and the cases cited by Plaintiff are inapplicable because they involved an alleged disclosure of an FID that was connected to a Facebook profile which *actually identified* the profile's user. *See, e.g., Jackson v. Fandom, Inc.*, 2023 U.S. Dist. LEXIS 125531, *2 (N.D. Cal. July 20, 2023) (an FID can be used to locate a Facebook profile, which in turn *may* contain the user's name and other identifying information); *Golden v. NBCUniversal Media, LLC,* 688 F. Supp. 3d 150, 156 (S.D.N.Y. 2023) (FIDs can be identifying because they can be used to look up a Facebook profile, which in turn can identify the user based on the information viewable on the Facebook profile); *Feldman v. Star Trib. Media Co. LLC*, 659 F. Supp. 3d 1006, 1020–21 (D. Minn. 2023) (plaintiff alleged his Facebook profile contained his name); Complaint, *Harris v. Pub.*

*Broad. Serv.,* N.D. Ga. Case No. 22-cv-2456-MLB, Doc. No. 1 (with an FID, any "ordinary person can look up the user's Facebook profile and name"); Complaint, *Belozerov v. Gannett Co.,* D. Mass Case No. 22-10838-NMG, Doc. No. 1 (same).

As noted in PESI's opening brief, PESI could not locate a personal Facebook page for Plaintiff. (Doc. No. 16 at 15.) In response, Plaintiff argues, for the first time, that a specific Facebook profile[9] belongs to her. But this profile does not, in fact, include her first or last name, nor does it contain the information that she alleges was "required" for "a person" to create a Meta account—i.e., birth date, phone number, and email address. (Doc. No. 26 at 24); (Doc. No. 13 at ¶ 66.) She contends that that her Facebook profile "lists her name and includes a picture revealing her gender and race." (Doc. No. 26 at 24.) However, a profile belonging to "Day Nuh" does not identify *Plaintiff*, and though any conclusions regarding the user's race or gender based on a single profile picture would be entirely speculative, race and gender do not qualify as "PII" under the VPPA. *See In re Nickelodeon,* 827 F.3d at 269 (disclosing gender, even combined with 10 other data points, did not constitute PII).

Accordingly, Plaintiff has not plausibly alleged that her FID qualifies as PII, and so her VPPA claim necessarily fails under Count II.

### c. Plaintiff has not plausibly alleged that PESI disclosed *her* PII to Google.

Count III fails for a similar reason, in that Plaintiff has not plausibly alleged that PESI's alleged disclosures to Google qualified as PII.

Again, Plaintiff does not allege she was logged into her Google account at the time she visited PESI's website. Not being logged in would necessarily affect how the tracking

---

[9] Plaintiff states that her FID was included on her notice of subpoena to Meta. (Doc. No. 26 at 23.) The Facebook profile connected with that FID yielded a profile for "Day Nuh," with no first or last name.

technology—i.e., Google Analytics—works. (*See* Doc. No. 13 ¶ 20 (describing Google "identifiers," some of which can apply to *signed-out* users ("NID") and others which can apply to signed-in users ("cid" and "uid")). Plaintiff does not dispute that if she was not logged in, her alleged "identifiers" or other information could not have been disclosed to Google. (Doc. No. 26 at 28-33.) Thus, Plaintiff admits that at a minimum, her understanding of the Google Analytics tracking technology—the entire basis for Count III—is flawed, and her allegations concerning these alleged disclosures are inaccurate. *Scott*, 2006 U.S. Dist. LEXIS 93240 at *3-4. Count III should be dismissed for this reason alone.

None of Plaintiff's arguments support a contrary conclusion. Plaintiff does not supply any authority to support her claim that her unalleged Google "device identifiers" constitute PII, or even that "device identifiers" can be PII when combined with other information. Instead, she argues that "email addresses and IP addresses…standing alone, qualify as PII." (Doc. No. 26. at 30.) This is factually and legally incorrect. Plaintiff does not allege that *her* email address was disclosed. Plaintiff only alleged that PESI disclosed an unknown "user's" "*hashed* email address." (Doc. No. 13 at ¶¶ 97-98.)

However, even if Plaintiff alleged that PESI shared *her* hashed email address with Google, Count III would still fail. Plaintiff argues that "email addresses" are PII, but the authority she cites for this argument is inapplicable because it discusses only *unhashed* or unencrypted email addresses. (*Id.*); *see Hausberg v. McDonough,* 2023 U.S. Dist. LEXIS 39888, *3 (M.D. Fla. Mar. 9, 2023) (discussing data points that could support good cause to seal documents, including unencrypted email addresses, social security numbers, and phone numbers); *Lebakken v. WEBMD, LLC,* 640 F. Supp. 3d 1335 (N.D. Ga. Nov. 4, 2022) (discussing unencrypted/unhashed email addresses); *Eichenberger,* 876 F.3d 979 (same). Therefore, even if Plaintiff had plausibly alleged

that her hashed email[10] was disclosed to Google, she still could not establish that a hashed email qualifies as PII.

Plaintiff also contends that IP addresses (plural) can be PII because they "create an approximate map to follow" an unidentified "*subscriber* across devices." (Doc. No. 13 at ¶ 104) (emphasis added). Again, Plaintiff has not alleged that PESI followed *her* across devices, or even alleged the predicate information necessarily to draw that conclusion—i.e., whether she requested video materials from PESI more than once, what device(s) she used, whether she used a VPN network, etc. Without those allegations, she cannot claim that PESI followed her "across devices." Relatedly, even if Plaintiff plausibly alleged that multiple of *her* IP addresses were disclosed, Plaintiff ignores the fact that courts have routinely declined to hold that IP addresses qualify as PII. *See, e.g., White v. Samsung Elecs. Am., Inc.,* No. 17-1775, 2019 U.S. Dist. LEXIS 254148, *11-12 (D.N.J. Aug. 20, 2019) (holding that static identifiers such as IP addresses, MAC addresses, and zip codes are not PII for purposes of VPPA claims); *Eichenberger,* 876 F.3d at 985 (adopting the Third Circuit's "ordinary person" standard for PII, wherein IP addresses do not qualify as PII).

Because Plaintiff has not and cannot plausibly allege that PESI disclosed her PII to Google, Count III should be dismissed.

### d. Plaintiff has not plausibly alleged that PESI disclosed *her* PII to Pinterest.

Count IV also fails because Plaintiff cannot plausibly allege that PESI disclosed her PII to Pinterest. She does not assert that she was logged into her Pinterest account at the time she visited PESI's website. Again, no information could have been shared to Pinterest via the Pinterest Tag if Plaintiff was not logged in, and the Response does not dispute this. (Doc. No. 26 at 23.) She thus

---

[10] Plaintiff presumably failed to allege her email address at issue because the email associated with her PESI account is a business email address and publicly available.

concedes that her information was not shared with Pinterest, so Count IV can be dismissed on this basis alone. *Scott*, 2006 U.S. Dist. LEXIS 93240, at *3-4.

But even if Plaintiff alleged that she was logged into her Pinterest account at the time she interacted with PESI's website, Count IV still fails because she cannot allege that the information allegedly disclosed qualifies as PII. As explained above, under the "ordinary person" standard, information is not PII unless it readily permits an ordinary person to identify a specific individual's video-watching behavior. *In re Nickelodeon,* 827 F.3d at 290. Plaintiff makes a conclusory argument that her Pinterest allegations "satisfy" the ordinary person standard without any explanation or authority to that effect—undoubtedly because there is none. (Doc. No. 26 at 34.)

She also makes a cursory argument that Pinterest UIDs (the one data point that allegedly "identifies" Plaintiff) are "akin to the FID," for no reason other than UIDs are not "anonymized." (*Id.*) This is refuted by the Amended Complaint. Plaintiff does not allege—nor does she argue in her brief—that UIDs can be entered in a URL to locate a Pinterest profile like the FID, and her Amended Complaint confirms that UIDs—unlike FIDs—are encrypted. (Doc. No. 13 at ¶ 108.) She offers no other factual information or legal authority to support her analogy of the Pinterest UID to the FID, and there is no legal support for her argument that her Pinterest UID is PII. Accordingly, Count IV must be dismissed because Plaintiff's Pinterest UID does not and cannot meet the ordinary person standard for PII.

Plaintiff's attempts to distinguish *Wilson v. Triller,* 598 F. Supp. 3d 82 (S.D.N.Y. Apr. 18, 2022) similarly fail. In *Triller*, the court dismissed VPPA claims based on an alleged disclosure of an anonymized UID associated with a Triller profile that did not, on its own, identify the plaintiff. Plaintiff asserts that a Pinterest UID is unlike the *Triller* UID, because the Pinterest UID is not "anonymized." (Doc. No. 26 at 24.)  However, she admits that Pinterest UIDs are encrypted, and

offers no factual or legal basis to explain how the encrypted Pinterest UID is any more likely to enable an ordinary person to identify her than an *anonymized* Triller UID.

Second, she claims that *Triller* is distinct because she: (i) "alleges automatic linking" of the Pinterest cookie to the information on "one's Pinterest profile," and (ii) did not allege that a "pairing" was necessary to connect the UID to a particular individual.  (Doc. No. 26 at 34-35.) This is directly contradicted by the Amended Complaint, which does *not* allege *any* "automatic" linking between a Pinterest cookie and profile, and in fact, affirmatively alleges that a pairing is needed to match a UID to an individual—specifically, by "going to a person's Pinterest profile and right-clicking 'Inspect Source' and cross-referencing the information disclosed against the information in the source." (Doc. No. 13 at ¶ 110.)

Third, Plaintiff claims that *Triller* was "abrogated to the extent that [it] even discusses" PII by *Salazar v. NBA,* 118 F.4th 533 (2d Cir. 2024). But the court in *Salazar* expressly stated that it did not need to explore and did not explore "what exactly is 'personally identifiable information.'" 118 F.4th at 549 n.10.

Plaintiff's final attempt to distinguish *Triller* is also without merit. Plaintiff claims that the disclosures in *Triller* "necessarily triggered the ordinary course of business exception of the VPPA"—yet the *Triller* opinion does not discuss or even reference this exception. *See generally Triller,* 598 F. Supp. 3d 82.

Finally, Plaintiff's only response to PESI's arguments that *Ghanaat* and *Solomon* also warrant dismissal of Count IV was contained within a footnote and need not be considered. *Ouyenic*, 2021 U.S. Dist. LEXIS 173174 at *5-6 (raising an argument only in a footnote and failing to substantively develop it is tantamount to waiver). *Solomon* and *Ghanaat* dismissed VPPA claims when the plaintiffs failed to allege that *their* respective social media pages contained any

personal information that was viewable and could identify *them. See Solomon,* 2023 U.S. Dist. LEXIS 176480 at *6; *Ghanaat,* 689 F. Supp. 3d at 720. The Response[11] and Amended Complaint are silent as to what (if any) information Plaintiff provided in connection with her Pinterest account that was viewable on *her* Pinterest profile and could identify *her.* As such, Plaintiff has not and cannot plausibly allege that PESI disclosed her PII to Pinterest, and Count IV should be dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, Defendant PESI, Inc. respectfully requests that its Motion be granted and that Plaintiff's Amended Complaint be dismissed with prejudice.

Dated this 13th day of February, 2025.

<div style="margin-left:40%">

*Electronically signed by Brett B. Larsen*
Brett B. Larsen
State Bar No.: 1064355
Daniel J. Hollis
State Bar No.: 1128071
Attorneys for Defendant PESI, Inc.
HINSHAW & CULBERTSON LLP
790 N. Water Street, Suite 1950
Milwaukee, WI 53202
414-276-6464
blarsen@hinshawlaw.com
dhollis@hinshawlaw.com

David M. Schultz
IL Bar No.: 6197596
HINSHAW & CULBERTSON LLP
151 N. Franklin Street, Suite 2500
Chicago, IL 60606
312-704-3000
dschultz@hinshawlaw.com

</div>

---

[11] For the first time, Plaintiff claims that a Pinterest account "*displays*" the user's "first and last name, age, gender (optional), email address, country, region, and preferred language." (Doc. No. 26 at 5.) She cites paragraph 108 of the Amended Complaint, which only alleges what "a person must provide" to "create a Pinterest account"—i.e., there is no allegation that any of this information is *viewable* or *displayed* on a Pinterest account. Moreover, Plaintiff has not alleged what *her* Pinterest account is, or that any identifying information was viewable on *her* Pinterest account.