# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-24066-CIV-ALTONAGA/Reid

ALAN GUERECA,

    Plaintiff,

v.

MOTORSPORT.TV DIGITAL, LLC,

    Defendant.

_____/

**ORDER**

**THIS CAUSE** came before the Court upon Defendant, Motorsport.tv Digital, LLC's Motion to Dismiss [or, Alternatively,] to Strike Class Allegations [ECF No. 12], filed on January 6, 2025. The Motion carries several attachments. (*See id.*, Decl. of [Def.'s Content Dir.] Rainier Ehrhardt ("Ehrhardt Decl.") [ECF No. 12-1] 1–5; *id.*, Ex. A, Def.'s Terms of Service [ECF No. 12-1] 6–17; *id.*, Ex. B, Def.'s Privacy Policy [ECF No. 12-1] 18–26; *id.*, Ex. C, Screenshot of Def.'s "Create Your Account" Page [ECF No. 12-1] 27–28).[1] Plaintiff, Alan Guereca filed an Opposition ("Response") [ECF No. 20]; to which Defendant filed a Memorandum in Response ("Reply") [ECF No. 21]. The Court has carefully considered the Complaint [ECF No. 1], the parties' written submissions, and applicable law. For the following reasons, the Motion is denied.

**I. BACKGROUND**

Defendant, a Florida-based digital media company, offers pre-recorded video content to consumers across the United States through subscription and on-demand streaming. (*See* Compl. ¶¶ 14–15). Plaintiff, a Georgia resident, purchased a subscription from Defendant in June 2023 to

---

[1] The Court uses the pagination generated by the electronic CM/ECF database, which appears in the headers of all court filings.

access its video content and, in turn, viewed multiple on-demand videos.  (*See id.* ¶¶ 7, 9–10). Plaintiff brings this putative class action under the Video Privacy Protection Act ("VPPA"), 18 U.S.C. section 2710, asserting that Defendant knowingly disclosed the identities, subscriptions, and video viewing histories of its customers — including Plaintiff's — to Meta Platforms, Inc. ("Meta"), formerly known as Facebook, Inc., without their knowledge or consent.  (*See id.* ¶ 1).

Plaintiff alleges Defendant embedded "Meta Pixel" tracking technology on its website, systematically transmitting personally identifiable subscription and viewing data to Meta.  (*See id.* ¶ 2).  Specifically, Defendant shared customers' Facebook IDs ("FIDs"), subscription details, and the titles of the videos they accessed on Defendant's website.  (*See id.* ¶ 3).  An FID is a unique sequence of numbers tied to a user's Meta profile, which in turn displays their names and other personal details, allowing Meta to associate a person's viewing history with their real-world identity.  (*See id.*).  Through the Meta Pixel tracking mechanism, Defendant captured and disclosed to Meta the specific videos a user watched — referred to as "Private Viewing Information."  (*Id.*).

According to Plaintiff, Defendant failed to ask for or obtain its customers' consent before transmitting this data to Meta.  (*See id.* ¶ 4).  Such a practice violates the VPPA, which provides that, absent a customer's informed, written consent, "any 'video tape service provider who knowingly discloses, to any person, personally identifiable information concerning any consumer of such provider shall be liable to the aggrieved person for'" liquidated damages and equitable relief.  (*Id.* ¶ 5 (quoting 18 U.S.C. § 2710(b)(1))).  In other words, the VPPA prohibits companies like Defendant from knowingly sharing consumers' viewing histories with third parties — such as Meta — when that information can be used to personally identify consumers like Plaintiff and the specific audio-visual products or services they accessed.  (*See id.* ¶ 18).

Plaintiff has suffered injury from this practice. In the two years before filing this action, he obtained pre-recorded videos from Defendant; each time, Defendant disclosed to Meta his FID, the title of the video requested and obtained, the URL where he requested access to and obtained the video, and the device Plaintiff used to obtain each video. (*See id.* ¶ 10). Plaintiff had a Meta account, a Meta profile, and an FID associated with his profile. (*See id.* ¶ 11). He never consented, agreed, authorized, or permitted Defendant to disclose subscription or Private Viewing Information to Meta. (*See id.* ¶ 12). By its disclosures to Meta, Defendant violated Plaintiff's rights under the VPPA and invaded his interest in keeping such information private. (*See id.* ¶ 13).

To be clear, Defendant knowingly uses the Meta Pixel to transmit all subscribers' Private Viewing Information — not just Plaintiff's — to Meta. (*See id.*). Each time a user purchases a subscription or otherwise accesses a video on Defendant's website, Defendant shares his or her unencrypted FID and viewing details with Meta, including the titles of video products the user requested. (*See id.* ¶ 50). Defendant intentionally programs its website to ensure this automatic data transfer — all to leverage Meta's advertising, analytics, and marketing tools. (*See id.* ¶ 51). Despite knowing this information is disclosed, Defendant fails to notify users — including Plaintiff and putative class members — obtain their consent, or allow them to opt out. (*See id.* ¶¶ 54, 56).

Plaintiff contends Defendant violated his statutory right to privacy and invaded his legally protected interest in keeping his viewing habits confidential. (*See id.* ¶¶ 64–74). Thus, Plaintiff requests the Court certify a class under Federal Rule of Civil Procedure 23 and name him class representative; declare that Defendant's conduct violates the VPPA; award Plaintiff and class members $2,500.00 for each violation of the VPPA, as allowed under 18 U.S.C. section 2710(c)(2)(A); enter injunctive relief; and award punitive damages and attorney's fees and costs under Rule 23 and 18 U.S.C. section 2710(c). (*See id.* 19). In response, Defendant seeks dismissal

3

of the Complaint for failure to state a claim for relief under Federal Rule of Civil Procedure 12(b)(6), and alternatively, an order striking Plaintiff's class allegations. (*See generally* Mot.). The Court takes up the issues raised in the parties' briefing below.

## II. LEGAL STANDARDS

### A. Motion to Dismiss

"To survive a motion to dismiss [under Federal Rule of Civil Procedure 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (alteration added; quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although this pleading standard "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (alteration added; quoting *Twombly*, 550 U.S. at 555). Pleadings must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Twombly*, 550 U.S. at 555 (alteration added; citation omitted). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (alteration added; citing *Twombly*, 550 U.S. at 556).

To meet this "plausibility standard," a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (alteration added; citing *Twombly*, 550 U.S. at 556). "The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss." *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1261 (11th Cir. 2009) (citing *Iqbal*, 556 U.S. at 678), *abrogated on other grounds by Mohamad v. Palestinian Auth.*, 566 U.S. 449 (2012). When considering a motion to dismiss, a court must construe the complaint "in a light most favorable to the plaintiff" and take its factual

4

allegations as true. *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) (citation omitted).

On a motion to dismiss under Rule 12(b)(6), the Court's review is generally limited to the complaint itself, including any documents attached to or incorporated within it. *See Bickley v. Caremark RX, Inc.*, 461 F.3d 1325, 1329 n.7 (11th Cir. 2006). A document outside the four corners of the complaint may be considered when it is central to the plaintiff's claim and its authenticity is undisputed. *See Maxcess, Inc. v. Lucent Techs., Inc.*, 433 F.3d 1337, 1340 n.3 (11th Cir. 2005) (citation omitted).

B. <u>Motion to Strike Class Allegations</u>

Federal Rule of Civil Procedure 23 governs the certification of class actions. "For a class to be certified, the named plaintiff must have standing[,] and the putative class must satisfy both the requirements of [ ] Rule [ ] 23(a) and the requirements found in one of the subsections of Rule 23(b)." *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1267 (11th Cir. 2019) (alterations added; citation and footnote call numbers omitted). Under Rule 23(a), every class must meet the requirements of numerosity, commonality, typicality, and adequacy of representation. *See id.* at 1266. A court must also find "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 12(b)(3).

Admittedly, courts may strike class allegations based on pleadings alone when it is evident from the face of a complaint that a plaintiff can plead no set of facts that would allow class certification. *See Williams v. Wells Fargo Bank N.A.*, No. 11-21233-Civ, 2011 WL 4368980, at *11 (S.D. Fla. Sept. 19, 2011); *Romano v. Motorola, Inc.*, No. 07-60517-Civ, 2007 WL 4199781,

5

at *2 (S.D. Fla. Nov. 26, 2007). But, "it is rare for courts to strike or dismiss class allegations prior to the filing of class certification motions and discovery[,]" *Lankford v. Carnival Corp.*, No. 12-24408-Civ, 2013 WL 12064497, at *6 (S.D. Fla. June 18, 2013) (alteration added; citations and quotation marks omitted), because "[class] determination usually should be predicated on more information than the complaint itself affords[,]" *Herrera v. JFK Med. Ctr. Ltd. P'ship*, 648 F. App'x 930, 934 (11th Cir. 2016) (alterations added; citation, footnote call number, and quotation marks omitted).

### III. DISCUSSION

A. <u>Motion to Dismiss</u>

Defendant asserts that the Complaint's single VPPA claim should be dismissed because: (1) Plaintiff fails to plead sufficient facts that Defendant installed the Meta Pixel on its website or that his interactions with the platform were transmitted to Meta; (2) a Facebook ID is not a personal identifier, and Plaintiff does not allege that his Meta profile contained personal information; and (3) Plaintiff consented to the alleged disclosures through a clickwrap agreement and never withdrew his consent. (*See* Mot. 8–18).

> *1. Absence of allegations that Defendant implemented the Meta Pixel or that Plaintiff's information was transmitted to Meta*

Defendant first argues that Plaintiff fails to allege Defendant implemented the Meta Pixel or that data from his website interactions were transmitted to Meta. (*See id.* 9; Reply 6–8). Defendant further criticizes the pleading for lacking specifics — such as the name of the video allegedly shared, the type of device or web browser Plaintiff used, the timing of the disclosure, or how Plaintiff discovered the data transfer. (*See* Mot. 9). According to Defendant, Plaintiff's claim amounts to nothing more than labels and conclusory assertions, which are not entitled to the presumption of truth. (*See* Reply 6 (citations omitted)).

6

This argument is, frankly, difficult to take seriously because Plaintiff clearly alleges the very facts Defendant asserts are missing, and the additional details Defendant demands are not required to state a VPPA claim. The statute requires Plaintiff to plead only that: "(1) a defendant is a video tape service provider, (2) the defendant disclosed personally identifiable information concerning any customer to any person, (3) the disclosure was made knowingly, and (4) the disclosure was not authorized by section 2710(b)(2)." *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1066 (9th Cir. 2015) (quotation marks omitted; quoting 18 U.S.C. § 2710(b)(1)). Plaintiff satisfies these elements by alleging that Defendant knowingly disclosed its consumers' personally identifiable information (PII) — including his own — to Meta via the Meta Pixel, and, further, that the disclosure was not authorized by section 2710(b)(2). (*See* Compl. ¶¶ 2–3, 10–13).

There is no heightened pleading requirement for VPPA claims, nor are Plaintiff's allegations conclusory. Moreover, Defendant cites to no authority requiring Plaintiff to specify the exact video titles, device details, timing, or investigative methods used to discover the disclosures, in order to state a VPPA claim. (*See generally* Mot.). Defendant's insistence on this information is an attempt to impose a stricter standard than the law demands.

> 2. *Whether a Facebook ID is a personal identifier and whether Plaintiff pleads that his Meta profile contained personal information*

The VPPA prohibits a video service provider from disclosing, without authorization, a consumer's PII or "'information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider.'" (Mot. 9 (quoting 18 U.S.C. § 2710(a)(3))). Defendant argues an FID alone does not qualify as PII under the VPPA, asserting that Plaintiff's claim is "unfounded" because an FID is merely a random sequence of numbers linked to a Meta profile and, on its own, does not reveal personal details. (*Id.*; *see also id.* 10 (noting most courts have "held that 'static digital identifiers that could, in theory, be combined

7

with other information to identify a person do not count as 'personally identifiable information' [under the VPPA], at least by themselves'" (alteration added; emphasis and footnote call number omitted; quoting *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 283 (3d Cir. 2016)))).

Again, Plaintiff *does* allege that Defendant disclosed users' FIDs alongside the URLs and titles of videos they accessed on its website — a combination that, viewed together, constitutes PII under the VPPA. (*See* Compl. ¶¶ 10, 13, 49–57). According to Plaintiff, Meta indexes FIDs to a user's personal account, which includes the individual's name, birth date, gender, and contact details, making it possible to match an FID to an identifiable person. (*See id.* ¶¶ 3, 43).

While Defendant relies on the narrower interpretation of PII favored by the Third and Ninth Circuits, *see, e.g.*, *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 985 (9th Cir. 2017) (noting PII in the context of the VPPA encompasses "only information that readily permits an ordinary person to identify a particular individual as having watched certain videos." (alterations adopted; emphasis omitted; quoting *Nickelodeon Consumer Privacy Litig.*, 827 F.3d at 290)), Plaintiff's allegations satisfy the First Circuit's less stringent standard, *see, e.g.*, *Yershov v. Gannett Satellite Info. Network, Inc.*, 820 F.3d 482, 486 (1st Cir. 2016) (holding that PII in the context of the VPPA includes "information reasonably and foreseeably likely to reveal which . . . videos [a person] has obtained." (alterations added)). Under this more inclusive standard, the Complaint sufficiently pleads that Defendant disclosed PII.

Other courts have recognized that disclosing an FID alone is not what triggers VPPA liability — it is its combination with viewing history that matters. Indeed, as the court in *Harris v. Public Broadcasting Service*, 662 F. Supp. 3d 1327, 1334 (N.D. Ga. 2023), explained:

> Under the VPPA, [PII] is "information which *identifies a person as having requested or obtained* specific video materials or services from a video tape service provider." 18 U.S.C. § 2710(a)(3). So, it is not Plaintiff's FID — contained in the

8

> cookie — that establishes liability under the VPPA. Rather, it is the bundling of the FID . . . with the URLs of the videos Plaintiff watched that matters.

*Id.* (alterations added; citations omitted; emphasis in original); *see also Lebakken v. WebMD, LLC*, 640 F. Supp. 3d 1335, 1342 (N.D. Ga. 2022) (finding that plaintiff "adequately alleged that WebMD disclosed her [FID] and email address in connection with her video viewing information to Facebook and that the disclosure of such information constituted a disclosure of PII" (alteration added)); *cf. Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262 (acknowledging that the meaning of the phrase "'personally identifiable information' is not straightforward[]" (*id.* at 284 (alteration added)) and aligning itself with courts taking a narrower understanding of the term, while acknowledging that "even a numeric identifier might qualify as personally identifiable information, at least in certain circumstances" (*id.* at 289 n.174)). Plaintiff alleges exactly that.

Plaintiff further alleges that an ordinary person[2] can identify a user by entering the FID into a web browser (*see* Compl. ¶¶ 3, 52), which retrieves the user's Meta profile and its associated personal information — thus satisfying the requirement that disclosed information be capable of use by an ordinary person to identify an individual. *See, e.g., Martinez v. D2C, LLC*, No. 23-21394-Civ, 2023 WL 6587308, at *4 (S.D. Fla. Oct. 10, 2023) ("Assuming the 'ordinary person' standard applies . . . , the proposed amended complaint's allegations [are] sufficient: 'The [FID] is a unique identifier that is enough, on its own, to identify a person.'" (alterations added; citations omitted)). According to Plaintiff, an ordinary person can easily identify him from his FID by navigating to Plaintiff's page and viewing his Meta Profile, which identifies him by name and contains other PII about him. (*See* Compl. ¶ 4); *see also Jackson v. Fandom, Inc.*, No. 22-cv-04423, 2023 WL 4670285, at *4 (N.D. Cal. July 20, 2023) (finding that PII under the VPPA was

---

[2] Plaintiff acknowledges the Third and Ninth Circuits have adopted the "ordinary person" standard, but the Eleventh Circuit has not yet done so. (*See* Resp. 8 n.2 (citations omitted)).

9

sufficiently alleged where the plaintiff asserted that a "Facebook profile may contain the user's name, gender, birthday, place of residence, career, educational history, a multitude of photos, and the content of a Facebook user's posts" (citation and quotation marks omitted)).

Defendant's continued criticism that Plaintiff must specifically allege that his specific Meta profile contained his name, birth date, gender and other personal details is premised on the stricter Third and Ninth Circuit views. (*See* Reply 9–10 (citations omitted)). Again, the First Circuit's described minority view does not require such allegations for a plaintiff to state a plausible VPPA claim. *See Yershov*, 820 F.3d at 486. Given the absence of binding Eleventh Circuit precedent, the Court may look to non-binding decisions from other courts for guidance. *See, e.g.*, *Buckner v. Penn. Life Ins. Co.*, No. 09-cv-614, 2009 WL 10703163, at *3 (N.D. Ala. May 14, 2009). Since Plaintiff's allegations meet the broader First Circuit standard, Plaintiff states a plausible VPPA claim.

### 3. *Defendant's Consent Defense*

Under the VPPA, a videotape service provider may disclose PII only with the consumer's "informed, written consent[.]" 18 U.S.C. § 2710(b)(2)(B) (alteration added). To be valid, the consent must satisfy three elements. First, it must be "in a form distinct and separate from any form setting forth other legal or financial obligations of the consumer[.]" *Id.* § 2710(b)(2)(B)(i) (alteration added). Second, the consent, "at the election of the consumer[,]" must be "given at the time the disclosure is sought[,]" or "in advance for a set period of time, not to exceed 2 years or until consent is withdrawn by the consumer, whichever is sooner[.]" *Id.* §§ 2710(b)(2)(B)(ii)(I), (II) (alterations added). Finally, the "video tape service provider [must] provide[] an opportunity, in a clear and conspicuous manner, for the consumer to withdraw on a case-by-case basis or to withdraw from ongoing disclosures[.]" *Id.* § 2710(b)(2)(B)(iii) (alterations added).

Defendant insists Plaintiff "provided Consent under 18 U.S.C. [section] 2719(b)(2)(B) to the alleged conduct[,]" and so the Complaint "must be dismissed." (Mot. 13 (alterations added)). According to Defendant, all three VPPA consent prongs are satisfied. (*See generally id.*). Its argument relies on the documents attached to its Motion and proceeds as follows.

First, Defendant argues that Plaintiff expressly consented to the alleged disclosures by agreeing to its Privacy Policy via a clickwrap agreement. (*See id.* 14–15). Citing the Ehrhardt Declaration, Defendant asserts that when Plaintiff purchased a subscription in June 2023, he manually checked a box confirming acceptance of Defendant's Terms of Service and Privacy Policy. (*See id.* 14 (citing Ehrhardt Decl. ¶ 6)). Defendant relies on this attachment and its Privacy Policy — neither of which is referenced or incorporated in the Complaint — to argue that Plaintiff entered a binding clickwrap agreement. (*See id.* 14–15 (citing Ehrhardt Decl. ¶ 6; Def.'s Privacy Policy)). By these actions, Defendant asserts, Plaintiff provided statutory consent under the VPPA, 18 U.S.C. section 2710(b)(2)(B); permitting Defendant to collect, process, store, share, and sell data related to Plaintiff's interaction with its website and content. (*See id.* 12–13).

Next, Defendant contends Plaintiff never withdrew his consent, and his consent did not lapse by operation of law. (*See id.* 15). Because the VPPA permits consent to remain valid for up to two years, Defendant argues Plaintiff's agreement would not expire until June 2025. (*See id.* 15 (citing 18 U.S.C. § 2710(b)(2)(B)(i)(II))). Defendant also states Plaintiff neither revoked his consent nor opted out of the Privacy Policy. (*See id.* 16 (citing 18 U.S.C. § 2710(b)(2)(B)(i)(II))).

Third, Defendant insists its Privacy Policy clearly outlined how Plaintiff could withdraw his consent, arguing that its instructions were "clear and conspicuous" as required under the VPPA. (*Id.* 16 (citing 18 U.S.C. § 2710(b)(2)(B)(iii)); *see also id.* 16–18). To support this claim, Defendant quotes extensively from its exhibits, including its Terms of Service and the Ehrhardt

11

Declaration. (*See id.* 17). For the first time in its Reply, Defendant asks the Court to take judicial notice of its Terms of Service and Privacy Policy under Federal Rule of Evidence 201(b), asserting these publicly available documents authorize it to collect, process, store, share, and sell user data. (*See id.*; Reply 10–13 (citing cases)). Defendant explains that by clicking "continue," Plaintiff consented to its Terms and Privacy Policy — whether through a traditional clickwrap agreement or, as Plaintiff characterizes it, a sign-in wrap agreement. (*See* Reply 11–13). Consequently, Defendant claims that it satisfies the VPPA's consent requirements for permissible disclosure of PII, and the VPPA claim fails. (*See* Mot. 13 (citing 18 U.S.C. § 2710(b)(2)(B))).

While consent is a recognized affirmative defense to a VPPA claim, it must clearly appear on the face of the complaint to justify dismissal under Rule 12(b)(6). *See Feldman v. Star Trib. Media Co. LLC*, 659 F. Supp. 3d 1006, 1023 (D. Minn. 2023) (citation omitted). Nowhere does Plaintiff's Complaint reference Defendant's Privacy Policy, nor does Plaintiff's claim depend on or otherwise incorporate it by reference. (*See* Resp. 11). To the contrary, Plaintiff affirmatively states Defendant never provided written notice it was disclosing its customers' subscription data and Private Viewing Information to third parties like Meta. (*See* Compl. ¶ 12). As Plaintiff aptly puts it, "Defendant would have the Court simply ignore . . . the Complaint's well pled allegations, wholly credit Defendant's assertion that Plaintiff did in fact consent to the disclosure of his PII to Meta, and dismiss the case without discovery into the facts." (Resp. 13 (alteration added)); *see also, e.g.*, *Adams v. America's Test Kitchen, LP*, 680 F. Supp. 3d 31, 43–44 (D. Mass 2023) ("Defendants rely on their Privacy Policy to argue that [plaintiff] consented to disclosure, stating that it is properly before the Court . . . . [A] close reading of the complaint reveals no reference to Defendants' privacy policies. Therefore, the Privacy Policy is not properly before the Court, and Defendants' argument regarding consent fails at this stage." (alterations added; citations omitted)).

12

Even if the Court were to consider Defendant's exhibits, critical factual gaps remain. Plaintiff points out that Defendant has not established which version of the website he encountered, when he registered his Motorsport.tv account, whether he used a desktop or mobile device, or if the Screenshot provided even reflects what Plaintiff saw at the time. (*See* Resp. 16). Defendant's claim that the agreement was "'substantially similar'" to what Plaintiff encountered when he registered his account is insufficient to establish a consent-based affirmative defense — which Defendant has the burden to prove — at this stage. (*Id.* 16; *see also id.* 17). The remaining issues, including the validity of Defendant's clickwrap or sign-in wrap agreement and whether its Privacy Policy meets the VPPA's consent requirements, are fact-intensive inquiries that cannot be resolved on a Rule 12(b)(6) motion. *See, e.g.*, *Farber v. City of Hollywood*, No. 20-60756-Civ, 2021 WL 3604858, at *3 (S.D. Fla. July 28, 2021) ("Such fact intensive inquiries are simply not proper to resolve at the Motion to Dismiss stage."), *report and recommendation adopted sub nom. Farber v. City of Hollywood*, No. 20-60756-Civ, 2021 WL 3603364 (S.D. Fla. Aug. 13, 2021).

B. Motion to Strike Class Allegations

In the event the Court does not dismiss the Complaint, Defendant argues that "this" Court has recently held a class cannot be certified in the context of VPPA litigation, so Plaintiff's class allegations should be stricken. (Mot. 19 (citing *Martinez*, 2024 WL 4367406, at *1); *see also id.* 18–21). That assertion mischaracterizes the Court's precedent. "This" Court has not recently made such a holding. To the contrary, "this" Court has repeatedly declined defendants' invitations to strike class allegations at the pleading stage. *See, e.g.*, *Lankford*, 2013 WL 12064497, at *6; *Brashevitzky v. Covanta Dade Renewable Energy, LLC*, No. 23-20861-Civ, 2024 WL 21589, at *3 (S.D. Fla. Jan. 2, 2024). As in these other cases, the Court finds Defendant's request premature;

13

Plaintiff has yet to engage in discovery, assess the viability of his proposed class definition, or even determine whether to pursue class certification at all.

For the foregoing reasons, it is

**ORDERED AND ADJUDGED** that Defendant, Motorsport.tv Digital, LLC's Motion to Dismiss [or, Alternatively,] to Strike Class Allegations **[ECF No. 12]** is **DENIED**.

**DONE AND ORDERED** in Miami, Florida, this 19th day of February, 2025.

_____
**CECILIA M. ALTONAGA**
**CHIEF UNITED STATES DISTRICT JUDGE**

cc:    counsel of record