UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| DANA MANZA, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br>v.<br><br>PESI, INC.,<br><br>    Defendant. | Case No.: 3:24-cv-000690-amb<br>**DEMAND FOR JURY TRIAL** |

### DEFENDANT, PESI, INC.'S RESPONSE TO PLAINTIFF'S NOTICE OF SUPPLEMENTAL AUTHORITY AND REPLY IN SUPPORT OF NOTICE OF FILING SUPPLEMENTAL AUTHORITY

Defendant, PESI, Inc. ("Defendant" or "PESI"), by and through its attorneys, Hinshaw & Culbertson LLP, hereby submits the following in Response to Plaintiff's Second Notice of Filing Supplemental Authority (ECF No. 36) and in reply with respect to its Notice of Supplemental Authority (ECF No. 35).

Plaintiff filed an Amended Complaint ("FAC") seeking to assert claims under the Video Privacy Protection Act ("VPPA"). Defendant's Motion to Dismiss the FAC seeks dismissal of all four VPPA claims, in relevant part because Plaintiff did not plausibly allege that Defendant disclosed her "personally identifiable information" subject to the VPPA ("PII"). ECF Nos. 15-16. Plaintiff's Response asks this Court not to apply the "ordinary person" interpretation of PII—the standard adopted by the majority of courts. *See* ECF No. 26, pp. 29-30.

On May 6, 2025, PESI filed a Notice of Supplemental Authority in support of its Motion to Dismiss, asking the Court to follow the Second Circuit's recent decision in *Detrina Solomon v. Flipps Media, Inc., dba FITE, dba FITE TV,* 2025 U.S. App. LEXIS 10573 (2d Cir. 2025), filed May 1, 2025, which expressly adopted the "ordinary person" standard. ECF No. 35.

On May 12, 2025, Plaintiff filed a letter with the Court "in response to Defendant's Notice of Supplemental Authority" (hereinafter "Response Letter"). Plaintiff states in the Response Letter that *Solomon* "should be disregarded because it is not binding on this Court and merely repeats the same errors commented by the Third and Ninth Circuits." Plaintiff also cites a decision from the Southern District of Florida, *Kueppers v. Zumba Fitness LLC*, No. 0:24-cv-61983, ECF No. 23 (S.D. Fla. May 8, 2025), which Plaintiff contends is "related to similar Meta Pixel and Pinterest Tag allegations as present in this case." ECF No. 36, p. 1.

*Solomon* and the majority view should be followed. *Kueppers* should not be applied here because: (i) unlike *Solomon, Kueppers* followed the minority view which does not adhere to the text or intent of the VPPA; (ii) *Kueppers* makes no reference to the *Solomon* opinion; (iii) *Kueppers* is factually distinguishable; (iv) Plaintiff incorrectly urges this Court to "entirely" disregard the majority view held by Second, Third, and Ninth Circuits; and (v) *Kueppers* is an unpublished district court opinion adopting the minority view.

The VPPA prohibits a video tape service provider from knowingly disclosing PII, which is defined as "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C. §§ 2710(a)(3); (b)(1). The majority view from the Second, Third and Ninth Circuits is that PII refers only to "the kind of information that would readily permit an ordinary person to identify a specific individual's video-watching behavior." *Solomon*, 2025 U.S. App. LEXIS 10573 at *20-27 (quoting *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 282-83, 290 (3d Cir. 2016)). "'[P]ersonally identifiable information' must have the same meaning without regard to its recipient's capabilities. Holding otherwise would make 'the lawfulness of a disclosure depend on the circumstances outside of a video service provider's control.'" *Solomon*, 2025 U.S. App. LEXIS 10573 at *27 (quoting

2

*Eichenberger v. ESPN, Inc.,* 876 F.3d 979, 986 (9th Cir. 2017)). "The classic example [of PII] will always be a video clerk leaking an individual customer's video rental history. Every step away from that 1988 paradigm will make it harder for a plaintiff to make out a successful claim." *In re Nickelodeon*, 827 F.3d at 290.

*Kueppers* chose to follow the minority view without providing statutory analysis as to why the minority view better adheres to the text of the VPPA. The standard for PII adopted in *Kueppers* and the First Circuit should be rejected because it contradicts the plain language and the intent of the VPPA. *See Eichenberger,* 876 F.3d at 985 (the ordinary person standard better informs defendants of their VPPA obligations since the VPPA "views disclosure from the perspective of the disclosing party," and does not look to "what the recipient of that information decides to do with it"). For example, under the minority view, defendants would be subject to VPPA liability for "knowingly" sharing a string of random letters and numbers—even if the defendant itself could not decipher it (i.e., even if the defendant lacked *knowledge* of what it was sharing)—so long as it could be deciphered by the most sophisticated data aggregator or a tech giant like Facebook. Thus, the minority interpretation goes against traditional canons of statutory interpretation; it violates the canon against surplusage and it can and will lead to absurd results. *See, e.g., United States v. Vallery,* 437 F.3d 626, 630 (7th Cir. 2006); *United States v. Feeney,* 100 F.4th 841 (7th Cir. 2024). *Kueppers*' lack of acknowledgement of the VPPA's limitation on "knowing" disclosures demonstrates that *Kueppers* is flawed and should not be followed.

Relatedly, *Kueppers* noticeably makes no reference to the Second Circuit's decision in *Solomon* despite being decided after *Solomon*. In fact, it appears the court was unaware of *Solomon* because the court noted that "[d]efendant cites no precedent that an encrypted cookie is somehow treated differently than any other transmission." *See* ECF No. 36-1, p. 10.

Regardless, *Kueppers* further explained how plaintiff's allegations met the ordinary person standard, but the same allegations are not present in this case. Unlike in *Kueppers,* Plaintiff does not allege that she had a publicly available Facebook account containing her name and other personally identifying information, nor does she allege that she was logged in to her Facebook or Pinterest accounts at the time that she purchased a prerecorded video from PESI's website. *See Kueppers* Compl., No. 0:24-cv-61983, ECF No. 23 (S.D. Fla. Oct. 23, 2024), ¶¶ 14, 24, 26, 111, 126. In this case, the FAC says nothing about Plaintiff's Facebook account being publicly available or that she was logged in. Moreover, PESI found no publicly available Facebook account using the name Dana Manza. There is a Facebook account associated with Plaintiff's business and Plaintiff indicated she has a Facebook account which does not use her real name (instead, it uses the name "Day Nuh"). Neither account can support a claim under the VPPA because Courts have repeatedly held a Facebook ID alone does not constitute PII unless it directly leads to a publicly available profile that contains identifying information. *See, e.g., Solomon,* 2025 U.S. App. LEXIS 10573, at *9-10, 28-29 (affirming dismissal of VPPA claim when "the Complaint [wa]s devoid of any details about how an ordinary person would use an FID to identify *Solomon*" and the plaintiff did not allege that her public Facebook profile page contained PII); *Smith v. Trinity Broad. of Texas, Inc.*, 2024 WL 4394557, at *3 (C.D. Cal. Sept. 27, 2024)) (dismissing VPPA claim when plaintiff did not "indicate that her profile [was] public and contain[ed] any identifying information"); *Martinez v. D2c, LLC*, 2024 U.S. Dist. LEXIS 178570, at *18-19 (S.D. Fla. Oct. 1, 2024) (a user must be logged into their Facebook account for the Pixel to disclose information); *see also In re Hulu Privacy Litig.*, 2014 U.S. Dist. LEXIS 83661, at *48 (N.D. Cal. June 16, 2014) (the inquiry of whether information was transmitted to Facebook "depends on a number of variables" including "whether the user remained logged into Facebook").

Plaintiff argues that *Solomon, Eichenberger,* and *In re Nickelodeon* should be "entirely" disregarded because they "based their decisions on *inter alia* post-enactment legislative history." ECF No. 36-.1, p. 3. Plaintiff is wrong.

While *Solomon* acknowledges the events surrounding the VPPA 2013 amendments, this was ultimately not the basis for its refusal to adopt the minority view. The Second Circuit expressly stated that it "decline[d] to adopt *Yershov*'s reasonable foreseeability standard because it focuses on what a *recipient* can or cannot reasonably do when given personal information," and "the VPPA was not intended to create liability [in 1988] where a third party is able to 'assemble otherwise anonymous pieces of data to unmask the identity of individual [users].'" *Solomon,* 2025 U.S. App. LEXIS 10573 at *26-27. *Solomon* also considered the natural reading of the text of the statute, the specific context in which the definition of PII is used in the statute, and the broader context of the VPPA—a law enacted in 1988 "when the Internet had not yet transformed the way that individuals and companies use consumer data"—in concluding that the "ordinary person" was the correct one. *Id.* at *21-26; *see also In re Nickelodeon,* 827 F.3d at 283-290 (considering the VPPA text, legislative history at enactment, and other privacy laws); *Eichenberger,* 876 F.3d at 984-986 (same). Plaintiff's arguments against *Solomon*'s application are what "should be disregarded entirely"—*not* the "ordinary person" standard. ECF No. 36, p. 3.

Additionally, Plaintiff asks this Court to disregard opinions from three separate Circuit Courts of Appeal on the basis they are "not binding," yet at the same time, asks this Court to follow an opinion from a Florida district court that is not available on Westlaw or LexisNexis, that is only available on Pacer, and adopts the minority view. *See* ECF No. 36-1; *Solomon,* 2025 U.S. App. LEXIS 10573, 2025 WL 1256641. Moreover, the minority view was developed more than nine years ago on April 29, 2016, before the Second, Third and Ninth Circuits' decisions in *Solomon,*

5

*Eichenberger,* and *In re Nickelodeon*. On the other hand, the Second, Third, and Ninth Circuits all had the opportunity to review and consider the minority view set forth in *Yershov,* and after careful evaluation, they separately chose *not* to adopt that standard for numerous reasons.

Plaintiff filed the Response Letter in an attempt to avoid the "ordinary person" standard, which the FAC fails to meet. The majority view of the Second, Third and Ninth Circuits should be followed because the "ordinary person" standard better adheres to the plain language and intent of the VPPA. Plaintiff's self-serving argument that *Solomon* and the majority's interpretation of the VPPA should be "disregarded entirely" must be rejected. Additionally, *Kueppers* is factually distinguishable, not binding, and unpublished. As a result, PESI's motion to dismiss the FAC should be granted.

Dated this 16th day of May, 2025.

*Electronically signed by Brett B. Larsen*
Brett B. Larsen
State Bar No.: 1064355
Daniel J. Hollis
State Bar No.: 1128071
Attorneys for Defendant PESI, Inc.
HINSHAW & CULBERTSON LLP
790 N. Water Street, Suite 1950
Milwaukee, WI 53202
414-276-6464
blarsen@hinshawlaw.com
dhollis@hinshawlaw.com

David M. Schultz
IL Bar No.: 6197596
HINSHAW & CULBERTSON LLP
151 N. Franklin Street, Suite 2500
Chicago, IL 60606
312-704-3000
dschultz@hinshawlaw.com