**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WISCONSIN**

| | |
|---|---|
| DANA MANZA, individually and on behalf of all others similarly situated, | |
|      Plaintiff, | Case No.: 3:24-cv-000690-AMB-JDP |
| v. | |
| PESI, INC., | |
|      Defendant. | |

**PLAINTIFF'S UNOPPOSED MOTION FOR**
**PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

Plaintiff Dana Manza respectfully submits this unopposed motion for preliminary approval of the class action Settlement Agreement entered into between Plaintiff and Defendant PESI, Inc. ("PESI" or "Defendant").[1]

## I.  INTRODUCTION

In this consumer class action, Plaintiff alleges that Defendant disclosed her and its other customers' personally identifiable information pertaining to their purchases of pre-recorded video materials ("PII") to third parties, without first obtaining their informed, written consent, in violation of the federal Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710 *et seq*.  After extensive litigation and contentious settlement negotiations, Plaintiff and her counsel ("Proposed Class Counsel") have negotiated a settlement that, if approved by the Court, will provide substantial relief to the members of the Settlement Class.

---

[1]  The Settlement Agreement is attached as Exhibit 1 to the Declaration of Frank S. Hedin ("Hedin Decl."), submitted together herewith. Unless otherwise defined herein, all capitalized terms have the same force, meaning and effect as ascribed in Section II ("Definitions") of the Settlement Agreement.

Pursuant to the Settlement Agreement, Defendant has agreed to establish an all-cash, non-reversionary Settlement Fund in the amount of $2,950,000, from which each Settlement Class Member who submits a Valid Claim will receive a *pro rata* cash payment, of an amount estimated to be between approximately $65 and $130.

The Settlement is the product of a robust pre-filing investigation and nearly a year of contentious litigation, during which Plaintiff's counsel briefed several complex legal issues, conducted extensive party and third-party discovery (including by issuing several third-party subpoenas), and retained a leading expert in the relevant field to prepare for class certification and trial. After closely analyzing the materials obtained in discovery, Plaintiff's counsel was well-positioned to intelligently explore resolution on behalf of the Settlement Class. Plaintiff's counsel ultimately negotiated the Settlement, which the parties memorialized in a binding term sheet, at the conclusion of a full-day mediation with the Hon. James F. Holderman (Ret.)—formerly Chief Judge of the Northern District of Illinois, now a mediator with JAMS in Chicago. After mediation and prior to execution of the formal Settlement Agreement, Defendant produced additional discovery to Plaintiff, which allowed her counsel to confirm the size and composition of the proposed Settlement Class.

The Settlement provides substantial monetary and non-monetary relief to the 307,555 members of the Settlement Class. As set forth in the Settlement Agreement, Defendant has agreed to pay $2,950,000 to establish a Settlement Fund, which will be used to pay all Court-approved Settlement Administration Expenses, any Attorneys' Fee Award to Class Counsel, any Service Award to Plaintiff, and all Cash Awards to Settlement Class Members. After Settlement Administration Expenses and any Attorneys' Fee and Service Awards are paid from the Settlement Fund, the remainder—the Net Settlement Fund—will be divided equally among all Settlement

Class Members who submit Valid Claims. Although the amount of the Cash Award that each claimant will receive depends on the total number of Valid Claims that are submitted, each Settlement Class Member who submits a Valid Claim is estimated to receive, assuming a typical 5-10% claims rate, a Cash Award of approximately $65 to $130—an estimate that, even on the low end, exceeds the amounts claimants have received in nearly all recent settlements of similar VPPA matters. Additionally, the proposed Settlement provides meaningful prospective relief to all Settlement Class Members, as Defendant has agreed, as a material term of the Settlement, to refrain in the future from disclosing information identifying persons who purchased its video products or services to third parties, absent such persons' consent.

The strength of the Settlement is underscored by the many significant risks of total non-recovery that continued litigation would have posed. Defendant asserted 10 affirmative defenses to Plaintiff's claims in its Answer, and also indicated that, had the case not settled, it would have opposed class certification on several potentially meritorious grounds—any one of which, if successful, would have left Settlement Class Members unable to recover any relief in this litigation, as discussed further below.

The monetary and non-monetary relief secured by the Settlement provides fair, reasonable, and adequate relief to the Settlement Class, and the Settlement's terms and notice procedures readily satisfy due process and the procedural requisites of Rule 23. Accordingly, Plaintiff respectfully requests that the Court grant preliminary approval of the Settlement, provisionally certify the Settlement Class pursuant to Rule 23(b)(3), appoint Plaintiff as Class Representative and her counsel as Class Counsel, approve the proposed Settlement Class Notice Program, and schedule a Final Approval Hearing.

## II.    BACKGROUND

### A.  The Video Privacy Protection Act

The VPPA prohibits a "video tape service provider" from "knowingly disclos[ing], to any person, personally identifiable information concerning any consumer of such provider[.]"  18 U.S.C. § 2710(b)(1). The statute defines a "video tape service provider" as "any person, engaged in the business . . . of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials," 18 U.S.C. § 2710(a)(4).  It defines a "consumer" as "a renter, purchaser, or subscriber of goods or services from a video tape service provider."  18 U.S.C. § 2710(a)(1). "'[P]ersonally identifiable information' includes information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider."  18 U.S.C. § 2710(a)(3).

Leading up to the VPPA's enactment in 1988, members of the United States Senate warned that "[e]very day Americans are forced to provide to businesses and others personal information without having any control over where that information goes."  S. Rep. No. 100-599 at 7–8 (1988) (statements of Sen. Simon).  Senators at the time were particularly troubled by disclosures of records that reveal consumers' purchases and rentals of videos and other audiovisual materials because such records offer "a window into our loves, likes, and dislikes," such that "the trail of information generated by every transaction that is now recorded and stored in sophisticated record-keeping systems is a new, more subtle and pervasive form of surveillance."  *Id*. at 8 (statement of Sen. Leahy).

Thus, in proposing the Video and Library Privacy Protection Act (which later became the VPPA), Senator Patrick J. Leahy (the senior Senator from Vermont from 1975 to 2023) sought to codify, as a matter of law, that "our right to privacy protects the choice of movies that we watch with our family in our own homes."  134 Cong. Rec. S5399 (May 10, 1988).  As Senator Leahy

explained at the time, the personal nature of such information, and the need to protect it from disclosure, is the raison d'être of the statute: "These activities are at the core of any definition of personhood. They reveal our likes and dislikes, our interests and our whims. They say a great deal about our dreams and ambitions, our fears and our hopes. They reflect our individuality, and they describe us as people." *Id.*

### B. History of the Litigation

On October 3, 2024, following an extensive pre-filing investigation,[2] Plaintiff initiated the Action by filing a Class Action Complaint against Defendant for violation of the VPPA on behalf of herself and others similarly situated. ECF No. 1.

On November 22, 2024, Defendant moved to dismiss the Complaint for failure to state a claim for relief pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF Nos. 11–12.

On December 6, 2024, Plaintiff filed the operative First Amended Class Action Complaint ("FAC"), again alleging a claim for violation of the VPPA against Defendant on behalf of herself and others similarly situated. ECF No. 13. The FAC alleges that Defendant violated the VPPA by disclosing its customers' PII to Meta Platforms, Inc. ("Meta"), among other third-parties, via computer code installed on its websites known as "pixels." *See* FAC ¶ 3.

---

[2]    In the months preceding the filing of this action, Plaintiff's counsel conferred extensively with Plaintiff and carefully investigated the facts underlying her experience, researched the applicable law, and developed the claim ultimately pled in the Complaint. *See* Hedin Decl. ¶ 4. Plaintiff's counsel investigated, *inter alia*, issues concerning Plaintiff's interactions on Defendant's website, the manner, means, and extent by which Defendant transmitted or otherwise disclosed its consumers' PII online to third parties, and any attempts by Defendant during the checkout processes on its websites to obtain its customers' informed, written consent to the disclosure of their PII. *See id.* This process involved reviewing numerous documents and electronic data provided by Plaintiff and accessible on Defendant's website, including examining the source code of Defendant's websites, transmissions of data made on those websites when certain actions are taken by visitors, and the recipients of such transmissions. *Id.*

On December 16, 2024, Defendant filed a motion to dismiss the FAC for failure to state a claim for relief pursuant to Rule 12(b)(6), and a motion to stay discovery pending resolution of the motion to dismiss. ECF Nos. 15–18. Plaintiff filed a response in opposition to the motion to dismiss (ECF No. 26) and Defendant filed a reply (ECF No. 30). Several notices of supplemental authority were filed by the parties in support of and opposition to the motion to dismiss. ECF Nos. 31–32, 35–37.

On May 20, 2025, the Court issued a written order denying Defendant's motion to dismiss in its entirety. ECF No. 38.

On June 3, 2025, Defendant filed an Answer to the FAC, asserting the following affirmative defenses: (1) lack of standing; (2) consent; (3) waiver; (4) lack of standing business Plaintiff's account was registered to her business; (5) individual device settings prevented disclosures alleged; (6) Defendant's configuration did not disclose PII; (7) Plaintiff's individual information was not disclosed to NextMark; (8) Defendant is not a video tape service provider under the VPPA; (9) Plaintiff is not a consumer under the VPPA; and (10) the information disclosed is not PII within the meaning of the VPPA under an "ordinary person" standard. *See* ECF No. 39.

On December 13, 2024, the Parties met and conferred pursuant to Federal Rule of Civil Procedure 26(f) and, on December 23, 2024, filed a joint scheduling and case management plan. *See* ECF No. 21. The Parties also exchanged initial disclosures pursuant to Federal Rule of Civil Procedure 26(a).

Immediately following the parties' Rule 26(f) conference, Plaintiff issued requests for production of documents and interrogatories to Defendant, seeking information and documents concerning every aspect of the merits of Plaintiff's claims and the certifiability of the Action as a

class action pursuant to Rule 23.  *See* Hedin Decl. ¶ 5.  Plaintiff's counsel engaged in extensive meet and confer efforts with Defendant's counsel, over the course of several weeks, concerning Defendant's responses and objections to Plaintiff's discovery requests, and negotiated with Defendant's counsel an Agreed Confidentiality Order to submit to the Court (ECF No. 33-1).

On December 24, 2024, Plaintiff served third-party subpoenas for documents on Meta, Pinterest, Inc., and Google LLC, seeking information and documents concerning the merits of Plaintiff's claims and the certifiability of the Action as a class action pursuant to Rule 23.  *See id.* ¶ 6.  Plaintiff's counsel subsequently engaged in extensive meet and confer efforts with counsel for these third parties regarding their responses and objections to the subpoenas.  *See id.*

On January 10, 2025, Defendant served requests for production of documents and interrogatories on Plaintiff, seeking documents and information relating to both merits and class certification, to which Plaintiff and her counsel prepared comprehensive responses and objections. *See id.* ¶ 7.

While the Parties were in the midst of discovery, Plaintiff's counsel retained one of the country's foremost experts on web-based consumer tracking technologies, Anya Verkhovskaya, to serve as an expert witness in this matter on Plaintiff's behalf, and to prepare an expert report regarding various issues pertaining to class certification. *See id.* ¶ 8. Ms. Verkhovskaya subsequently reviewed the materials produced by Defendant and by the relevant third parties in discovery and prepared a comprehensive 34-page expert report, which Plaintiff intended to use in support of a motion for class certification in the Action had the Settlement not been reached. *See id.*

The considerable time and resources Plaintiff and her counsel spent building this case, during both their pre-filing investigation and formal discovery, afforded them the opportunity, in

advance of ever discussing settlement with Defendant, to meaningfully assess the strengths and weaknesses of Plaintiff's claim and the likelihood of prevailing on a contested motion for class certification. *See* Hedin Decl. ¶ 9.

### C. Settlement Discussions, Mediation and Confirmatory Discovery

On June 19, 2025, the Parties agreed to attend mediation before Judge Holderman on August 14, 2025 (*id.* ¶ 10) and, on July 1, 2024, requested that the Court stay the Action pending the upcoming mediation (ECF No. 40), which the Court did in part. *See* ECF No. 41.

In advance of the mediation, Plaintiff requested, and Defendant provided, additional documents pertaining to, *inter alia*, the size and scope of the Settlement Class and insurance-related issues. Hedin Decl. ¶ 11. Counsel for the Parties then prepared and exchanged comprehensive mediation statements addressing the various legal and factual issues pertaining to the merits of Plaintiff's claim and issues of class certification. *Id.* ¶ 12.

On August 14, 2025, the Parties participated in a full day of mediation before Judge Holderman. *Id.* ¶ 13. After over 9 hours of contentious, arm's-length negotiations overseen by Judge Holderman, the Parties reached an agreement on all material terms of the proposed Settlement and executed a binding term sheet memorializing those terms, subject to Defendant providing Plaintiff with certain confirmatory discovery to confirm certain details concerning the size and composition of the Settlement Class. *See id.* ¶ 14.

On August 27, 2025, Defendant produced the agreed-upon confirmatory discovery to Plaintiff, which enabled Plaintiff's counsel to confirm that 307,555 persons had purchased prerecorded video material or services from one of Defendant's websites during the relevant time period and were thus members of the Settlement Class. *See* Hedin Decl. ¶ 15.

Prior to executing the Settlement Agreement, the Parties negotiated the terms of the Settlement Class Notice Program and solicited estimates from three reputable class action settlement claims administration companies to implement its terms, which will include, *inter alia*, overseeing the Settlement Fund, developing and maintaining the Settlement Website, receiving and processing Claim Forms submitted by Settlement Class Members, and disbursing payments to claimants. *See id.* ¶ 16. At the conclusion of this process, the parties selected, subject to Court approval, Kroll Settlement Administration LLC ("Kroll") to serve as Settlement Administrator based on its cost estimate of $87,616, and agreed-upon not-to-exceed figure of $105,200. *See id.*

On October 24, 2025, the Parties and their counsel executed the formal Settlement Agreement presently before the Court for approval. Hedin Decl. ¶ 17. As described above, the Settlement is the product of extensive litigation, comprehensive discovery, lengthy and arm's length negotiations overseen by an experienced and well-respected mediator, confirmatory discovery, and a competitive bidding process to select a Settlement Administrator. *See id.* ¶ 18.

## III.    KEY TERMS OF THE SETTLEMENT

### A.  Class Definition

The "Settlement Class" is defined as: "All persons who made purchases of video products or services from Defendant's www.pesi.com and/or psychotherapynetworker.org website between October 3, 2022 and October 3, 2024." Settlement Agreement ¶ 46.[3]

---

[3]    Excluded from the Settlement Class are PESI, Inc., the Released Persons and their employees, officers, directors, agents, and representatives, and their immediate family members; Class Counsel; the Court, the Court's immediate family members, and Court staff; and the mediator, the Hon. James F. Holderman.

### B. Monetary Relief

Defendant has agreed to establish a $2,950,000 non-reversionary Settlement Fund from which all Settlement Class Members who submit Valid Claims will receive a *pro rata* cash payment—expected to be between approximately $65 and $130 after payment of Settlement Administration Expenses and any Court-approved Attorneys' Fee Award and Service Award. *See id.* ¶ 50.

### C. Non-Monetary Relief

Defendant has agreed to in the future refrain from disclosing information identifying persons who purchased its video products or services to third parties, absent such persons' consent, as non-monetary prospective relief for the benefit of all Settlement Class Members. *See id.* ¶ 65.

### D. Release

When the Settlement is finally approved and a Final Approval Order and Judgment entered by the Court, Defendant and the Released Persons will be released and forever discharged, in exchange for the monetary and prospective relief described above, from all claims arising out of or asserted in this Action (as set forth in Section IX of the Settlement Agreement)—except that no claims by Settlement Class Members who timely and properly request exclusion will be released, as set forth in the Settlement Agreement. *See id.* ¶ 86.

### E. Settlement Class Notice Program

The Settlement Class Notice Program requires the Settlement Administrator to directly provide the Class Notice to all Settlement Class Members by e-mail, to the addresses available for such persons in Defendant's records, and to make a copy available on the Settlement Website. *See id.* ¶¶ 77-80 & *id.*, Exhs. B–C (Class Notices). If any e-mail is returned as undeliverable, the

Settlement Administrator shall promptly send the Class Notice to the Class Member via U.S. postal mail. *See id.* ¶ 78.

To receive a Cash Payment, Settlement Class Members must submit a Claim Form on the Settlement Website by the Claims Deadline. *Id.* ¶ 81 & *id.*, Ex. A (Claim Form). Cash Awards will be sent to Settlement Class Members by the Settlement Administrator, either in paper check or electronic form (depending on the Settlement Class Member's election), within 30 days after the Effective Date. *See id.* ¶ 83.

### F.  Service and Attorneys' Fee Awards

The Settlement Agreement provides that Plaintiff may request a Service Award of $5,000, to be paid from the Settlement Fund, in recognition of her time, effort, and initiative in serving as representative on behalf of the Settlement Class, assisting her counsel during the litigation, and ultimately resolving the case on the terms set forth in the Settlement Agreement. *Id.* ¶ 67. The Settlement Agreement also provides that Plaintiff's counsel may request an Attorneys' Fee Award of 30% of the Settlement Fund. *Id.* ¶ 66. The payment of any Service Award or Attorneys' Fee Award is subject to approval by the Court. *Id.* ¶ 68.

## IV.    THE CLASS ACTION SETTLEMENT APPROVAL PROCESS

As the Seventh Circuit has recognized, federal courts strongly favor and encourage settlements, particularly in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain.  The Seventh Circuit further explained:

> It is axiomatic that the federal courts look with great favor upon the voluntary resolution of litigation through settlement. In the class action context in particular, there is an overriding public interest in favor of settlement. Settlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources.

*Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee*, 616 F.2d 305, 312-13 (7th Cir. 1980)

(citations and quotations omitted), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873,

875 (7th Cir. 1998); *see also Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts

naturally favor the settlement of class action litigation."); 4 *Newberg on Class Actions* § 11.41 (4th

ed. 2002) (collecting cases).

The approval process for a proposed class action settlement has three steps:

> (1) Preliminary approval of the proposed settlement at an informal
>     hearing;
>
> (2) Dissemination of mailed and/or published notice of the
>     settlement to all affected class members; and
>
> (3) A "formal fairness hearing" or final settlement approval hearing,
>     at which class members may be heard regarding the settlement,
>     and at which evidence and argument concerning the fairness,
>     adequacy, and reasonableness of the settlement may be
>     presented.

*Manual for Complex Litigation* (Fourth) (2004) § 21.63.   This procedure safeguards class

members' due process rights and enables the Court to fulfill its role as the guardian of class

interests. 4 *Newberg* § 11.25.  Plaintiff is presently at the first step of the process.

## V.    ARGUMENT

The proposed Settlement, negotiated at arm's length by competent, experienced counsel,

provides Settlement Class Members with substantial monetary and non-monetary relief, in a

prompt and efficient manner.  The Court should (A) preliminarily approve the Settlement, (B)

provisionally certify the Settlement Class, (C) appoint Plaintiff as class representative and her

counsel as Class Counsel, (D) approve the proposed Settlement Class Notice Program, and (E)

schedule the Final Approval Hearing.

### A.  The Settlement Should Be Preliminarily Approved

Rule 23(e) provides that a court may approve a proposed class settlement "on a finding that it is fair, reasonable, and adequate."  *See* Fed. R. Civ. P. 23(e)(2); *see also Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 652 (7th Cir. 2006); *Armstrong*, 616 F.2d at 314.  At the preliminary approval stage, the district court must assess whether the proposed settlement falls "within the range of possible approval," in order to "ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing." *Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982).

While "[f]ederal courts naturally favor the settlement of class action litigation," *In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 345 (N.D. Ill. 2010) (quoting *Isby*, 75 F.3d at 1196), district courts must nonetheless consider the following four factors to determine whether a proposed settlement is fair, reasonable and adequate: (1) the strength of the plaintiff's case compared to the amount of the settlement offer, (2) the length, complexity, and expense of further litigation, (3) the opinion of competent counsel, and (4) the stage of the proceedings and amount of discovery completed.[4]  *See Synfuel*, 463 F.3d at 653 (citing *Isby*, 75 F.3d at 1199). "Although this standard and the factors used to measure it are ultimately questions for the fairness hearing that comes after a court finds that a proposed settlement is within approval range, a more summary version of the same inquiry takes place at the preliminary phase," *Kessler v. Am. Resorts International's Holiday Network, Ltd.*, No. 05 C 5944, 2007 WL 4105204, at *5 (N.D. Ill. Nov. 14, 2007) (citing *Armstrong*, 616 F.2d at 314), under which the facts are viewed "in the light most favorable to the settlement," *Isby*, 75 F.3d at 1199.

---

[4]    An additional factor considered at the final fairness hearing—the amount of opposition to the settlement—is not assessed at all at the preliminary approval stage, because notice of the proposed settlement has not yet been disseminated.  *See In re AT&T*, 270 F.R.D. at 349.

Each of these four factors weighs in favor of finding the proposed Settlement fair, reasonable and adequate, warranting its preliminary approval.

### 1. The Settlement Provides Substantial Relief to the Settlement Class, Particularly Given the Risks Posed by Continued Litigation

"The most important factor relevant to the fairness of a class action settlement is the first one listed: the strength of the plaintiff's case on the merits balanced against the amount offered in the settlement." *Synfuel*, 463 F.3d at 653 (citation modified). "Because the essence of settlement is compromise, courts should not reject a settlement solely because it does not provide a complete victory to the plaintiffs." *In re AT&T*, 270 F.R.D. at 347 (citations omitted).

The amount offered in the Settlement—$2.95 million—is substantial. Should the Settlement be approved, it will recover a gross sum of approximately $9.59 per Settlement Class Member, and each Settlement Class Member who submits a Valid Claim is anticipated to receive (assuming a typical 5-10% claims rate) a Cash Award of approximately $65 to $130. Under both metrics, the Settlement outperforms nearly all recently approved class settlements in similar VPPA matters, as reflected in the table below:

| Case | Class # | Settlement $ | Gross $ / Person | Claim % | $ / Claimant |
|---|---|---|---|---|---|
| *Feldman v. Star Trib. Media Co. LLC*, No. 22-cv-01731 (D. Minn.) | 345,197 | $2,900,000 | $8.40 | 1.67% | ~$330 |
| *Braun v. Philadelphia Inquirer*, No. 22-cv-04185 (E.D. Pa.) | 180,000 | $1,125,000 | $6.25 | 13.2% | ~$27.30 |
| *Serra v. New England Patriots LLC*, No. 24-cv-40022 (D. Mass.) | 105,000 | $2,160,000 | $20.57 | 9.9% | ~$120 |
| *Stark v. Patreon, Inc.*, No 22-cv-03131 (N.D. Cal.) | 1.6 million | $7,250,000 | $4.53 | 6.1% | ~$35 |
| *Vela, et al. v. AMC Networks, Inc.*, No. 1:23-cv-02524 (S.D.N.Y.) | 7.3 million | $8,300,000 | $1.37 | 7.15% | ~$10 |

And while Plaintiff continues to believe that her claims against Defendant have merit, there are a number of legal uncertainties associated with continued litigation that pose a substantial risk of non-recovery to the Settlement Class. *See e.g. Mirfasihi v. Fleet Mortg. Corp.*, 450 F.3d 745,

750 (7th Cir. 2006) (recognizing that district courts should properly consider how "legal uncertainty" may cut "against the value of [a] plaintiff's claims" but is also instructive in measuring "the value of [a defendant's] defenses.").

First, the parties disagree whether Meta's Facebook ID (and the other numerical identifiers associated with other third-party tracking technologies) constitute PII under the VPPA.  Plaintiff believes that the FAC alleges sufficient facts concerning the Meta Pixel technology and the other relevant tracking technologies to show that the identifiers they receive constitute PII within the meaning of the statute, and was prepared to submit a report from Ms. Verkhovskaya to help demonstrate that.  However, many courts have rejected similar such allegations and evidentiary showings in similar cases, and there was a substantial risk, had the litigation proceeded, that Plaintiff would be unable to demonstrate that the data transmitted to Meta and the other third parties by Defendant's websites qualified as PII protected by the statute.  *See e.g., In re Hulu Priv. Litig.*, 86 F. Supp. 3d 1090, 1096 (N.D. Cal. 2015); *Solomon v. Flipps Media, Inc.*, 136 F.4th 41, 55 (2d Cir. 2025).

Second, Plaintiff was not guaranteed to prevail on a contested motion for class certification had the litigation proceeded.  Defendant maintains, *inter alia*, that individualized issues predominate over issues common to the class in this case, including on the key issues of consent and whether the settings of the device used by a particular class member to access and purchase videos from Defendant's websites would have resulted in the transmission of PII to third parties.  Plaintiff believes that a class was nonetheless certifiable on a contested basis but acknowledges that substantial risk existed on the issue.  *See, e.g., Martinez v. D2C, LLC*, No. 23-21394-CIV, 2024 WL 4367406, at *7 (S.D. Fla. Oct. 1, 2024); *G.M. Sign, Inc. v. Brink's Mfg. Co.*, No. 09 C

5528, 2011 WL 248511, at *8 (N.D. Ill. Jan. 25, 2011) (denying certification where defendant offered evidence that consent could not be shown with common proof).

Third, even if Plaintiff were to win class certification, there would remain a risk of losing a jury trial. And even assuming Plaintiff prevailed at trial, any judgment could be reversed on appeal and, even if it were not, any class-wide damages award "would most surely bankrupt the prospective judgment debtor." *In re Capital One*, 80 F. Supp. 3d at 790. A pyrrhic victory for the Settlement Class at trial would be in one's interest.

The Settlement avoids all these risks by recovering substantial relief for Settlement Class Members in a timely manner. Accordingly, the first and most important factor weighs in favor of finding the Settlement fair, reasonable and adequate. *See In re TikTok, Inc., Consumer Priv. Litig.*, 565 F. Supp. 3d 1076, 1089 (N.D. Ill. 2021) (finding the VPPA settlement to be fair and describing it as "stellar" because of the risks posed by continued litigation and the monetary relief provided to class members, when most "[s]ettlements under the VPPA typically achieve *cy pres*-only relief worth a few dollars or less per class member."); *Schulte v. Fifth Third Bank*, No. 09-CV-6655, 2010 WL 8816289, at *3 (N.D. Ill. Sept. 10, 2010) (where a "settlement appears relatively generous when compared to settlements in analogous circumstances[, it] is sufficient to satisfy the standard for *preliminary* approval") (emphasis in original).

### 2. Continued Litigation Would Be Complex, Costly and Lengthy

Preliminary approval is also favored where "[s]ettlement allows the class to avoid the inherent risk, complexity, time, and cost associated with continued litigation." *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011).

If this litigation were to continue, it would be lengthy, very expensive, and involve extensive motion practice, including motion to compel discovery, a motion for class certification

(and possibly a motion for decertification), motions for summary judgment and various pretrial motions, as well as the retention of additional experts, preparation and finalization of expert reports, and expert depositions. *See Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977) ("[C]lass action suits have a well-deserved reputation as being most complex."). And even if the Settlement Class recovered a judgment at trial in excess of the $2.95 million provided by the Settlement, post-trial motions and the appellate process would deprive them of any recovery for years, and possibly forever in the event of a reversal.

Rather than embarking on years of protracted and uncertain litigation, Plaintiff and her counsel negotiated a Settlement that provides immediate, certain, and *meaningful* relief to all Settlement Class Members. *See In re TikTok*, 565 F. Supp. 3d at 1089; *Wong*, 773 F.3d at 864; *Schulte*, 805 F. Supp. 2d at 586. Accordingly, the second factor weighs in favor of finding the Settlement fair, reasonable, and adequate. *See Borcea v. Carnival Corp.*, 238 F.R.D. 664, 674 (S.D. Fla. 2006) (noting that "[i]t has been held proper to take the bird in the hand instead of a prospective flock in the bush").

### 3. Proposed Class Counsel is Competent, Well-Informed and Experienced, and Strongly Endorses the Settlement

The third factor examines the opinion of competent counsel as to whether a proposed settlement is fair, reasonable, and adequate. *See Isby*, 75 F.3d at 1200. In assessing the qualifications of counsel under this factor, a court may rely upon affidavits submitted by class counsel as well as its own observations of class counsel during the litigation. *Id.*

Plaintiff's counsel and proposed Class Counsel, Hedin LLP, has significant experience litigating consumer class actions and has been appointed and served as class counsel in numerous class actions in the data-privacy realm. *See* Hedin Decl. ¶ 20. Plaintiff's counsel strongly endorses this Settlement. *See* Hedin Decl. ¶ 19.

Accordingly, the third factor weighs in favor of finding the Settlement fair, reasonable, and adequate. *See, e.g., McKinnie v. JP Morgan Chase Bank, N.A.,* 678 F. Supp. 2d 806, 812 (E.D. Wis. 2009) (that "counsel endorses the settlement and it was achieved after arms-length negotiations facilitated by a mediator . . . suggest that the settlement is fair and merits final approval."); *see also In re Mexico Money Transfer Litig.,* 164 F. Supp. 2d 1002, 1020 (N.D. Ill. 2000) (placing "significant weight on the unanimously strong endorsement of these settlements" by "well-respected attorneys").

### 4. The Settlement Was Reached After Significant Litigation, Wide-Ranging Discovery and Arm's Length Negotiations

The last factor concerns the stage of the proceedings and the amount of discovery completed at the time the settlement is reached. *See Synfuel,* 463 F.3d at 653. This factor is significant because "it indicates how fully the district court and counsel are able to evaluate the merits of plaintiffs' claims." *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, No. 07 C 2898, 2011 WL 3290302 (N.D. Ill. July 26, 2011) (quoting *Armstrong,* 616 F.2d at 325) (internal quotations omitted).

The proposed Settlement was reached after nearly a year of hard-fought litigation and was informed by counsel's thorough review and analysis of a significant amount of documents and ESI obtained in counsel's pre-filing investigation and produced by Defendant and several third parties during the litigation. *See* Hedin Decl. ¶ 4. Plaintiff's counsel additionally retained an expert to review and analyze the complex written and electronic discovery produced by Defendant, Meta, Pinterest, and Google, and the retained expert prepared a written report regarding, *inter alia*, the feasibility of identifying Settlement Class Members and the nature of the technology used by Defendant to disclose PII. *See id.* ¶ 8. Armed with this information, Plaintiff and her counsel had "a clear view of the strengths and weaknesses" of the case and were in a strong position to negotiate

a fair, reasonable, and adequate settlement on behalf of the Settlement Class at mediation.  *In re TikTok*, 565 F. Supp. 3d at 1089.

Mediation was also hard-fought.  The Parties reached an agreement in principle only after nearly nine full hours of extensive negotiations.  The formal Settlement Agreement was executed after Class Counsel confirmed the size of the Settlement Class through additional discovery and conducted a competitive bidding process to select a Settlement Administrator.  Hedin Decl. ¶ 14–16.  Because the Settlement is the product of "arm's length negotiations between experienced counsel after significant discovery ha[s] occurred, the Court may presume the settlement to be fair, adequate, and reasonable."  *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006) (citations omitted); H. Newberg, A. Conte, Newberg on Class Actions § 11.41 (4th ed. 2002) (presumption of fairness exists where a proposed class settlement "is the product of arm's length negotiations, sufficient discovery has been taken to allow the parties and the court to act intelligently, and counsel involved are competent and experienced.").[5]

Accordingly, the final factor weighs in favor of finding the Settlement fair, reasonable, and adequate.

## B.  The Settlement Class Should Be Provisionally Certified for Settlement Purposes

The Court should next certify the proposed Settlement Class—defined as "[a]ll persons who made purchases of video products or services from Defendant's pesi.com website and/or www.psychotherapynetworker.org website between October 3, 2022 and October 3, 2024"—

---

[5]    *See also, e.g.*, *Adams v. Inter-Con Sec. Sys., Inc.*, No. 06-cv-5428, 2007 WL 3225466, at *3 (N.D. Cal. Oct. 30, 2007) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."); *In re Indep. Energy Holdings PLC*, No. 00-cv-6689, 2003 WL 22244676, at *4 (S.D.N.Y. Sept. 29, 2003) ("the fact that the settlement was reached after exhaustive arm's-length negotiations, with the assistance of a private mediator experienced in complex litigation, is further proof that it is fair and reasonable").

pursuant to Rule 23(a) and Rule 23(b)(3).  Provisional certification will allow for the dissemination of the Class Notice and thus inform Settlement Class Members of their rights, which include the right to submit a Claim Form and recover a Cash Award if the Settlement is finally approved, to be heard in objection to the Settlement's fairness at the Final Approval Hearing, and to opt out of the Settlement.  The proposed Settlement Class readily satisfies the requirements of both Rule 23(a) and Rule 23(b)(3).

### 1.  The Requirements of Rule 23(a) Are Satisfied

Rule 23(a) requires that (a) the proposed class is so numerous that joinder of all individual class members is impracticable (numerosity); (b) there are questions of law or fact common to the proposed settlement class (commonality); (c) plaintiff's claims are typical of those of the class (typicality), and (d) the plaintiff and class counsel will adequately protect the interests of the class (adequacy).  Fed. R. Civ. P. 23(a)(1)–(4); *In re AT&T*, 270 F.R.D. at 340–44.  The Settlement Class satisfies each of these requirements.

### a.  Numerosity

The first requirement of Rule 23(a) is that "the class is so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  The Settlement Class consists of 307,555 individuals dispersed throughout the United States.  Hedin Decl. ¶ 15.  Joinder of all Settlement Class Members is thus clearly impractical.  *See Mulvania v. Sheriff of Rock Island Cnty.,* 850 F.3d 849, 859 (7th Cir. 2017) ("While there is no magic number that applies to every case, a forty–member class is often regarded as sufficient to meet the numerosity requirement").

Accordingly, the numerosity requirement of Rule 23(a) is satisfied.

### b.  Commonality

The second requirement is that "there are questions of law or fact common to the class." Rule 23(a)(2).  The commonality requirement is satisfied where a plaintiff asserts claims that "depend upon a common contention" that is "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

Many questions of law and fact are common to the Settlement Class in this case, including whether (1) Defendant is a "video tape service provider" within the meaning of the VPPA; (2) whether Defendant disclosed Settlement Class Members' PII to a third party during the class period; (3) whether Defendant "knowingly" made those disclosures; (4) whether Defendant's conduct violated the VPPA; and (5) the amount of damages to which the Settlement Class is entitled to recover.  *See Mullins v. Direct Digital, LLC*, 795 F.3d 654, 673 (7th Cir. 2015) (reiterating that as long as there "is a common contention that is capable of classwide resolution . . . [of] an issue that is central to the validity of each one of the claims in one stroke. . . Nothing more is required to satisfy Rule 23(a)(2).") (citation modified).

Accordingly, the commonality requirement of Rule 23(a) is satisfied.

### c.  Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  The typicality assessment "primarily directs the district court to focus on whether the named representatives' claims have the same essential characteristics as the claims of the class at large."  *See De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983).  "The typicality requirement is not highly

demanding." *Hazelwood v. Bruck L. Offs. SC*, 244 F.R.D. 523, 525 (E.D. Wis. 2007) (citation modified); *Reed v. Advoc. Health Care*, 268 F.R.D. 573, 579 (N.D. Ill. 2009).

Plaintiff's claims are typical of the claims of Settlement Class Members because Plaintiff's claims arise out of the same "event, practice or course of conduct that gives rise to the claim[s] of the other class members" and "are based on the same legal theory." *See De La Fuente,* 713 F.2d at 232 (finding typicality element satisfied where "[t]he major claims of the plaintiffs in the certified class are directed at the recruiting and disclosure practices" that "affected in the same way anyone who came to work for . . . the recruitment channels which are the subject of this case. . . [and] the practices complained of remained essentially unchanged throughout the years in question"). Plaintiff and each Settlement Class Member had their PII disclosed by Defendant, in the same manner, while purchasing prerecorded video materials or services from Defendant on the same websites, and they each seek the same liquidated sum of damages, as provided by the VPPA. *See In re TikTok*, 565 F. Supp. 3d at 1085 ("Similarly, because each class member is a user of the App who confronted the same alleged misconduct in much the same manner, the claims of the proposed class representatives typify those of the absent class members.").

Accordingly, the typicality requirement of Rule 23(a) is satisfied.

### d. Adequacy of Representation

The fourth and final Rule 23(a) requirement is "adequacy of representation," Fed. R. Civ. P. 23(a)(4), which has two components: (1) "the representatives must not possess interests which are antagonistic to the interests of the class;" and (2) "the representatives' counsel must be qualified, experienced and generally able to conduct the proposed litigation." *CV Reit, Inc. v. Levy*, 144 F.R.D. 690, 698 (S.D. Fla. 1992) (citation omitted).

The first component is satisfied because Plaintiff's interests in this litigation are aligned with, and not antagonistic to, those of the Settlement Class. *See G.M. Sign,* 2009 U.S. Dist. LEXIS 73869, at \*15-16; *Zyburo*, 44 F. Supp. 3d at 503 (holding that "the adequacy requirement is satisfied with respect to the lead plaintiff in this kind of consumer case unless plaintiff's interests are antagonistic to the interest of other members of the class") (quotation omitted). Plaintiff challenges the same alleged unlawful conduct and seeks the same monetary relief for herself and all Settlement Class Members. Plaintiff retained counsel, assisted with the litigation, and vigorously prosecuted the case on behalf of the Settlement Class.

The second component of Rule 23(a)(4) is satisfied because Plaintiff hired qualified and competent counsel who is experienced in class actions generally and consumer data-privacy class action litigation in particular. Hedin Decl. ¶¶ 21–22. Plaintiff's counsel has successfully investigated, commenced, and prosecuted many complex cases and class actions, including the instant action. *Id.*

Accordingly, the adequacy of representation requirement of Rule 23(a) is satisfied.

### 2. The Requirements of Rule 23(b)(3) Are Satisfied

Finally, because Plaintiff seeks provisional certification under Rule 23(b)(3), Plaintiff must additionally show (a) that common questions of law or fact predominate over questions affecting only individual class members (predominance); and (b) that a class action is superior to other available methods of resolving the controversy (superiority). Fed. R. Civ. P. 23(b)(3); *In re AT&T*, 270 F.R.D. at 344-45.[6] Both requirements are easily satisfied by the proposed Settlement Class.

---

[6] Because the Court is called upon to assess the requirements of Rule 23 in the context of a settlement, the Court need not consider whether any manageability problems would arise at trial if the Settlement Class is certified. *Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial.").

### a. Common Questions Predominate

The predominance requirement of Rule 23(b)(3) is satisfied because common questions comprise a substantial aspect of the case and can be resolved for all Settlement Class Members in a single adjudication. *See Roach v. T.L Cannon Corp.*, 773 F.3d 401, 405 (2d Cir. 2015) (predominance is satisfied "if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof").

This entire case is focused on Defendant's alleged common practice of using the Meta Pixel technology and other tracking technologies, which it allegedly installed on its websites, to transmit the PII of its customers to the same third parties. *See, e.g., Messner,* 669 F.3d at 819 ("The ability to use such common evidence and common methodology to prove a class's claims is sufficient to support a finding of predominance on the issue of antitrust impact for certification under Rule 23(b)(3)."); *In re TikTok*, 565 F. Supp. 3d at 1086 (predominance is met where common questions "may be resolved through generalized proof," such as "by examining [d]efendants' uniform data collection and privacy practices against their legal obligations") (citation modified).

Thus, the central question in this case—whether Defendant disclosed its customers' PII pertaining to their purchases of videos on its websites, without their "informed written consent," to Meta and other third parties—is capable of resolution on a class-wide basis by looking to Defendant's records and Meta's and the other third parties' technologies. Because Defendant allegedly used the same Meta Pixel technology to allegedly disclose all its customers' PII to Meta, these questions are capable of resolution on a class-wide basis with common proof. Moreover, whether Defendant is a "video tape service provider," whether the information allegedly disclosed by it constitutes PII as defined by the VPPA, and whether it made such alleged disclosures

"knowingly" are all questions capable of resolution in one stroke for the entire Settlement Class—and, if answered in the affirmative, would subject Defendant to liability for the same sum of statutory damages to the entire Settlement Class.

Accordingly, the predominance requirement is satisfied for purposes of preliminary approval.

### b.  Class Treatment of Plaintiff's Claims is Superior

Rule 23(b)(3) also requires that a class action be superior to other available methods for adjudicating the controversy. "The superiority requirement is often met where class members' claims would be too small to justify individual suits, and a class action would save litigation costs by permitting the parties to assert their claims and defenses in a single proceeding." *Kaye v. Amicus Mediation & Arbitration Group, Inc*., 300 F.R.D. 67, 81 (D. Conn. 2014); *see also Amchem,* 521 U.S. at 617 (noting that "the Advisory Committee had dominantly in mind vindication of the rights of groups of people who individually would be without effective strength to bring their opponents into court at all").

A class action is the superior method for the fair and efficient adjudication of these claims. Plaintiff's claim is shared by 307,555 other persons, each of whom had their PII disclosed by Defendant to a third party, absent their consent.  The resolution of all claims of all Settlement Class Members in a single proceeding promotes judicial efficiency and avoids inconsistent decisions. *See Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 155 (1982) (noting "the class-action device saves the resources of both the courts and the parties by permitting an issue potentially affecting every class member to be litigated in an economical fashion under Rule 23").  Further, the statutory damages available under the VPPA ($2,500.00 per violation) are small in comparison to the costs

of litigation. As a result, it is unlikely any Settlement Class Member would be willing or able to pursue relief on an individual basis absent the Settlement.

Accordingly, the superiority requirement is satisfied for purposes of preliminary approval. The Court should provisionally certify the Settlement Class.

### C.  Plaintiff's Counsel Should Be Appointed Class Counsel

Upon certifying a class, Rule 23 requires that a court appoint class counsel who will "fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B), (2), (4); *Harris v. Circuit City Stores, Inc.*, No. 07-cv-2512, 2008 WL 400862, at *11 (N.D. Ill. Feb. 7, 2008) (citation omitted). In appointing class counsel, the court must consider (1) the work counsel has done in identifying or investigating potential claims; (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the case; (3) counsel's knowledge of the applicable law, and (4) the resources class counsel has committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i)–(iv); *Reliable Money Order, Inc. v. McKnight Sales Co.*, 704 F.3d 489, 498 n.7 (7th Cir. 2013).

In this case, proposed Class Counsel readily satisfies the criteria of Rule 23(g). First, Hedin LLP has devoted substantial time, effort and resources to this litigation, beginning with its extensive pre-filing investigation, continuing through almost a year of vigorous litigation, formal discovery between the parties and non-parties, expert consultation and retention, and ending with hard-fought settlement negotiations, a lengthy mediation, and confirmatory discovery. *See generally* Hedin Decl. Second, Hedin LLP has extensive experience in complex class action litigation, in district courts of the Seventh Circuit and elsewhere (*see id.* ¶¶ 21–22), and has previously served as Court-appointed class counsel in numerous similar data-privacy class actions, *see id.* ¶ 22.

Accordingly, the Court should appoint Plaintiff's counsel, Hedin LLP, as Class Counsel.

**D. The Court Should Approve the Class Settlement Notice Program, and Direct the Settlement Administrator to Disseminate the Class Notice to the Settlement Class**

"Rule 23(e)(1)(B) requires the court to 'direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise' regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." *Manual for Compl. Lit.*, at § 21.312.  The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).  The notice must contain specific information in plain, easily understood language, including the nature of the action and the rights of class members.  Fed. R. Civ. P. 23(c)(2)(B)(i)–(vii); *see also In re AT&T*, 270 F.R.D. at 352.

Pursuant to the Settlement Agreement, the Settlement Administrator will send via e-mail the Class Notice to all Settlement Class Members (and will send it via postal mail to any Settlement Class Members to whom an e-mail was undeliverable). As reflected in Exhibits B–C to the Settlement Agreement, the Class Notice will provide information to Settlement Class Members regarding the essential terms of the Settlement, including the manner and timing for submitting Claim Forms, the intention of Plaintiff and her counsel to submit applications for an Attorney's Fee Award and Service Award (and the amounts to be requested), the time and place of the hearing to consider final approval of the Settlement, the methods for objecting to or opting out of the Settlement, and the procedures for distributing the Settlement Fund, and will prominently display the address of the Settlement Website and the contact information for Class Counsel and the Settlement Administrator.  *See In re AT&T*, 270 F.R.D. at 352 (the notice should contain specific information, in plain, easily understood language, concerning the nature of the action and the rights

of class members). Settlement Class Members must submit Claim Forms on the Settlement Website by the Claims Deadline to receive a Cash Award. *See* Settlement Agreement ¶ 81.

The proposed Settlement Class Notice Program is robust, comprehensive and informative, and aimed at providing the Class Notice directly to all Settlement Class Members. Accordingly, Plaintiff respectfully requests that the Court, as set forth in the proposed order accompanying this Motion, find that the notice provided by the Settlement Class Notice Program: (i) is the best practicable notice; (ii) is reasonably calculated, under the circumstances, to apprise the Settlement Class of the pendency of the Litigation and of their right to object to or to exclude themselves from the proposed settlement; (iii) is reasonable and constitutes due, adequate and sufficient notice to all Persons entitled to receive notice; and (iv) meets all requirements of applicable law. *See id.* ¶ 89.

For the Settlement Class Notice Program to be implemented, Plaintiff respectfully requests that the Court, as set forth in the proposed order accompanying this Motion, approve the Class Notice and Claim Form, appoint Kroll as the Settlement Administrator, direct the Settlement Administrator to disseminate the Class Notice in accordance with the Settlement Class Notice Program by the Notice Date (i.e., within 30 days after the Preliminary Approval Date), and set the Claim Deadline on the date that falls 120 days after the Notice Date. *See id.* ¶¶ 48, 90.[7]

**E.  The Court Should Schedule the Final Approval Hearing**

The last step in the settlement approval process, after completion of the Settlement Class Notice Program, will be a Final Approval Hearing to consider the fairness, reasonableness, and

---

[7]    Within 10 days of the filing of this Motion and the attached Settlement Agreement, Defendant will serve or cause the Class Administrator to serve CAFA Notice in full compliance with 28 U.S.C. § 1715. Settlement Agreement ¶ 91.

adequacy of the proposed Settlement and whether the Court should finally approve it, and to determine the reasonableness of the requested Attorneys' Fee Award and Service Award. *See id.* ¶¶ 17, 101. Plaintiff respectfully requests that the Court schedule the Final Approval Hearing for the date that falls 120 days after the Preliminary Approval Date or another date thereafter as convenient for the Court, as set forth in the proposed order accompanying this Motion.

Finally, the Court should order that the Motion for Final Approval be filed with the Court on or before 14 days prior to the Final Approval Hearing, as set forth in the proposed order accompanying this Motion.

## VI. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant this Motion and, consistent with the proposed order attached hereto, enter an order:

(A) preliminarily approving the Settlement;

(B) provisionally certifying the Settlement Class and appointing Plaintiff as class representative and Plaintiff's counsel as Class Counsel;

(C) approving the Class Notice and Settlement Class Notice Program, appointing Kroll as Settlement Administrator, ordering that the Settlement Class Notice Program be effectuated, and ordering that proof of compliance with the Settlement Class Notice Program be filed by the Settlement Administrator no later than seven days before the Final Approval Hearing;

(D) setting a Notice Date of 30 days after the Preliminary Approval Date;

(E) setting a Claims Deadline of 120 days after the Notice Date;

(F) establishing the procedure for Settlement Class Members to object to the Settlement or exclude themselves from the Settlement Class, and setting an Opt-Out and Objection Date of 60 days after the Notice Date;

(G) ordering the Motion for Final Approval and any response to any objection to be filed with the Court no later than 14 days prior to the Final Approval Hearing;

(H) directing Class Counsel to file any application for an Attorneys' Fee Award and Service Award at least 20 days prior to the Opt-Out and Objection Date;

(I) ordering the Settlement Administrator to provide the Opt-Out List to Class Counsel and Defense Counsel no later than seven days after the Opt-Out and Objection Date and to then file with the Court the Opt-Out List with an affidavit attesting to the completeness and accuracy thereof no later than seven days before the Final Approval Hearing;

(J) preliminarily enjoining Settlement Class Members who have not excluded themselves from initiating or participating in litigation related to the underlying facts of this case, consistent with the language in the proposed order attached to this Motion;

(K) staying all proceedings, except those related to effectuating the Settlement, pending final determination of whether the Settlement should be approved; and

(L) scheduling a Final Approval Hearing for the date that falls 120 days after the Preliminary Approval Date, or another date thereafter as convenient for the Court, as set forth in the proposed order accompanying this Motion.

Dated:  October 29, 2025                                          Respectfully submitted,

                                                                 /s/ Frank S. Hedin
                                                                 Frank S. Hedin

                                                                 HEDIN LLP
                                                                 1395 Brickell Ave., Suite 610
                                                                 Miami, Florida 33131-3302
                                                                 Telephone: (305) 357-2107
                                                                 Facsimile: (305) 200-8801
                                                                 Email: fhedin@hedinllp.com

                                                                 Elliot O. Jackson
                                                                 HEDIN LLP
                                                                 1395 Brickell Ave., Suite 610

Miami, Florida 33131-3302
Telephone: (305) 357-2107
Facsimile: (305) 200-8801
Email: Ejackson@hedinllp.com

*Counsel for Plaintiff and Proposed
Class Counsel*