UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| DANA MANZA, individually and on behalf of all others similarly situated,<br><br>     Plaintiff,<br><br>v.<br><br>PESI, INC.,<br><br>     Defendant. | Case No.: 3:24-cv-000690-AMB-JDP |

### DECLARATION OF FRANK S. HEDIN

I, Frank S. Hedin, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746 and based on my own personal knowledge, that the following statements are true:

1. I am a member in good standing of the State Bar of California, the Florida Bar, and the bar of this Court.

2. I am counsel of record for Plaintiff Dana Manza in the above-captioned matter.

3. I make this declaration in support of Plaintiff's unopposed motion for preliminary approval of the class-action Settlement Agreement entered into between Plaintiff and Defendant PESI, Inc., a true and correct copy of which is attached hereto as **Exhibit 1**.

### I.     HISTORY OF THE LITIGATION & SETTLEMENT NEGOTIATIONS

4. This case was the product of an extensive pre-filing investigation. For several months preceding the filing of this action, my firm conferred extensively with Plaintiff and carefully investigated the facts underlying her experience, researched the applicable law, and developed the claim ultimately pled in the Complaint. Specifically, my firm investigated, *inter alia*, issues concerning Plaintiff's interactions on Defendant's website, the manner, means, and extent by which Defendant transmitted or otherwise disclosed its consumers' PII online to third

parties, and any attempts by Defendant during the checkout processes on its websites to obtain its customers' informed, written consent to the disclosure of their PII. This process involved reviewing numerous documents and electronic data provided by Plaintiff and accessible on Defendant's website, including examining the source code of Defendant's websites, transmissions of data made on those websites when certain actions are taken by visitors, and the recipients of such transmissions. With the information gathered in our preliminary investigation, my colleagues and I were able to draft and file the Class Action Complaint to initiate this case.

5. My firm vigorously litigated this Action on behalf of Plaintiff and the putative class. My firm drafted and issued numerous requests for production of documents and interrogatories to Defendant on Plaintiff's behalf, seeking information and documents concerning every aspect of the merits of Plaintiff's claims and the certifiability of the Action as a class action pursuant to Rule 23. My firm subsequently engaged in extensive meet and confer efforts with Defendant's counsel, over the course of several weeks, concerning Defendant's responses and objections to Plaintiff's discovery requests, and negotiated with Defendant's counsel an Agreed Confidentiality Order.

6. My firm also prepared and served third-party subpoenas for documents on Meta, Pinterest, Inc., and Google LLC, seeking information and documents concerning the merits of Plaintiff's claims and the certifiability of the Action as a class action pursuant to Rule 23. Subsequently, my firm engaged in extensive meet and confer efforts with counsel for these third parties regarding their responses and objections to the subpoenas.

7. On January 10, 2025, Defendant served requests for production of documents and interrogatories on Plaintiff, seeking documents and information relating to both merits and class certification. Together with Plaintiff, my firm prepared and served written responses and objections to these requests.

8. In the midst of discovery, my firm retained one of the country's foremost experts on web-based consumer tracking technologies, Anya Verkhovskaya, to serve as an expert witness in this matter on Plaintiff's behalf, and to prepare an expert report regarding various issues pertaining to class certification, including *inter alia*, the feasibility of identifying Settlement Class Members and the nature of the technology used by Defendant to disclose PII. Ms. Verkhovskaya subsequently reviewed the materials produced by Defendant and by the relevant third parties in discovery and prepared a comprehensive 34-page expert report, which my firm reviewed and intended to use in support of Plaintiff's motion for class certification in the Action.

9. As a result of the considerable time and resources Plaintiff and my firm spent building this case, during both our pre-filing investigation and formal discovery, we had the opportunity, in advance of ever discussing settlement with Defendant, to meaningfully assess the strengths and weaknesses of Plaintiff's claim and the likelihood of prevailing on a contested motion for class certification.

10. On June 19, 2025, the Parties agreed to mediate before the Hon. James F. Holderman, a well-respected and experienced JAMS mediator and former chief U.S. District Judge for the Northern District of Illinois.

11. In advance of the mediation, I requested, and Defendant provided, additional documents pertaining to, *inter alia*, the size and scope of the Settlement Class and insurance-related issues.

12. My firm later exchanged comprehensive mediation statements with Defendant and mailed copies to Judge Holderman, each addressing the various legal and factual issues pertaining to the merits of Plaintiff's claim and issues of class certification.

13.     On August 14, 2025, the Parties participated in a full day of mediation before Judge Holderman.

14.     After over 9 hours of contentious, arm's-length negotiations overseen by Judge Holderman, the Parties reached an agreement on all material terms of the proposed Settlement and executed a binding term sheet memorializing those terms, subject to Defendant providing my firm with certain confirmatory discovery to confirm certain details concerning the size and composition of the Settlement Class.

15.     On August 27, 2025, Defendant produced the agreed-upon confirmatory discovery my firm, which enabled us to confirm that 307,555 persons had purchased prerecorded video material or services from one of Defendant's websites during the relevant time period and were thus members of the Settlement Class.

16.     Prior to executing the Settlement Agreement, my firm solicited estimates from three reputable class action settlement claims administration companies to implement the Settlement Class Notice Program, which will include, *inter alia*, overseeing the Settlement Fund, developing and maintaining the Settlement Website, receiving and processing Claim Forms submitted by Settlement Class Members, and disbursing payments to claimants. At the conclusion of this process, the parties agreed to retain, subject to Court approval, Kroll Settlement Administration LLC ("Kroll") to serve as Settlement Administrator.  This decision was based on Kroll's cost estimate of $87,616 and its agreed-upon not-to-exceed figure of $105,200.

17.     On October 24, 2025, the Parties and their counsel executed the formal Settlement Agreement.

18. The Settlement is thus the product of extensive litigation, comprehensive discovery, lengthy and arm's length negotiations overseen by an experienced and well-respected mediator, confirmatory discovery, and a competitive bidding process to select a Settlement Administrator.

19. I believe that the Settlement is an excellent result for the Settlement Class, particularly when compared against recent settlements in similar VPPA matters and in light of the significant risks of non-recovery that continued litigation would have posed.

II.     **HEDIN LLP'S EXPERIENCE**

20. I co-founded Hedin LLP, then known as Hedin Hall LLP, in 2018. I previously served as law clerk to the Honorable William Q. Hayes, U.S. District Judge for the Southern District of California, and as an attorney at a Miami-based litigation boutique, where I started the firm's class-action practice.

21. Based in Miami, Florida, with an office in Washington D.C., Hedin LLP focuses on consumer and data privacy class actions and has successfully prosecuted dozens of such matters in state and federal courts as court-appointed class counsel. *See e.g., Rivera et al. v. Google, LLC*, No. 2019-CH-00990 (Cir. Ct. Cook Cnty. Ill., Apr. 5, 2022) (class counsel in action alleging violations of Illinois's Biometric Information Privacy Act ("BIPA"), obtained $100 million non-reversionary class settlement); *Schreiber et al. v. Mayo Foundation for Medical Education & Research*, No. 22-cv-00188 (W.D. Mich.) (counsel for class of consumers alleging defendant's sale, rental, and disclosure of mailing containing its subscribers' personal information in violation of Michigan's Preservation of Personal Privacy Action ("PPPA"), obtained $52.5 million non-reversionary class settlement with automatic payments (without the need to submit claim forms) to each of the approximately 67,000 class members); *Olsen, et al. v. ContextLogic Inc.*, No. 19CH06737 (Cir. Ct. Cook Cnty. Ill., Jan 7, 2020) (class counsel in action alleging violations of

the of the federal Telephone Consumer Protection Act ("TCPA"), obtained $16 million non-reversionary class settlement); *Chimeno-Buzzi v. Hollister Co.*, No. 14-cv-23120 (S.D. Fla.) (same, $10 million nonreversionary class settlement); *Farnham v. Caribou Coffee Co., Inc.*, No. 16-cv-295 (W.D. Wisc.) (same, $8.5 million non-reversionary class settlement); *Benbow v. SmileDirectClub, Inc.*, No. 2020- CH-07269 (Cir. Ct. Cook Cnty.) (same, $11.5 million class settlement); *Donahue v. Everi Payments, Inc.*, et al., No. 2018-CH-15419 (Cook Cnty., Ill. Cir. Ct.) (class counsel in action alleging disclosure of consumers' credit and debit card information on printed transaction receipts in violation of the federal Fair and Accurate Credit Transactions Act, obtained $14 million non-reversionary class settlement); *Owens, et al. v. Bank of America, N.A., et al.*, No. 19-cv-20614 (S.D. Fla.) (class counsel in action alleging improper overdraft fees in violation of state law, obtained $4.95 million non-reversionary class settlement with automatic payments to all class members); *Liggio v. Apple Federal Credit Union*, No. 18-cv-1059 (E.D. Va.) (same, $2.7 million non-reversionary class settlement); *In re Maxar Technologies Inc. Shareholder Litigation*, No. 19CV357070 (Cal. Sup. Ct., Santa Clara Cnty.) (class counsel in action alleging false and misleading statements to investors in violation of federal securities laws, obtained $36.5 million non-reversionary settlement for class); *Plymouth County Retirement System v. Impinj, Inc., et al.*, No. 650629/2019 (N.Y. Sup. Ct., N.Y. Cnty.) (same, obtained $20 million non-reversionary class settlement). Over the past five years alone, the firm has recovered over $400 million in all-cash relief for the classes it has represented.

22.     Notably, my firm has substantial experience litigating similar cases under state statutes analogous to the VPPA, including cases concerning the monetization of consumers' private information through consumer data markets. *See e.g., Kokoszki v. Playboy Enters., Inc.*, No. 19-cv-10302 (E.D. Mich.) (class counsel in action alleging violation of Michigan PPPA, obtained $3.8

million non-reversionary class settlement with automatic payments to all class members); *Pratt et al. v. KSE Sportsman Media, Inc.,* No. 21-cv-11404 (E.D. Mich.) (same, $9.5 non-reversionary class settlement with automatic payments to all class members); *Kain v. The Economist Newspaper NA, Inc.*, No. 21-cv-11807 (E.D. Mich.) (same, $9.5 million non-reversionary class settlement with automatic payments to all class members); *Strano v. Kiplinger Washington Editors, Inc.*, No. 21-cv-12987 (E.D. Mich.) (same, $6.8 million non-reversionary class settlement with automatic payments to all class members); *Moeller v. The Week Publications, Inc.*, No. 22-cv-10666 (E.D. Mich.) (same, $5 million non-reversionary class settlement with automatic payments to all class members).

23. We also frequently represent indigent litigants on a pro bono basis. *See e.g., Groover v. U.S. Corrections, LLC, et al.*, No. 15-cv-61902-BB (S.D. Fla.) (representing plaintiff and putative class against country's largest private prisoner extradition companies in Section 1983 civil rights action alleging violations of the Eighth Amendment).

24. Hedin LLP draws from a team of highly experienced attorneys dedicated to representing plaintiffs in complex class action litigation, as well as a full team of non-lawyer professionals and support staff. A copy of Hedin LLP's firm resume is attached hereto as **Exhibit 2**.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on October 29, 2025 at Miami, Florida.

>*/s/ Frank S. Hedin*
>Frank S. Hedin