IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

DANA MANZA, individually and on behalf of all others similarly situated,

                      Plaintiff,

    v.

PESI, INC.,

                      Defendant.

OPINION and ORDER

24-cv-690-jdp

---

Plaintiff Dana Manza purchased videos online from defendant Pesi, Inc. Manza is suing Pesi under the Video Privacy Protection Act (VPPA) for disclosing her purchasing history and other personal information to social media companies and data brokers without her consent. The parties jointly move for class certification and preliminary approval of a class settlement. Dkt. 45.

For the reasons below, the court will grant the motion for class certification, deny the motion for preliminary approval without prejudice, and set a deadline for the parties to renew their motion for preliminary approval.

ANALYSIS

**A. Class certification**

Under Rule 23, a class may be certified if it meets the following requirements: (1) the scope of the class and the class claims are clearly defined, Fed. R. Civ. P. 23(c)(1)(B); (2) the class is sufficiently numerous, Fed. R. Civ. P. 23(a); (3) the class includes common questions of law or fact, and is adequately represented by named plaintiffs who have claims typical of the class, *id.*; (3) class counsel is adequate, Fed. R. Civ. P. 23(g)(1); and (4) the class meets the

requirements of at least one of the types of class actions listed in Rule 23(b). The parties in this case rely on Rule 23(b)(3), which applies when the common questions of law or fact predominate over individual ones and a class action is superior to other methods of adjudicating the case.

The court concludes that the parties have satisfied each of the relevant Rule 23 requirements for certification.

**Class definition.** The parties propose the following class: "All persons who made purchases of video products or services from Defendant's www.pesi.com and/or psychotherapynetworker.org website between October 3, 2022 and October 3, 2024." Dkt. 46-1, ¶ 46.[1] This definition uses clear, objective criteria and allows the parties to identify who the class members are.

**Numerosity.** The parties represent that there are 307,555 members in the class. That is plainly numerous enough to make joinder impractical. *See Mulvania v. Sheriff of Rock Island Cty.*, 850 F.3d 849, 859 (7th Cir. 2017) ("[A] forty–member class is often regarded as sufficient to meet the numerosity requirement.").

**Commonality, typicality, adequacy of the named plaintiff, predominance.** These factors all focus on the same general question: are the class claims similar enough to each other that it makes sense to resolve them collectively? *See Scott v. Dart*, 99 F.4th 1076, 1088 (7th Cir. 2024); *Santiago v. City of Chicago*, 19 F.4th 1010, 1016–17 (7th Cir. 2021); *Lacy v. Cook Cty., Illinois*, 897 F.3d 847, 866 (7th Cir. 2018); *CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 724–25 (7th Cir. 2011). In this case, the parties agree for the purpose of their

---

[1] The class excludes Pesi, class counsel, and court staff. Dkt. 46-1, ¶ 46.

proposed settlement that Pesi treated the class members the same by disclosing their purchasing history and other personal information to third parties. They do not identify any significant differences or conflicts among the class members. This is enough to support a finding for the purpose of class certification that there are common questions, Pesi's claims are typical of the class, Pesi is an adequate class representative, and common questions predominate over individual questions.

**Adequacy of counsel.** Class counsel have significant experience litigating and obtaining settlements for similar class and collective actions. *See* Fed. R. Civ. P. 23(g)(1); Dkt. 46. The court will approve Hedin LLP as class counsel.

**Superiority.** A class action is superior to other methods of adjudicating the case because the large size of the class and the small amount of damages for each class member make individual lawsuits impractical. *See* Fed. R. Civ. P. 23(b)(3); *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 664 (7th Cir. 2015).

The court will certify the class.

## B. Preliminary approval

A court may grant preliminary approval of a settlement if the court "will likely be able to" find that the settlement is "fair, reasonable, and adequate" after a hearing. Fed. R. Civ. P. 23(e)(1)(B) and (e)(2). The court must consider several factors, including the adequacy of relief to the class, the relative fairness of the settlement for each class member, and the reasonableness of the attorney fees. *Id.*

The settlement agreement provides that Pesi will pay a total of $2,950,000, to be divided as follows:

3

- no more than $105,200 for administrative expenses[2]

- no more than 30 percent of the total settlement (after administrative expenses are subtracted) for class counsel's fees and legal expenses, which would amount to $948,266

- $5,000 for the class representative

- the remainder for the class, which would amount to at least $1,891,534

To receive a share of the settlement, class members will have to submit a claim to the claim administrator, which will then determine whether the claim is "valid." Dkt. 46-1, ¶¶ 43, 61. Every class member who submits a valid claim will receive the same, pro rata share of the settlement. *Id.* ¶ 59. Each class member's share will be determined by the number of class members who submit a valid claim: if a class member does not submit a valid claim, that class member's share will be redistributed among the rest of the class. *Id*. Funds will not revert to Pesi, with one exception: if a class members do not cash their check within 120 days, the check becomes void, and that class member's share will revert to Pesi. *Id.* ¶ 64.

In addition to the monetary relief, the settlement agreement includes a provision that is called "injunctive relief:" "Defendant agrees to in the future refrain from disclosing information identifying persons who purchased its video products or services to third parties, absent such persons' consent." *Id.* ¶ 65.

For the most part, the settlement appears to be fair, reasonable, and adequate. If the maximum expenses and fees are requested and all members of the class file a claim, this would

---

[2] The parties estimate that the total could be lower, but the administrator has agreed to cap expenses at this amount. Dkt. 46-1, ¶ 36.

result in each member receiving about $6.15. On its face, that is a small amount, but the court concludes that it is fair for three reasons.

First, the parties represent that no more than five to ten percent of the class members are likely to submit claims based on their experience with past cases. That is consistent with this court's experience. This means that a class member's actual claim value is likely to be closer to $60 or $120.

Second, the parties settled relatively early in the proceedings and the ultimate resolution of the case would have been far from clear if the case were litigated to completion on the merits. The parties dispute numerous legal and factual issues that could be dispositive of the claims. The court resolved some of these issues in Manza's favor at the pleading stage, but that is not a guarantee that Manza would prevail at summary judgment or trial or, if she did, that the court of appeals would agree with this court's determinations. As discussed in the decision on Pesi's motion to dismiss, different courts have interpreted the VPPA differently, and most appellate courts have adopted a narrower interpretation that would favor Pesi's position. *See* Dkt. 38. So Manza's ultimate success in this case was uncertain, and it makes sense that the uncertainty would be reflected in a reduced settlement amount.

Third, the value of a claim like the ones at issue in this case is difficult to assess. The primary harm identified by plaintiffs is being targeted by unwanted ads, which does not involve

5

a direct out-of-pocket loss and cannot otherwise be easily measured. The value assigned by the parties appears to be in the middle of the pack compared to other similar class actions.[3]

It also appears that the settlement agreement treats class members equitably in comparison to each other. It makes sense to give each class member an equal share in light of the difficulty of measuring the value of a class member's claim and the small amount that each claim is worth. The expense and effort it would take to investigate individual differences in the value of class members' claims would not be worth any marginal increase in accuracy.

Class counsel's requested fee of 30 percent of the settlement (after expenses are subtracted) also appears reasonable on its face. It is within the range of reasonableness approved by this and other courts. *See Redman v. RadioShack Corp.*, 768 F.3d 622, 630 (7th Cir. 2014); *Pearson v. NBTY, Inc.*, 772 F.3d 778, 782–83 (7th Cir. 2014).

The parties chose Kroll, LLC as their settlement administrator. Dkt. 46-1, ¶ 37. The parties should have included a declaration from Kroll establishing its qualifications to serve as

---

[3] *Lee v. Springer Nature Am., Inc.*, No. 24-CV-4493 (LJL), 2025 WL 3523134, at *6 (S.D.N.Y. Dec. 9, 2025) (approving VPPA class settlement that resulted in pro rata share of $28 for each class member; citing other VPPA cases involving a pro rata share of between $1 and $16); *Carbone v. Ltd. Run Games, Inc.*, No. 24-CV-08861 (NJC) (JMW), 2025 WL 3481450, at *4 (E.D.N.Y. Aug. 21, 2025) (approving VPPA class settlement of $2,720,000 for class consisting of "hundreds of thousands" class members); *Stark v. Patreon, Inc.*, No. 22-CV-03131-JCS, 2025 WL 1592736, at *5 (N.D. Cal. June 5, 2025) (approving $7,250,000 VPPA class settlement for 1.6 million class members, resulting in pro rata share of approximately $4.50 before fees and expenses are subtracted); *Braun v. Philadelphia Inquirer, LLC*, No. 22-CV-4185-JMY, 2025 WL 1314089, at *3 (E.D. Pa. May 6, 2025) (approving $1,125,000 VPPA class settlement for 180,000 class members, resulting in a pro rate share of approximately $6.25 before fees and expenses are subtracted); *Feldman v. Star Trib. Media Co. LLC*, No. 22-CV-1731 (ECT/TNL), 2024 WL 3026556, at *7 (D. Minn. June 17, 2024) (approving $2.9 million VPPA class settlement for approximately $345,000 class members, resulting in a pro rata share of approximately $8.40 before fees and expenses are subtracted); *In re TikTok, Inc., Consumer Priv. Litig.*, 617 F. Supp. 3d 904, 922 (N.D. Ill. 2022) (approving $92 million VPPA class settlement for approximately 89 million class members, for a pro rata share of approximately one dollar before fees and expenses are subtracted).

administrator. But case law suggests that Kroll has significant experience and is routinely approved by courts to administer class action settlements. *Reed v. ALN Med. Mgmt. LLC*, No. 4:25CV3067, 2025 WL 3496751, at *4 (D. Neb. Dec. 5, 2025); *Carbone v. Ltd. Run Games, Inc.*, No. 24-CV-08861 (NJC) (JMW), 2025 WL 3481450, at *14 (E.D.N.Y. Aug. 21, 2025); *Tate v. EyeMed Vision Care, LLC*, No. 1:21-CV-36, 2025 WL 2119389, at *5 (S.D. Ohio July 29, 2025); *Smith v. Apria Healthcare LLC*, No. 1:23-CV-01003-JPH-KMB, 2025 WL 1588950, at *9 (S.D. Ind. June 5, 2025). So the court will not require additional information about Kroll at this time.

But there are five issues that the parties must address before the court can grant preliminary approval.

First, neither the scope nor intended effect of the proposed "injunctive relief" is clear. As for the intended effect, the parties do not specify whether they are trying to create an enforceable right that a class member could enforce in this court at a later date. They do not ask the court to incorporate an injunction into a judgment. If the parties do mean to create an enforceable injunction, it would need to comply with Federal Rule of Civil Procedure 65(d), which requires an injunction to "state its terms specifically" and "describe in reasonable detail . . . the act or acts restrained or required." The parties' proposed provision doesn't do that. The provision doesn't define key terms, including "information identifying persons who purchased its video products or services," and it doesn't explain what qualifies as valid "consent" to disclosure or who qualifies as "third parties." The provision also doesn't explain what specific changes it is making to its privacy policies. Any attempt to enforce the provision would likely lead to substantial litigation over what the provision actually requires. So the parties must do the following things: (1) clarify whether they are seeking to incorporate an injunction into a

7

judgment or to otherwise create an enforceable right; (2) if they are, submit a revised provision that complies with Rule 65; and (3) if they are not, explain whether the settlement agreement needs to be revised to make it clear that it is not creating an enforceable right for class members.[4]

Second, the parties must explain an inconsistency between the scope of the class claims and the scope of the proposed release. The proposed class includes anyone who purchased videos from Pesi between October 2022 and October 2024. Dkt. 46-1, ¶ 46. But the proposed release covers claims from October 2022 to the date of final approval. *Id.* ¶ 31. The court did not see any explanation for the discrepancy in the parties' filings. So the parties must either amend the agreement so that the class claims and releases are coextensive or explain why the discrepancy is appropriate.

Third, the parties must clarify their process for evaluating claims. The settlement agreement makes a class member's claim contingent on approval by the administrator, but the criteria used for approving a claim seems open ended and discretionary. The agreement states that a claim is not valid unless it meets the following criteria: (1) the form includes the class member's name, email address, telephone number, and postal address; (2) the claimant is a class member; (3) the claim is submitted by the deadline; and (4) the administrator approved the claim. Dkt. 46-1, ¶¶ 46, 61.

The court has three questions about this process:

---

[4] In some cases, class counsel attempt to place a value on the injunctive relief for the purpose of justifying a higher fee award. Class counsel in this case do not base their fee request on any potential value of the injunctive relief, so the court need not consider that issue.

1) Why must class members provide their telephone number as a condition of receiving a payment? The parties do not say that they will use the parties' telephone number to send notice, that they need the telephone number to confirm a claimant's identity, or that they otherwise need the number for any purpose related to the settlement. In a case that is about alleged privacy violations, class members should not be required to submit any information that is not necessary to evaluate and pay a claim.

2) What is the criteria the administrator will use to evaluate a claim? The agreement leaves it open ended, listing specific criteria, but then appearing to leave to the administrator's discretion whether to approve the claim. The court can discern four reasons for rejecting a claim: (1) the information provided shows that the person is not a class member; (2) the person has not provided enough information to allow the administrator to determine whether the person is a class member; (3) the person already submitted a claim; and (4) the claim is untimely. The parties must clarify whether the administrator has the authority to reject a claim for any other reason, and if so, what that reason is and why it is an appropriate reason.

3) What is the process for a claimant to challenge the administrator's determination that a claim is not valid? The agreement states that *counsel* may raise an objection to the court if they disagree with the administrator's determination about the validity of a claim, Dkt. 46-1, ¶ 82, but the agreement does not specify whether or how a claimant may challenge that determination.

If the parties did not intend for a claimant to have an opportunity to challenge the determination with the court, they should explain why that is appropriate.

Fourth, the proposed short-form and long-form class notices include language that could be confusing for class members regarding the nature of the lawsuit and each class member's share of the settlement. As for the nature of the lawsuit, the notices summarize Manza's allegations to be that Pesi "disclosed information identifying persons who purchased its video products or services to third parties in violation of the federal Video Privacy Protection Act." Dkt. 46-1, at 41, 44. The problem with this aspect of the notice is similar to the problem with the proposed injunctive relief. Specifically, it does not identify what information was allegedly disclosed or to whom it was disclosed. So a class member who receives this notice will not know what the scope of the alleged disclosure was and could be unnecessarily alarmed, believing that the disclosure involved information like credit card numbers or that the third parties include hackers or other nefarious actors rather than advertisers. So the notices should include additional information clarifying these issues.

As for the amount of each class member's settlement share, the notices state that the estimated amount is "estimated" to be between $65 and $130 dollars. *Id.* at 41, 44, 47. It is helpful for the class to receive an estimate of each member's likely share. But the notices do not explain *how* that estimate was calculated and they do not include information that would allow class members to figure it out (such as the total number of class members), leaving class members to guess. The notice should identify the assumptions the parties are relying on to provide the estimated pro rata share.

Fifth, the parties should clarify what appears to be ambiguity in the settlement agreement. Specifically, the agreement states that any checks that are not cashed by class

10

members "shall be returned to Defendant to offset the cost of the administration of the Settlement." Dkt. 46-1, ¶ 64. The agreement goes on to say that, after Pesi is reimbursed, any remaining amount will be donated to a cy pres recipient that is "mutually selected by the Parties and approved by the Court." *Id.*

The court does not object to a modest reversion clause that applies only to uncashed checks. The checks will be sent only to class members who file a claim and are expecting a check, so the number of uncashed checks should be very small. But the parties do not explain what they mean that uncashed checks will revert to Pesi "to offset the cost of the administration of the settlement." The parties have hired a settlement administrator, and they are separately seeking reimbursement for those expenses, so it is not clear what costs this provision of the settlement is referring to. Also, because the value of uncashed checks is likely to be insignificant, it is not clear what purpose is served by donating any remaining amounts to a cy pres recipient. The time and effort expended in seeking court approval alone would likely exceed the amount to be donated. So the parties should address the following questions: (1) whether the settlement agreement should be amended to allow uncashed checks to revert to Pesi, and to eliminate the cy pres provision, regardless of administration costs; (2) if the parties wish to keep the agreement as-is, what administration costs paragraph 64 of the agreement is referring to; and (3) if the parties wish to retain the cy pres provision, why they should not identify a potential recipient now to avoid the need to seek court approval later.

When filing their renewed motion for preliminary approval, the parties may focus on the issues above identified by the court. They need not repeat information from their original motion that the court did not take issue with. Rather, the parties may incorporate that information by reference.

11

There are several other issues that are not a barrier to preliminary approval but will need to be addressed in any motion for final approval. To allow the parties to begin planning for those issues, the court will identify them here.

First, this court requires a lodestar cross check when reviewing class counsel's requested fees, even when, as in this case, the requested percentage of recovery does not seem obviously unreasonable. S*ee Americana Art China Co. v. Foxfire Printing & Packaging, Inc.*, 743 F.3d 243, 247 (7th Cir. 2014) (holding that courts have discretion to apply either percentage-of-recovery method or lodestar method). This cross check means that counsel's motion for attorney fees must comply with the court's procedures for fee petitions. Those procedures may be found on page 39 of the court's standard attachments, which were provided with the preliminary pretrial conference order, Dkt. 25. Among other things, the procedures require counsel to include billing records showing that their fees are reasonable. Class counsel should comply with these procedures in any motion for final approval, for both their attorney fees and legal expenses.

Second, any motion for final approval will need to include a declaration and supporting documents from the settlement administrator demonstrating that the requested administrative expenses are reasonable.

Third, any motion for final approval should expressly address each of the factors the court must consider in Rule 23(e)(2). The parties may not limit their discussion to common-law factors.

Fourth, any motion for final for final approval should include a declaration from class counsel or Manza herself explaining in reasonable detail the contributions that Manza made to the case. This is necessary for the court to evaluate the proposed incentive award.

ORDER

IT IS ORDERED that:

1. The parties' motion to certify the class is GRANTED. The court certifies the following class: "All persons who made purchases of video products or services from Defendant's www.pesi.com and/or psychotherapynetworker.org website between October 3, 2022 and October 3, 2024."

2. Hedin LLP is appointed as class counsel.

3. The motion for preliminary approval of the settlement agreement, Dkt. 45, is DENIED without prejudice.

4. The parties may have until February 20, 2026, to renew their motion or show cause why they are unable to do so.

Entered January 23, 2026.

BY THE COURT:

/s/
_____

JAMES D. PETERSON
District Judge