**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WISCONSIN**

| | |
|---|---|
| DANA MANZA, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PESI, INC.,<br><br>Defendant. | Case No.: 3:24-cv-000690-AMB-JDP |

**PLAINTIFF'S UNOPPOSED RENEWED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

Pursuant to the Court's order dated January 23, 2026 (ECF No. 50 (the "Order")), Plaintiff Dana Manza, on an unopposed basis, hereby renews and incorporates by reference her previously submitted motion for preliminary approval (ECF No. 45) of the parties' class-action Settlement Agreement (ECF No. 46-1 (the "SA")), and states as follows with respect to the issues raised in the Court's Order[1]:

**I. The Scope and Intended Effect of the Non-Monetary Relief**

The Court's Order instructs the parties to: "(1) clarify whether they are seeking to incorporate an injunction into a judgment or to otherwise create an enforceable right; (2) if they

1 As a preliminary matter, the Order states that Plaintiffs' counsel has agreed to request "no more than 30 percent of the total settlement (after administrative expenses are subtracted) for . . . fees and legal expenses, which would amount to $948,266." Order at 4. While the Court is correct that Plaintiffs' counsel has agreed to limit its request for attorneys' fees (inclusive of costs) to "no more than 30 percent of the total settlement (after administrative expenses are subtracted)," Plaintiffs' counsel notes that a 30% fee request equates to $853,440 rather than $948,266 (as the Order states). (It appears the Court multiplied the amount of the Settlement Fund (net of administration expenses) by 1/3 to arrive at the $948,266 figure.) And while the difference between a 30% and a 33.33% fee request might seem insignificant at first blush, it actually equates to nearly $100,000 in additional funds that will be paid to claiming Settlement Class Members (or an additional $5-10 to each of them, assuming a 5-10% claims rate).

are, submit a revised provision that complies with Rule 65; and (3) if they are not, explain whether the settlement agreement needs to be revised to make it clear that it is not creating an enforceable right for class members." Order at 7-8.

The parties are not seeking to incorporate an injunction into a judgment or otherwise create an enforceable right in paragraph 65 of the Settlement Agreement. Rather, paragraph 65 of the Settlement Agreement is intended merely to memorialize Defendant's agreement to make changes to its data practices relating to its www.pesi.com and www.psychotherapynetworker.org websites going forward, including but not limited to obtaining consent.[2] Thus, heading V. of the Settlement Agreement, under which paragraph 65 appears, would have been better labeled "prospective relief" rather than "injunctive relief." Notably, provisions like paragraph 65 of the Settlement Agreement are often found in class action settlements of data-privacy matters similar to the instant matter, without being found to create enforceable rights pursuant to Rule 65. *See, e.g., Farnham v. Caribou Coffee Co.,* No. 3:16-cv-00295-wmc (W.D. Wisc. July 28, 2017) (docket entry 54 at 3, order granting preliminary approval of class-action settlement that, in addition to monetary relief, "also provides for prospective relief, including that defendant will: (1) as of the date of this order, cease its text messaging marketing program in favor of a downloadable application; and (2) implement TCPA best practices and compliance training," without finding that such provision created an enforceable right so as to require compliance with Rule 65); *Feldman v. Star Tribune Media Co.,* Case No. 0:22-cv-01731-ECT-TNL, (D. Minn. Dec. 22, 2023) (docket entry 57 at 7, VPPA class action settlement agreement containing a provision for prospective relief to reflect the defendant's agreement to change business practices or obtain VPPA-compliant consent).

---

[2] As the Order correctly notes, this provision will not serve as the basis for any portion of the attorneys' fees requested by Class Counsel.

The parties respectfully submit that the foregoing clarification should suffice and that a revision to the Settlement Agreement is unnecessary on this point. *See* SA ¶ 116 ("The headings contained in this Settlement Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Settlement Agreement.").

## II. Discrepancy Between the Temporal Criterion for Class Membership and the Temporal Scope of the Release Provisions

The Order instructs the parties to "explain an inconsistency between the scope of the class claims and the scope of the proposed release." Order at 8. As the Order notes, the Settlement Agreement defines the Settlement Class as including persons who made a qualifying purchase between October 3, 2022, and October 3, 2024 (SA ¶ 38), but provides that persons fitting that class definition will release any Released Claims against the Released Parties that accrued at any time between October 3, 2022, through the date of final approval of the Settlement. SA ¶¶ 31, 86.

The reason why the Settlement Agreement provides that Settlement Class Members – i.e., persons who made purchases of video products or services on the subject websites between October 3, 2022, and October 3, 2024, are Settlement Class Members – will release any claims against the Released Parties that accrued between October 3, 2022, and the date of final approval (rather than October 3, 2024) is to ensure that Defendant cannot subsequently be found liable for having provided the Class List to the Settlement Administrator in advance of the final approval date in connection with the instant Settlement. In order to comply with CAFA's requirement that notice be provided to all state attorneys' general and other governmental entities in jurisdictions where class members reside, and to ensure the Settlement Administrator will be prepared to timely disseminate the Class Notice to Settlement Class Members upon the Court's issuance of an order preliminarily approving the Settlement, Defendant provided the Settlement Administrator a copy of the Class List (containing the names of the 307,555 persons who purchased video products or

services on the subject websites between October 3, 2022, and October 3, 2024) shortly after Plaintiffs' filing of the motion for preliminary approval. Without a release of Released Claims that accrued through the date of final approval, Defendant could be unfairly exposed to liability under the VPPA by virtue of its provision of the Class List to the Settlement Administrator for these discrete Settlement-related purposes.

Thus, class-action settlements routinely release defendants from liability for any claims that have accrued up through final approval of the settlement, even though the class period for determining membership in the class ends at an earlier date. *See, e.g., Fiorentino v. FloSports, Inc.,* Case No. 1:22-cv-11502-AK (D. Mass. July 26, 2023) (docket entry 60-1 at 5, 12, 14 & 39, class action settlement agreement in VPPA action defined settlement class as including all persons affected between September 12, 2020, and preliminary approval date, but released claims of such persons that accrued up through the date the judgment became final); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 05-MD-1720 (E.D.N.Y.), 2024 WL 3236614, at *9, 35 (E.D.N.Y. June 28, 2024) (approving class-action settlement agreement with a "release [that] covers any potential causes of action that may have accrued <u>as of the Settlement Approval Date [i.e., the date of the court's entry of a judgment finally approving the settlement (*see* docket entry 9179-2 at 16)]</u>," being provided by a settlement class comprised of "all persons, businesses, and other entities that accept Visa and/or Mastercard credit and/or debit cards in the United States at any time during the period between December 18, 2020 <u>and the date of preliminary settlement approval</u>") (emphasis added).

**III. The Claim-Evaluation Process**

As the Order notes, "[t]he agreement states that a claim is not valid unless it meets the following criteria: (1) the form includes the class member's name, email address, telephone

number, and postal address; (2) the claimant is a class member; (3) the claim is submitted by the deadline; and (4) the administrator approved the claim." Order at 8. The Order instructs the parties to provide answers to the following questions concerning these provisions: (1) "Why must class members provide their telephone number as condition of receiving a payment?"; (2) "What is the criteria the administrator will use to evaluate a claim?"; and (3) "What is the process for a claimant to challenge the administrator's determination that a claim is not valid?" *Id.* at 8-10.

Taking the second question first, the only criteria the Settlement Administrator will use to evaluate the validity of a claim is: (i) that the claim was timely filed, (ii) that the person submitting the claim is a person who appears on the Class List, and (iii) that the claim is not duplicative of a claim previously submitted by the same person and was not submitted by a person who previously requested exclusion. Because the Class List contains the names of all Settlement Class Members, if a person does not appear on the Class List, that person cannot be a Settlement Class Member; conversely, if a person does appear on the Class List, that person is definitively a Settlement Class Member (so long as the person has not submitted a request for exclusion to exclude himself or herself from the Settlement Class). Additionally, the Class Notices e-mailed and/or mailed to Settlement Class Members will contain a unique "Class Member ID" number, which claimants will be asked (but not required) to provide on the Claim Form they submit; to the extent a person submits a Claim Form with a valid Class Member ID, this will allow the Settlement Administrator to readily verify the validity of the submitted claim.

The purpose of requiring that claimants provide a telephone number on the claim form is to provide the Settlement Administrator an additional way to contact a claimant (in addition to by e-mail) in the event the claimant's claim form contains insufficient information for the Settlement Administrator to match him or her to the Class List (such as, *e.g.*, in the scenario where a person

who was recently married appears on the Class List in their maiden name, or where a person who was recently divorced appears on the Class List in their former married name). However, the parties appreciate the Court's concern that a claimant may feel uncomfortable providing his or her telephone number on the claim form, and thus propose that the Claim Form be modified to make the telephone number field optional rather than mandatory. Attached hereto as **Exhibit 1** is a revised version of the proposed Claim Form incorporating this change (with the change appearing in redline).

With respect to the process for a claimant to challenge the Settlement Administrator's determination of the validity of a submitted claim, every person who submits a claim form that the Settlement Administrator is unable to verify (again, by reference to the Class List, and/or with the assistance of the Class Member ID system discussed above) will be contacted by the Settlement Administrator, either by e-mail or telephone (to the extent a telephone number is provided by the claimant), to afford the person an opportunity to provide additional information to the Settlement Administrator to verify the claim. After contacting the claimant and seeking and hopefully obtaining additional information from the claimant, the Settlement Administrator will decide whether the claim was submitted by a person who appears on the Class List or not, with the ability of either party to object to the Settlement Administrator's decision. After a determination that a claim is invalid, each claimant who submits an invalid claim form to the Settlement Administrator must be given a notice of the Claim Form's deficiency and an opportunity to cure the deficiency within twenty-one (21) days of the date of the notice. Such a claims-validation process is typical of the process that has been used to validate claims in many prior class-action settlements of this nature. *See* Declaration of Lindsey Marquez of Kroll Settlement Administration LLC ("Marquez Decl.") ¶¶ 18-21; *see also, e.g., Farnham,* No. 3:16-cv-00295-wmc (docket entry 50-1 at 17-18,

class-action settlement agreement, finally approved by the court, providing that "the Settlement Administrator, after considering the positions of the Parties and, if appropriate, seeking any additional information from the Settlement Class Member, will make the final decision in its sole discretion [concerning the validity of a claim]").[3]

## IV. Adequately Informing Settlement Class Members About the Scope and Nature of Information Allegedly Disclosed and the Basis for how the Estimated Per-Claimant Recovery was Calculated

The Order states that "the proposed short-form and long-form class notices include language that could be confusing for class members," because they do "not identify what information was allegedly disclosed or to whom it was disclosed," such that "a class member who receives this notice will not know what the scope of the alleged disclosure was and could be unnecessarily alarmed, believing that the disclosure involved information like credit card numbers or that the third parties include hackers or other nefarious actors rather than advertisers." Order at 10. The Order further states that "the notices do not explain *how*" the estimated per-claimant recovery of "between $65 and $130 dollars" was calculated, and "do not include information that would allow class members to figure it out (such as the total number of class members), leaving class members to guess." Order at 10. The Order instructs the parties to include in the notices "additional information clarifying" the scope and nature of the information allegedly disclosed by Defendant, and to "identify" in the notices "the assumptions the parties are relying on to provide the estimated pro rata share" that each claiming Settlement Class Member is expected to receive. *Id.*

---

[3] Given the robust nature of the information available to the Settlement Administrator to verify claims – an exhaustive Class List that contains the names and some form of contact information of every person who is a Class Member – the parties believe it is unlikely anyone will challenge a determination made by the Settlement Administrator as to the validity of a claim in connection with this Settlement.

The Court's concern regarding the clarity of the proposed Class Notices on these points is well taken. The parties propose that the Class Notices (SA, Exhs. B-C; ECF No. 46-1 at 40-50) be amended to indicate that there are 307,555 Settlement Class Members, to provide the amounts of administration expenses, attorneys' fees, and service awards that will be sought from the Settlement Fund, to explain that the estimated range of recovery is based on the assumption that 5-10% of Settlement Class Members will submit claim forms, and to inform Settlement Class Members that the operative pleading at the time the settlement was reached alleged that Defendant violated the VPPA by disclosing to third parties, including Meta Platforms, Inc. Pinterest, Inc., and Google LLC, certain categories of information, including identification numbers associated with their Facebook, Google, and/or Pinterest accounts, their IP addresses, the titles of the pre-recorded video product(s) purchased, and/or other unique identifiers associated with cookies on their browsers and/or Facebook, Google, and/or Pinterest accounts, that allegedly could personally identify each of them as having purchased pre-recorded video products or services on Defendant's pesi.com and/or psychotherapynetworker.org website (and that this type of information is the extent of the information allegedly disclosed about Settlement Class Members). Attached hereto as **Exhibit 2** (short-form notice) and **Exhibit 3** (long-form notice) are revised versions of the proposed Short-Form and Long-Form Class Notices incorporating these changes (with changes appearing in redline).

## V. Ambiguities Concerning the Destination of any Funds Remaining in the Settlement Fund as a Result of Uncashed Checks

Finally, the Order notes that the Settlement Agreement contains an "ambiguity" regarding the circumstances in which any uncashed check funds will revert to Defendant or to a cy pres recipient, and questions why all uncashed check funds should not revert to Defendant. Order at 10-11. Specifically, the Order instructs the parties to provide answers to the following questions:

"(1) whether the settlement agreement should be amended to allow uncashed checks to revert to Pesi, and to eliminate the cy pres provision, regardless of administration costs; (2) if the parties wish to keep the agreement as-is, what administration costs paragraph 64 of the agreement is referring to; and (3) if the parties wish to retain the cy pres provision, why they should not identify a potential recipient now to avoid the need to seek court approval later." Order at 11.

Paragraph 64 of the Settlement Agreement is admittedly poorly worded. The parties intended for it to state that, to the extent uncashed check funds remain in the Settlement Fund after all checks sent to Settlement Class Members have either been cashed or expired, all such remaining funds shall revert to Defendant so long as the amount of those remaining funds does not exceed the maximum Settlement Administration Expenses (i.e., up to $105,200 (SA ¶ 36)), and that, to the extent any such remaining funds exceed the maximum Settlement Administration Expenses, any such funds in excess of $105,200 shall be awarded to a cy pres recipient jointly selected by the parties and approved by the Court.

However, given that checks will only be mailed to Settlement Class Members who have already submitted claim forms on which they provided their current postal addresses (and are thus expecting to receive a check in the mail at those addresses in connection with the Settlement), the parties agree with the Court that "the number of uncashed checks should be very small." Order at 11. Accordingly, to simplify the disbursement process, the parties agree that the Settlement Agreement should be deemed amended such that that all uncashed check funds will revert to Defendant and that no such funds will revert to a cy pres recipient.

The parties appreciate the time and attention the Court has devoted to this matter. Counsel for the parties are available at the Court's convenience to answer any further questions or address any further concerns the Court may have about the proposed Settlement.[4]

Dated: February 20, 2026

Respectfully submitted,

*/s/ Frank S. Hedin*
Frank S. Hedin

Frank S. Hedin
HEDIN LLP
1395 Brickell Ave., Suite 610
Miami, Florida 33131-3302
Telephone: (305) 357-2107
Facsimile: (305) 200-8801
Email: fhedin@hedinllp.com

*Class Counsel*

---

[4] Within ten (10) days of the filing of this renewed motion, the Settlement Administrator will disseminate copies of this filing to all parties required to receive notice pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715. *See* Marquez Decl. ¶ 6.