**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WISCONSIN**

DANA MANZA, individually and on behalf of all others similarly situated,

Plaintiff,

v.

PESI, INC.,

Defendant.

Case No.: 3:24-cv-000690-AMB-JDP

**JOINT & EXPEDITED RENEWED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**[1]

Pursuant to the Court's order dated July 17, 2026 (ECF No. 53 (the "Order")), Plaintiff Dana Manza and Defendant PESI, Inc. (collectively, the "Parties") hereby renew and incorporate by reference the previously submitted motions for preliminary approval (ECF Nos. 45, 51) of the Parties' class-action Settlement Agreement (ECF No. 46-1 (the "SA")), and provide the following further responses to the issues raised in the Court's Order.[2]

The Court's Order instructs the parties to: (I) "either narrow the release or show cause why they cannot do so"; and (II) revise the long-form notice to explain how the claims process works, and to instruct Settlement Class Members "that they may file an objection that the court will consider if they believe that the settlement administrator incorrectly rejected their claim," and

---

1 As time passes, the accuracy of the addresses available for the 307,555 Settlement Class Members in Defendant's records decreases, and the bill (to be paid from the Settlement Fund) for the Settlement Administrator to identify current addresses for Settlement Class Members in advance of the Notice Date accordingly increases. Thus, to maximize the amount of money in the Settlement Fund available for distribution to Settlement Class Members upon final approval, the Parties respectfully request an expedited decision on this motion.

2 Unless otherwise defined herein, all capitalized terms have the same force, meaning and effect as ascribed in Section II ("Definitions") of the Settlement Agreement.

"submit a proposed schedule (based on the number of days rather than specific dates) that reflects their understanding of how much time will be needed for each step of the process" related to making final decisions on claims. Order at 3-4.

## I. Discrepancy Between the Temporal Criterion for Class Membership and the Temporal Scope of the Release Provisions.

The Order instructs the parties to "either narrow the release or show cause why they cannot do so." Order at 3. As the Order notes, the Settlement Agreement defines the Settlement Class as including persons who made a qualifying purchase between October 3, 2022, and October 3, 2024 (SA ¶ 38), but provides that persons fitting that class definition will release any Released Claims against the Released Parties that accrued at any time between October 3, 2022, through the date of final approval of the Settlement. (SA ¶¶ 31, 86.)

The Parties respectfully submit that the scope of the release proposed in the Settlement Agreement is appropriate and routinely approved by courts overseeing settlements of similar consumer data-privacy class actions, including by the Seventh Circuit in a recent appeal concerning a similar class-wide release provision. The Seventh Circuit recently issued a decision *Clearview AI, Inc. Consumer Priv. Litig. v. Clearview AI, Inc.*, in which it rejected objections that the settlement's release was overbroad by encompassing claims arising through the "Effective Date" (i.e., after final approval), even though the temporal scope of the class definition ended at preliminary approval. No. 25-1673, 2026 U.S. App. LEXIS 20406 (7th Cir. 2026) (hereinafter, *In re: Clearview AI*) (rejecting objections that a settlement release was overbroad when it encompassed all claims arising from the defendant's underlying conduct through the "Effective Date" (i.e., after final approval), even though the temporal scope of the class definition ended at preliminary approval); *see also In re: Clearview AI, Inc., Consumer Privacy Litig.,* No. 1:21-cv-00135 (N.D. Ill.), ECF No. 578-1 (class settlement agreement). Indeed, in the data-privacy context,

courts frequently approve class settlements that provide defendants with releases broad enough to encompass claims arising after the cut-off date used for determining the class's membership, so long as such claims arose from the same factual predicate as the claims alleged in the case. *See, e.g., Linman v. Marten*, No. 3:22-cv-00204-jdp (W.D. Wis.), ECF Nos. 44, 63; *Lee v. Springer Nature America, Inc.*, No. 24-cv-4493 (LJL), 2025 U.S. Dist. LEXIS 254425 (S.D.N.Y. Dec. 9, 2025). Like the defendants in the cases cited above, Defendant is paying a substantial amount of money to obtain peace with respect to the matters at issue here following the Court's approval of the Settlement, and believes there is ample basis for the Court to approve the Settlement's release provisions as written.

That being said, neither Party has any reason to believe that any disclosures of any Settlement Class Members' PII occurred in violation of the VPPA at any time following the Parties' execution of the Settlement Agreement. (SA, ¶ 65). Thus, to the extent the Court is not inclined to approve the Settlement Agreement's release provision as written, the Parties request that the Court change the cutoff date in the definition of "Released Claims" (presently set as the date on which the Settlement is finally approved) to October 24, 2025, the date the Settlement Agreement was fully executed, and otherwise approve the Settlement.

Accordingly, the Parties submit two alternative proposals – Alternative Proposal A, and Alternative Proposal B – but will accept <u>any</u> determination the Court ultimately makes on this issue.

***a. <u>Alternative Proposal A</u>: The Temporal Scope of the Release is Justified.***

As the Order notes, "the proposed class includes anyone who purchased videos from Pesi between October 2022 and October 2024, but the proposed release covers claims from October 2022 to the date of final approval." Order, at 2 (internal citations omitted). The release does not

need to be narrowed because it is consistent with Seventh Circuit precedent; it is properly tied to the same factual predicate as the claims, and "'[i]t is not at all uncommon for settlements to include a global release of all claims past, present, and future, that the parties might have brought against each other.'" *Williams v. Gen. Elec. Capital Auto Lease, Inc.*, 159 F.3d 266, 273–74 (7th Cir. 1998)); *see also In re: Clearview AI*, 2026 U.S. App. LEXIS 20406, at *14-15 ("Generally, class-action settlements may, and often do, release unpled claims arising from the same facts as the claims actually brought"). This is supported by this Court's own precedent and other courts' approvals of releases in other data privacy class claims. Furthermore, the temporal scope of the release is justified because it protects Defendant from liability arising from the settlement administration process, and class members will be notified and can object or opt out.

Last month, the Seventh Circuit issued its decision in *In re: Clearview AI* confirming that a class action settlement release need not be coextensive with the temporal boundaries of the class definition.[3] The *Clearview* class definition was limited to individuals "whose facial images, facial vector data, and/or Biometric Data are or were contained in the biometric database" between July 1, 2017, and the date of Preliminary Approval. *See In re: Clearview AI*, No. 1:21-cv-00135 (N.D. Ill.), ECF No. 578-1, § 1.35. The *Clearview* release did not have the same temporal scope; it encompassed all claims "arising from or related to Defendants' alleged collection, capture, purchase, storage, possession, receipt through trade, obtainment, sale, lease, trade, profiting from and/or dissemination, disclosure or redisclosure of images and/or facial vectors and/or Biometric Data using the Clearview Biometric Database or other Clearview technology" including any

---

[3] The Seventh Circuit reversed approval of the class settlement on other grounds, but expressly rejected the objectors' argument that the breadth of the release was improper. *In re: Clearview AI*, U.S. App. LEXIS 20406, at *22-23 (vacating approval of the settlement based on lack of separate representatives and representation for the Nationwide Class).

claims "that were, or could have been, advanced regarding the images held in the Biometric Database" in any of the lawsuits filed, through the "Effective Date"—i.e., after final approval and after a final judgment was no longer appealable. *Id. at* §§ 1.22, 1.46, 4.2, 10.1.

The Seventh Circuit rejected objections that the settlement release was overbroad, noting that "class-action settlements may, and often do, release unpled claims arising from the same facts as the claims actually brought" and "[a] settlement may release claims without identifying the released claims in detail and regardless of whether they would have been 'presentable in the class action.'" *In re: Clearview AI*, 2026 U.S. App. LEXIS 20406 at *12-13 (quoting *Williams*, 159 F.3d at 273–74). The court explained the justification for this principle: "most settling defendants expect to buy peace with respect to all claims arising from the relevant events, regardless of how they might be labeled." *Id.* at *15. Put another way, so long as the released claims arise from the same factual predicate as the claims actually brought, the release may properly encompass additional claims and additional time periods.

This holding in *Clearview* traces the Seventh Circuit's holding in *Williams*:

> [A] federal court may release not only those claims alleged in the complaint, but also a claim "based on the identical factual predicate as that underlying the claims in the settled class action even though the claim was not presented and might not have been presentable in the class action."

*Williams*, 159 F.3d at 273-74 (quoting *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1287 (9th Cir. 1992)).

*Clearview* and *Williams* support approval of the release here. The "Released Claims" are expressly defined as claims "that arise out of or relate to PESI and/or Psychotherapy Networker's collecting, sharing, disclosing, or any other action enabling or assisting in the collection, sharing, or disclosure of any Consumer Data to any third parties." SA ¶ 31. The release thus encompasses claims that "arise out of or relate to" the same alleged disclosure of VPPA-protected information

at issue in this litigation. The temporal scope of the release through final approval does not render the release overbroad or expand the subject matter that forms the factual predicate underlying the claims; it simply ensures that class members' claims arising from the same course of conduct are captured and that Defendant may "buy peace with respect to all claims arising from the relevant events." *In re: Clearview AI*, 2026 U.S. App. LEXIS 20406 at *12-13; *Carbone,* 2026 U.S. Dist. LEXIS 50528, at *17.

Additionally, all claims encompassed within the proposed release will have accrued, and thus, there is no possibility that the class members who do not opt out would release an unripe claim. Regardless, *Williams* reaffirms that the release need not be narrowed because even unripe claims can be resolved in a settlement when they are "closely enough related" to the claims at issue. *Williams*, 159 F.3d at 274 (citing *Fair v. International Flavors & Fragrances, Inc.*, 905 F.2d 1114, 1115-16 (7th Cir. 1990) (general release was enforceable even against a claim that was "nonexistent" at the time of settlement when the releasor knowingly and intentionally resolved the dispute that may have existed). Accordingly, *Williams* and *In re Clearview* support approval of the release.

The scope of the release here is further supported by other courts' routine approval of VPPA class settlements with releases directed at the conduct at issue in the claims even when the temporal scope of the release is broader than the temporal scope of the class:

- In *Carbone v. Limited Run Games, Inc.*, No. 22-cv-7754 (JMW) (hereinafter *Carbone*), the court granted final approval of a VPPA class settlement. 2026 U.S. Dist. LEXIS 50528 (E.D.N.Y. Mar. 11, 2026). The class was defined as persons who accessed the defendant's service and watched or purchased a pre-recorded video between January 1, 2016, and June 20, 2025. *Id.* at *2, n.1. The release extended through the "Effective

Date"—i.e., after final approval. *Carbone,* ECF No. 15-9, §§ 1.12, 1.27, 3.2 (settlement agreement, defining "Effective Date," "Released Claims," and release time period, respectively). The court found the release language was "directed at the conduct that occurred with disclosure of the members' PII and as such, is limited to those claims" and "[t]herefore . . . is not overbroad." *Carbone,* 2026 U.S. Dist. LEXIS 50528, at *17.

- In *Lee v. Springer Nature America, Inc.*, No. 24-cv-4493 (LJL) (hereinafter, "*Lee*"), the court granted final approval of a VPPA class settlement involving allegations that the defendant disclosed subscribers' personally identifiable information to Meta through the Meta Pixel. 2025 U.S. Dist. LEXIS 254425 (S.D.N.Y. Dec. 9, 2025). The class period ran from June 12, 2022, to July 10, 2025. *Lee,* ECF No. 40-1 at 5 (settlement agreement, defining class period). The release extended through the "Effective Date"—the date after the final approval order becomes final and all appeal periods have expired—covering claims well beyond the class period. *Id.* at 6, 8, 16 (defining "Effective Date," "Released Claims," and temporal period of the release, respectively). Notably, the court required the parties to make certain revisions before granting preliminary approval, but did not take issue with the release extending beyond the class period. *Lee,* ECF Nos. No. 42, 46.

- In *Fiorentino v. FloSports, Inc.*, No. 1:22-cv-11502-AK (D. Mass. July 26, 2023) (hereinafter "*Fiorentino*"), the court approved a VPPA class settlement in which the class was limited to persons affected between September 12, 2020, and the date of preliminary approval, but the release of class members' claims extended through the date the final judgment became final (again, beyond the class period). *Fiorentino,* ECF No. 60-1, pp. 5, 12, 14, 39.

Moreover, this Court's approvals of other class settlements further support that the release that the parties agreed to is not only common, but commonly approved:

- In *Arandell Corp. v. Xcel Energy, Inc.*, Nos. 3:07-cv-00076-jdp and 3:09-cv-00240-jdp (W.D. Wis.) (hereinafter, "*Arandell*"), this Court approved a settlement (ECF Nos. 331, 340) in which the class was defined by those who purchased or consumed natural gas during the "Relevant Time Period" of January 1, 2000, through October 31, 2002, but the release covered all claims arising out of the alleged conduct up to the date of the execution of the settlement agreement. *Arandell,* ECF Nos. 326, at 11-12[4] (motion for preliminary approval); 327 at Ex. 2, ¶ 17 (release language in settlement agreement). The release thus extended years beyond the class period.

- Similarly, in *Groshek v. Great Lakes Higher Education Corp.,* No. 3:15-cv-00143-jdp (W.D. Wis.) (hereinafter, "*Groshek*"), this Court granted preliminary approval[5] of a settlement (ECF No. 46) in which the class was defined as "all individuals in the United States for whom Great Lakes procured, or caused to be procured, a consumer report as part of any employment process" between "March 5, 2013 through June 30, 2014." *Groshek,* ECF No. 45-1, at 3. However, the release encompassed all claims "arising out of the allegations in or subject matter of the Complaint" through the Effective Date of the

---

[4] To the extent that unpublished, ECF filings are cited herein and they contain internal page numbers that differ from the ECF-stamped page numbers, the pin cites referred to herein are the ECF-stamped pages numbers.

[5] While ultimately, this Court did not enter a final approval order of the *Groshek* settlement, it was not due to the release language; it dismissed the *Groshek* matter for lack of standing following the U.S. Supreme Court's opinion in *Spokeo, Inc. v. Robins,* 578 U.S. 330 (2016). *See Groshek,* ECF No. 65.

settlement—well beyond the class period. *Id.* at 4; ECF No. 46 (preliminary approval granted on April 13, 2016).

- In *Tesky v. Bone & Joint*, No. 3:23-cv-00184-jdp (W.D. Wis.) (hereinafter, "*Tesky*"), this Court approved a data breach settlement (ECF Nos. 41, 54) in which the class was defined as persons whose information was impacted by a ransomware attack that occurred on or about January 16, 2023. *Tesky,* ECF No. 31-1, ¶ 11 (settlement agreement, definition of the class). The release, however, covered "any and all known and unknown claims . . . arising out of, directly or indirectly resulting from, involving, or related to the ransomware attack," including claims that class members "may ever have, now or in the future" through final approval. *Id.* ¶ 78 (settlement agreement, defining released claims). This release extended far beyond the date of the ransomware attack itself.
- Likewise, in *Linman v. Marten*, No. 3:22-cv-00204-jdp (W.D. Wis.) (hereinafter, "*Linman*"), this Court approved a settlement (ECF Nos. 44, 63) for class members who were impacted by a data breach that occurred in September and October 2021, and the release included all claims arising from the data breach upon final approval of the settlement agreement. *Linman,* ECF Nos. 39-1, ¶ 79 (settlement agreement, defining released claims).

This Court's approvals of the aforementioned data breach settlements provide an additional support to approve the release. As evidenced in *Tesky* and *Linman,* a data breach class is defined by the time period that the breach spanned. However, potential downstream harms (*e.g.,* identity theft, fraud, etc.) giving rise to potential claims may not manifest until well after the breach date, and in some cases may not manifest until after the complaint is filed or even after the settlement agreement is executed. This court approved releases that covered all claims arising from the

breach—including future claims, and those that accrue after the time period or event that defines the class—because potential downstream effects that could give rise to claims may not have fully materialized until much later, and the claims all share the same factual predicate.

The same logic applies here. The VPPA claims in this case arise from Defendant's alleged disclosures of class members' personally identifiable information to third parties, including Meta, Google, and Pinterest. While the class is defined by purchases made during the October 2022–October 2024 period, the consequences of those alleged disclosures are not necessarily confined to that same window. Some class members may have had their information disclosed during the class period but may not have experienced the full downstream effects of that disclosure until after October 2024.

In sum, the release is well within the bounds established by *Clearview* and *Williams*, and is further supported by precedent from this Court and from other approved VPPA settlements. The release serves a legitimate purpose in securing peace for Defendant with respect to the very conduct at issue in this litigation, and thus, should not preclude preliminary approval.

Separately, the release should not be narrowed as it protects Defendant from liability arising out of the settlement administration process. The Court noted that "Plaintiffs do not explain the basis for their belief that it could violate the VPPA to disclose class members' names (without their purchase history) for the purpose of administering the settlement." Order, ECF No. 53, at 2. While the parties acknowledge that this risk may be limited, the VPPA broadly defines "personally identifiable information" to include information that "identifies a person as having requested or obtained specific video materials or services," 18 U.S.C. § 2710(a)(3). The Class List identifies persons as purchasers of video products from PESI. Thus, without a release of claims that accrued

through the date of final approval, Defendant could arguably (and unfairly) be exposed to liability under the VPPA as a result of its provision of the Class List to the Settlement Administrator.

Finally, the temporal scope of the release is justified and does not need to be narrowed because all class members will be fully informed of the release's scope through the Class Notice. Class members who disagree with any aspect of the settlement, including the temporal scope of the release, retain the right to object to the settlement or to exclude themselves from the class entirely. The claims process thus ensures that no class member's rights are compromised without notice and an opportunity to be heard.

***b. <u>Alternative Proposal B</u>: The Temporal Scope of the Release Should be Modified to End on the Date the Settlement Agreement was Executed***

Alternatively, the Parties propose that the Court modify the definition of "Released Claims" as follows:

> 'Released Claims' means any and all actual, potential, filed, untiled, known or unknown claims, suits, actions, controversies, demands, and/or causes of action that arise out of or relate to PESI and/or Psychotherapy Networker's collecting, sharing, disclosing, or any other action enabling or assisting in the collection, sharing, or disclosure of any Consumer Data to any third parties, including but not limited to Meta, Google, and Pinterest, at any time between October 3, 2022 and October 24, 2025, the date the Settlement Agreement was executed by the Parties ~~the date of Final Approval of the Settlement~~. 'Consumer Data' means information identifying, revealing, reflecting, or disclosing a user's activity (purchases, clicks, pageviews, etc.) on PESI's website and/or Psychotherapy Networker's website, including personally identifiable information that was, is, or could be protected under the VPPA, or protected information under any other statute, regulation, or provision of common law.

Settlement Agreement ¶ 31. If modified as set forth above, the definition of "Released Claims" would only encompass claims arising from facts that were, or that could have been, alleged by Plaintiff in this action on behalf of herself and the members of the proposed Settlement Class. At the time this matter resolved, Class Counsel had sufficient information to identify the facts giving

rise to such claims, intelligently assess the strengths and weaknesses of such claims, and adequately negotiate the resolution of such claims on the proposed Settlement Class's behalf during the Parties' settlement discussions overseen by Judge Holderman.

## II. The Process for Evaluating Claims: Notice to Class Members & Proposing a Schedule

As the Order notes, there are "two problems" with the process for the administrator to review claims: (1) while the Court agreed that the process articulated in the previous Renewed Motion for Preliminary Approval (ECF No. 51) is fine, it "is not spelled out in the long-form notice"; and (2) the process "does not provide any way for class members to raise an objection with the court if they believe that the administrator incorrectly rejected their claim." Order at 3-4. The Order instructs the parties to "address both problems by: (1) explaining how the claims process works; and (2) instructing class members that they may file an objection that the court will consider if they believe that the settlement administrator incorrectly rejected their claim." *Id.* at 4. Additionally, the Order asks that the parties "submit a proposed schedule (based on the number of days rather than specific dates) that reflects their understanding of how much time will be needed for each step of the process." *Id.*

To address the further concerns identified by the Court in the Order, the Parties propose that the following process be implemented with respect to any Claim Form that is submitted by a person who the Settlement Administrator is unable to match to the Class List:

1. within ten (10) days of receiving a Claim Form that the Settlement Administrator is unable to verify was submitted by a person appearing on the Class List, the Settlement Administrator shall contact the person who submitted the Claim Form, by e-mail and/or telephone (to the extent a telephone number is provided by the person on the Claim Form), to advise the person that the Settlement Administrator is unable to verify that he or she is

a Settlement Class Member based on the information they submitted, that the Settlement Administrator requires additional information (which the Settlement Administrator shall clearly describe) from the person to verify that he or she is in fact a Settlement Class member, and that the person shall have twenty-one (21) days to provide the Settlement Administrator such additional information;

2. within twenty-one (21) days of the Settlement Administrator providing notice to a person of its inability to verify their Claim Form, as described in part 1 above, the person who receives such notice shall provide to the Settlement Administrator the additional information requested by the Settlement Administrator;

3. within three (3) days of receiving any additional information from a person from whom it requested additional information to verify a Claim Form (or, to the extent no additional information is provided by the person within that 21-day period, within (3) days of the expiration of such period), as described in part 2 above, the Settlement Administrator shall make a final determination about the validity of the person's Claim Form and shall advise the person in writing (with a copy to the Parties' counsel) of such final determination; to the extent the final determination of the Settlement Administrator is that the person is not a Settlement Class Member and that the Claim Form is invalid, the Settlement Administrator shall advise the person of his or her right to appeal such determination to the Court, in the form and manner and within the time period described in part 4 below;

4. within fourteen (14) days of the Settlement Administrator providing written notice to a person who submitted a Claim Form of its determination that the person is not a Settlement Class Member and that his or her Claim Form has been deemed invalid, as described in part 3 above, the person may submit to the Court an appeal of the Settlement

Administrator's final determination as to the validity of the Claim Form the person submitted, by either writing to the Clerk of the Court or filing a written appeal of such determination on the docket of this action. Such appeal shall state the person's name and address (which shall be redacted on the public docket by the Court), include a copy of the Settlement Administrator's written final decision, and state the basis for the person's assertion that he or she is a Settlement Class Member; and

5. the Court will thereafter finally resolve the validity of the person's Claim Form.

The parties further proposed that the long-form class notice be amended, in the form attached hereto as **Exhibit A** (with revisions to the prior iteration of this exhibit shown in redline), to include additional language spelling out the foregoing procedures for providing notice to persons who submit Claim Forms that the Settlement Administrator is unable to verify, for affording such persons the opportunity to submit additional information to the Settlement Administrator to verify their Claim Forms, and for such persons to appeal to the Court any adverse final determinations of the Settlement Administrator as to the validity of their Claim Forms.

Counsel for the parties are available at the Court's convenience to answer any further questions or address any further concerns the Court may have concerning the proposed Settlement.[6]

Dated: August 31, 2026

Respectfully submitted,

*/s/ Frank S. Hedin*
Frank S. Hedin

HEDIN LLP
1395 Brickell Ave., Suite 610

---

[6] Additionally, within ten (10) days of the filing of this renewed motion, the Settlement Administrator will disseminate copies of this filing to all parties required to receive notice pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715.

Miami, Florida 33131-3302
Telephone: (305) 357-2107
Facsimile: (305) 200-8801
Email: fhedin@hedinllp.com

*Class Counsel*

*s/ David M. Schultz*
David M. Schultz
IL Bar No.: 6197596
151 N. Franklin Street, Suite 2500
Chicago, IL 60606
312-704-3000
dschultz@hinshawlaw.com

Brett B. Larsen
State Bar No.: 1064355
Daniel J. Hollis
State Bar No.: 1128071
100 E. Wisconsin Avenue, Suite 2600
Milwaukee, WI 53202
414-276-6464
blarsen@hinshawlaw.com
dhollis@hinshawlaw.com

*Attorneys for Defendant*